TC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**TIMOTHY W. MORAGNE,**
Plaintiff,

v.

**CITY OF CHICAGO,**
Defendant.

26-cv-03235
Judge Jeffrey I Cummings
Magistrate Judge Daniel P. McLaughlin
Random Cat 2

**COMPLAINT AND JURY DEMAND**

F I L E D

MAR 2 4 2026

THOMAS G. CRUTON
CLERK, U.S. DISTRICT COURT

# I. INTRODUCTION

1. This is an action for employment discrimination and retaliation under the **Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.**
2. Plaintiff, a Chicago Police Officer assigned to the Bureau of Internal Affairs ("BIA"), was subjected to discrimination and retaliation based on his disability and protected activity.
3. Despite approximately thirteen (13) years of excellent service in a specialized unit, Plaintiff was abruptly deemed "unfit for the unit" and reassigned under circumstances demonstrating pretext, retaliation, and discriminatory motive.

# II. JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12117.
5. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to this action occurred in Chicago, Illinois.

# III. PARTIES

6. Plaintiff TIMOTHY W. MORAGNE is a resident of Chicago, Illinois and a Chicago Police Officer.

7. Defendant CITY OF CHICAGO is a municipal corporation responsible for the Chicago Police Department.

# IV. FACTUAL ALLEGATIONS

## A. Plaintiff's Employment and Disability

8. Plaintiff sustained an on-duty injury on May 7, 2006.
9. Plaintiff underwent significant medical treatment, including total hip replacement surgery in 2017.
10. Plaintiff has experienced ongoing impairment and limitations related to that injury.
11. Plaintiff was ultimately awarded duty disability based on that condition.

## B. Plaintiff's Performance Record

12. Plaintiff served approximately thirteen (13) years in the Bureau of Internal Affairs, including the Medical Integrity Section.
13. Throughout that time, Plaintiff received **excellent performance evaluations**.
14. Plaintiff was never removed from the unit prior to the events described herein.

## C. July 2022 Events and Medical Status

15. On July 11, 2022, Plaintiff attended a scheduled medical appointment related to his on-duty injury.
16. Plaintiff was prescribed medication that impaired his ability to safely perform certain functions, including driving.
17. Plaintiff was medically restricted from work pending adjustment of that medication.
18. Defendant was aware of this restriction by July 12, 2022.

## D. Protected Activity (COPA/BIA Documented Complaint)

19. Plaintiff's spouse made a complaint regarding the conduct of Sgt. Jessica Dunkin.
20. This complaint is documented in official investigative records, including:

- COPA/BIA Investigation
- Log No. 2022-0002947
- Investigative Closing Report (Page 2)

21. This establishes Defendant's **actual knowledge of protected activity**.

## E. Harassment and Conduct by Sgt. Dunkin

22. Sgt. Dunkin engaged in repeated contact with Plaintiff during his medical leave, including approximately eleven (11) calls over a short period.
23. Sgt. Dunkin caused a sergeant to be sent to Plaintiff's residence on his first day of medical leave.
24. Sgt. Dunkin appeared at Plaintiff's residence and attempted to serve him with vehicle citations and initiate disciplinary action.

## F. Prior Knowledge of False Citations (LEADS Evidence)

25. Prior to appearing at Plaintiff's residence, Sgt. Dunkin contacted Plaintiff by telephone.
26. Plaintiff informed Sgt. Dunkin that the citations did not belong to him.
27. Plaintiff directed Sgt. Dunkin to verify ownership through the Chicago Police Department's LEADS system.
28. Plaintiff informed Sgt. Dunkin that the vehicle belonged to his 31-year-old son.
29. Sgt. Dunkin acknowledged this information.
30. Despite this knowledge, Sgt. Dunkin proceeded with enforcement action.

## G. Contradiction: Full Duty vs. "Unfit"

31. On July 15, 2022, an internal email identified Plaintiff's:

**Duty Status: Full Duty**

32. The email was copied to command staff, including Deputy Chief Tracey Walker.
33. On July 16, 2022, Deputy Chief Walker informed Plaintiff that he was:

"no longer fit for the unit"

34. Plaintiff was reassigned to the 6th District.
35. Plaintiff was transferred to another **full-duty position**.
36. This creates a direct contradiction between:

- being "Full Duty"
- and being "unfit for the unit"

## H. Lack of Legitimate Basis

37. Plaintiff had approximately thirteen (13) years of excellent performance in the unit.
38. Plaintiff had not been given any performance warnings or corrective action.
39. Plaintiff was not given an opportunity to explain the situation prior to reassignment.

## I. Comparator Evidence

40. Other similarly situated employees were treated more favorably.
41. A co-worker returned after an absence exceeding **370 days** and was not deemed unfit.
42. Plaintiff, by contrast, was removed after approximately **3–4 days**.

## J. Retaliation and Timing

43. Plaintiff's reassignment occurred immediately after:

- his spouse's complaint
- his medical leave

44. The timing supports an inference of retaliation.

## K. Pretext

45. Defendant's stated reasons are inconsistent, contradictory, and not credible.
46. Defendant's actions were motivated, at least in part, by Plaintiff's disability and protected activity.

# V. COUNT I – DISABILITY DISCRIMINATION (ADA)

47. Plaintiff incorporates all preceding paragraphs.
48. Plaintiff is a qualified individual with a disability.
49. Defendant subjected Plaintiff to adverse employment action.
50. Defendant's actions were based on Plaintiff's disability.

# VI. COUNT II – RETALIATION (ADA)

51. Plaintiff incorporates all preceding paragraphs.
52. Plaintiff engaged in protected activity.
53. Defendant took adverse action against Plaintiff.
54. A causal connection exists between the protected activity and adverse action.

## VII. DAMAGES

55. Plaintiff has suffered:

- emotional distress
- reputational harm
- economic losses
- loss of career opportunity

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

A. Enter judgment in Plaintiff's favor
B. Award compensatory damages
C. Award back pay and front pay
D. Award attorney's fees and costs
E. Grant any further relief deemed appropriate

## IX. JURY DEMAND

Plaintiff demands a trial by jury.

**Respectfully submitted,**

Timothy W. Moragne
8033 S. Albany Avenue
Chicago, Illinois 60652
tim8109@aol.com
(773) 842-1496

Pro Se Plaintiff

# EXHIBIT PACKET

## Moragne v. City of Chicago

Chronological Exhibits A–R

# EXHIBIT INDEX

Exhibit A – Duty Disability Board Submission / Injury History

Exhibit B – Medical Roll / IOD Status

Exhibit C – EEOC Initial Inquiry

Exhibit D – EEOC Complaint Narrative

Exhibit E – EEOC Charge Documents

Exhibit F – Duty Disability Application

Exhibit G – City Initial Position Statement

Exhibit H – Disability Hearing Notice

Exhibit I – EEOC Correspondence / Delay

Exhibit J – BIA Investigation File

Exhibit K – FOIA Response

Exhibit L – Duty Disability Award

Exhibit M – Right to Sue Letter

Exhibit N – Supplemental Position Statement

Exhibit O – Doctor Letter

Exhibit P – Audio/Video Evidence Index

Exhibit Q – Timeline Summary

Exhibit R – Full Duty Email Contradiction

# EXHIBIT A

**Duty Disability Board Submission / Injury History**

<< Insert corresponding document behind this page >>

Case: 1:26-cv-03235 Document #: 1 Filed: 03/24/26 Page 9 of 166 PageID #:179



# VIKRAM GANDHI, M.D., S.C.
### 7530 SOUTH WOODWARD AVENUE, SUITE B
### WOODRIDGE, ILLINOIS 60517-3105

### TELEPHONE: (630) 910-5933

FELLOW AMERICAN ACADEMY OF ORTHOPEDIC SURGEON

BOARD CERTIFIED ORTHOPEDIC SURGEON

SUBSPECIALIZED IN HAND SURGERY

ORTHOPEDIC SURGERY
HAND SURGERY
SPORTS MEDICINE
REHABILITATION
PAIN CONTROL
JOINT REPLACEMENT

September 12, 2006

IOD Unit
Chicago Police Department
3510 South Michigan Avenue
Chicago, IL 60653

RE: Timothy Moragne
D.O.B: 06/18/1963

Dear Sir:

Mr. Moragne has now recovered sufficiently for him to return to full duty work. He is advised to continue regular exercises and take medications as needed for this neck problem which has underlying arthritic condition but in general he is now well enough to return to most of the activities that he would be required in line of duty.

If further questions about him, do not hesitate to contact me.

Truly yours,

Vikram Gandhi, M.D.

jn

**Board Exhibit #5**
**Page 39**

Case: 1:26-cv-03235 Document #: 1 Filed: 03/24/26 Page 10 of 166 PageID #:180



# VIKRAM GANDHI, M.D., S.C.
### 7530 SOUTH WOODWARD AVENUE, SUITE B
### WOODRIDGE, ILLINOIS 60517-3105

### TELEPHONE: (630) 910-5933

FELLOW AMERICAN ACADEMY OF ORTHOPEDIC SURGEON

BOARD CERTIFIED ORTHOPEDIC SURGEON

SUBSPECIALIZED IN HAND SURGERY

ORTHOPEDIC SURGERY
HAND SURGERY
SPORTS MEDICINE
REHABILITATION
PAIN CONTROL
JOINT REPLACEMENT

August 31, 2006

IOD Unit
Chicago Police Department
3510 South Michigan Avenue
Chicago, IL 60653

RE: Timothy Moragne
D.O.B: 06/18/1963

Dear Sir:

Mr. Moragne is progressing in a work hardening program. His strength is getting better so we will continue with this at least two more weeks and I will plan to reevaluate it at that time to see if he is ready to return to work.

I hope this is satisfactory. If further questions, do not hesitate to contact me.

Truly yours,

Vikram Gandhi, M.D.

jn

**Board Exhibit #5
Page 38**



# VIKRAM GANDHI, M.D., S.C.
## 7530 SOUTH WOODWARD AVENUE, SUITE B
## WOODRIDGE, ILLINOIS 60517-3105

### TELEPHONE: (630) 910-5933

FELLOW AMERICAN ACADEMY OF ORTHOPEDIC SURGEON

BOARD CERTIFIED ORTHOPEDIC SURGEON

SUBSPECIALIZED IN HAND SURGERY

ORTHOPEDIC SURGERY
HAND SURGERY
SPORTS MEDICINE
REHABILITATION
PAIN CONTROL
JOINT REPLACEMENT

August 24, 2006

IOD Unit
Chicago Police Department
3510 South Michigan Avenue
Chicago, IL 60653

RE:  Timothy Moragne
D.O.B:  06/18/1963

Dear Sir:

Mr. Moragne has increased pain with his work conditioning program but the place where he goes for that have made some adjustments and hopefully this will not continue to aggravate him.  Also I have advised him some different exercises before he goes out for this work hardening program.  Anyway, we will just have to see how he does with it but this is continuing to get aggravated by this activity.  We may have to restart the physical therapy.  Presently, he is starting to get tingling and numbness of his fingers and continues to have stiffness of the neck.  I plan to recheck him in one week's time.

I hope this is satisfactory.  If further questions, do not hesitate to contact me.

Truly yours,

Vikram Gandhi, M.D.

**Board Exhibit #5**
**Page 37**



## VIKRAM GANDHI, M.D., S.C.
7530 SOUTH WOODWARD AVENUE, SUITE B
WOODRIDGE, ILLINOIS 60517-3105

TELEPHONE: (630) 910-5933

ORTHOPEDIC SURGERY
HAND SURGERY
SPORTS MEDICINE
REHABILITATION
PAIN CONTROL
JOINT REPLACEMENT

FELLOW AMERICAN ACADEMY OF ORTHOPEDIC SURGEON

BOARD CERTIFIED ORTHOPEDIC SURGEON

SUBSPECIALIZED IN HAND SURGERY

August 17, 2006

IOD Unit
Chicago Police Department
3510 South Michigan Avenue
Chicago, IL 60653

RE: Timothy Moragne
D.O.B: 06/18/1963

Dear Sir:

Mr. Moragne is undergoing work conditioning program. He is doing three hours a day activity there. He is finding this difficult presently and his symptoms have increased including tingling and numbness he gets on his right arm and hand. It is likely that this will subside with continued work conditioning program so we will keep an eye on it. He still has one more week of this left. After which I plan to reevaluate him.

I hope this is satisfactory. If further questions, do not hesitate to contact me.

Truly yours,

Vikram Gandhi, M.D.

jn

MED 8/21/06



# VIKRAM GANDHI, M.D., S.C.
### 7530 SOUTH WOODWARD AVENUE, SUITE B
### WOODRIDGE, ILLINOIS 60517-3105

### TELEPHONE: (630) 910-5933

FELLOW AMERICAN ACADEMY OF ORTHOPEDIC SURGEON

BOARD CERTIFIED ORTHOPEDIC SURGEON

SUBSPECIALIZED IN HAND SURGERY

ORTHOPEDIC SURGERY
HAND SURGERY
SPORTS MEDICINE
REHABILITATION
PAIN CONTROL
JOINT REPLACEMENT

August 3, 2006

IOD Unit
Chicago Police Department
3510 South Michigan Avenue
Chicago, IL 60653

RE: Timothy Moragne
D.O.B: 06/18/1963

Dear Sir:

Mr. Moragne is improving satisfactorily but he still has muscle weakness and tightness of the muscles in the neck area along with weakness of the right upper extremity. Work conditioning is advised. We will do that for a couple of weeks and see if we can return him to work.

I hope this is satisfactory. If further questions, do not hesitate to contact me.

Truly yours,

Vikram Gandhi, M.D.

jn

**Board Exhibit #5**
**Page 35**



# VIKRAM GANDHI, M.D., S.C.

### 7530 SOUTH WOODWARD AVENUE, SUITE B
### WOODRIDGE, ILLINOIS 60517-3105

## TELEPHONE: (630) 910-5933

FELLOW AMERICAN ACADEMY OF ORTHOPEDIC SURGEON

BOARD CERTIFIED ORTHOPEDIC SURGEON

SUBSPECIALIZED IN HAND SURGERY

ORTHOPEDIC SURGERY
HAND SURGERY
SPORTS MEDICINE
REHABILITATION
PAIN CONTROL
JOINT REPLACEMENT

July 06, 2006

IOD Unit
Chicago Police Department
3510 South Michigan Avenue
Chicago, IL 60653

RE:  Timothy Moragne
D.O.B:  06/18/1963

Dear Sir:

Mr. Moragne is improving.  The patient still gets aches and pains at the end of the day. His range of motion and strength are improving.  The patient is advised to continue with therapy for a few more weeks when he will rechecked again in approximately four weeks' time, following which I expect to have him return to work.

I hope this is satisfactory.  If further questions, please do not hesitate to contact me.

Truly yours,

Vikram Gandhi, M.D.

jn

**Board Exhibit #5**
**Page 34**



# VIKRAM GANDHI, M.D., S.C.
**7530 SOUTH WOODWARD AVENUE, SUITE B**
**WOODRIDGE, ILLINOIS 60517-3105**

### TELEPHONE: (630) 910-5933

FELLOW AMERICAN ACADEMY OF ORTHOPEDIC SURGEON

BOARD CERTIFIED ORTHOPEDIC SURGEON

SUBSPECIALIZED IN HAND SURGERY

ORTHOPEDIC SURGERY
HAND SURGERY
SPORTS MEDICINE
REHABILITATION
PAIN CONTROL
JOINT REPLACEMENT

June 22, 2006

IOD Unit
Chicago Police Department
3510 South Michigan Avenue
Chicago, IL 60653

RE: Timothy Moragne
D.O.B: 06/18/1963

Dear Sir:

Timothy is improving in physical therapy. He still has weakness of the right upper extremity and stiffness of the neck. He is to continue physical therapy. Presently, he is unable to return to work, and I plan to recheck him in two more weeks.

I hope this is satisfactory. If further questions, do not hesitate to contact me.

Truly yours,

Vikram Gandhi, M.D.

rsp

**Board Exhibit #5**
**Page 33**



# VIKRAM GANDHI, M.D., S.C.
### 7530 SOUTH WOODWARD AVENUE, SUITE B
### WOODRIDGE, ILLINOIS 60517-3105

## TELEPHONE: (630) 910-5933

FELLOW AMERICAN ACADEMY OF ORTHOPEDIC SURGEON

BOARD CERTIFIED ORTHOPEDIC SURGEON

SUBSPECIALIZED IN HAND SURGERY

ORTHOPEDIC SURGERY
HAND SURGERY
SPORTS MEDICINE
REHABILITATION
PAIN CONTROL
JOINT REPLACEMENT

June 08, 2006

IOD Unit
Chicago Police Department
3510 South Michigan Avenue
Chicago, IL 60653

RE:  Timothy Moragne
D.O.B:  06/18/1963

Dear Sir:

Mr. Moragne was found to have degenerative changes in the cervical spine along with findings consistent with foraminal narrowing and his neck area bilaterally.  The patient still has symptoms and weakness of the right upper extremity and numbness in the ulnar digits of right hand.  Obviously, the patient needs some more therapy and the patient is not ready to return to full duty work at the present time.  I have re-prescribed his therapy and the patient will be rechecked in two weeks' time.

I hope this is satisfactory.  If further questions, do not hesitate to contact me.

Truly yours,

Vikram Gandhi, M.D.

jn

**Board Exhibit #5**
**Page 32**



# VIKRAM GANDHI, M.D., S.C.
### 7530 SOUTH WOODWARD AVENUE, SUITE B
### WOODRIDGE, ILLINOIS 60517-3105

## TELEPHONE: (630) 910-5933

FELLOW AMERICAN ACADEMY OF ORTHOPEDIC SURGEON

BOARD CERTIFIED ORTHOPEDIC SURGEON

SUBSPECIALIZED IN HAND SURGERY

ORTHOPEDIC SURGERY
HAND SURGERY
SPORTS MEDICINE
REHABILITATION
PAIN CONTROL
JOINT REPLACEMENT

May 18, 2006

IOD Unit
Chicago Police Department
3510 South Michigan Avenue
Chicago, IL 60653

RE: Timothy Moragne
D.O.B: 06/18/1963
D.O.I: 05/07/2006

Dear Sir:

Mr. Moragne's pain in his neck and back of the head has gotten worse. Also he has numbness of the right hand. These are all related to the cervical strain and possible disk injury. X-rays and MRI examination of the cervical spine are advised. He should meanwhile continue with physical therapy. He will be rechecked once these are done.

I hope this is satisfactory. If further questions, please do not hesitate to contact me.

Truly yours,

Vikram Gandhi, M.D.

jn

Board Exhibit #5
Page 31



# VIKRAM GANDHI, M.D., S.C.
### 7530 SOUTH WOODWARD AVENUE, SUITE B
### WOODRIDGE, ILLINOIS 60517-3105

### TELEPHONE: (630) 910-5933

FELLOW AMERICAN ACADEMY OF ORTHOPEDIC SURGEON

BOARD CERTIFIED ORTHOPEDIC SURGEON

SUBSPECIALIZED IN HAND SURGERY

ORTHOPEDIC SURGERY
HAND SURGERY
SPORTS MEDICINE
REHABILITATION
PAIN CONTROL
JOINT REPLACEMENT

May 11, 2006

IOD Unit
Chicago Police Department
3510 South Michigan Avenue
Chicago, IL 60653

RE:  Timothy Moragne
D.O.B:  06/18/1963
D.O.I:  05/07/2006

Dear Sir:

Mr. Moragne was involved in another accident and trying to get out of this burning car, sustained injuries. His neck has been strained in the process and he also has a contusion in the right iliac crest area possibly related to the seatbelt and he also has an abrasion on the left leg. This is healing. The neck area has marked limitation of movement with muscle spasm in this area. Also weakness of the right hand and wrist is noted which could be related to problems of the neck area. Mr. Moragne is advised muscle relaxant and a physical therapy for this problem and presently he is not able to return to work. He will be rechecked in one week's time.

I hope this is satisfactory. If further questions, please do not hesitate to contact me.

Truly yours,

Vikram Gandhi, M.D.

jn

FAXED
05/29/06

**Board Exhibit #5**
**Page 30**

# INJURY ON DUTY REPORT
## CHICAGO POLICE DEPARTMENT

| DATE (DAY-MO.-YR.) | | |
|---|---|---|
| 07 | May | 06 |

**INSTRUCTIONS:** This report is to be completed even if the injury does not require immediate medical treatment. The injured member must contact the Medical Services Section within 24 hours of being placed on the Medical roll.

## PART 1 - SUPERVISOR AND WATCH COMMANDER

| NAME OF INJURED (LAST - FIRST - M.I.) | STAR NO. | EMPLOYEE NO. | AGE | ☒ MARRIED ☐ SINGLE | NO. OF CHILDREN UNDER 18 YEARS |
|---|---|---|---|---|---|
| MORAGNE-Timothy W | 19052 | 45846 | 42 | ☒ MARRIED | four |

| HOME ADDRESS | PHONE NO. | UNIT - ASSIGNMENT | UNIT - DETAILED TO | BEAT/POST NO. |
|---|---|---|---|---|
| 8033 S. Albany | 773-498-9959 | 002 | dna | 262b |

| DATE & TIME OF INCIDENT (BE EXACT) | | | | DUTY HOURS ON DATE OF INJURY (INCLUDING OVERTIME) | DID MEMBER REMAIN ON DUTY AFTER INJURY? | DATE PLACED ON MEDICAL | | | | SOCIAL SECURITY NO. |
|---|---|---|---|---|---|---|---|---|---|---|
| 07 | May | 06 | 2330 HRS. | FROM 1800 TO 0230 | ☐ YES ☒ NO | DAY | MONTH | YEAR DNA ☒ | | |

| ADDRESS WHERE INJURY OCCURRED | |
|---|---|
| 395? S. Dan Ryan Expressway (approximately) | ☐ STREET ☐ RESIDENCE ☐ TAVERN ☐ RESTAURANT ☐ OTHER BUSINESS ESTABLISHMENT ☒ OTHER |

**DESCRIBE IN DETAIL ANY APPARENT INJURY(IES) OR COMPLAINT(S), NAMING ALL PARTS OF THE BODY AFFECTED. (WHEN POSSIBLE, OBTAIN THIS DESCRIPTION FROM THE PERSON ATTENDING THE INJURED.)**

Abrasion to head, pain to right ankle and knee.

**DESCRIBE IN DETAIL HOW THE INJURY OCCURRED. INVESTIGATE CONDITIONS UNDER WHICH THE INJURY OCCURRED, MAKING A CAREFUL INSPECTION OF THE SITE OF THE INCIDENT AND ANY MECHANICAL DEVICE WHICH CONTRIBUTED TO THE INJURY(IES), AND CLEARLY EXPLAIN THE RESULTS BELOW.**

While, Bt. 262b was responding to a call to assist officers, they were involved in a traffic crash and sustained serious injuries. The injuries that the officer sustained were serious and still being evaluated.

**EXPLAIN ANY DELAY IN REPORTING AND/OR TREATING INJURY.**

| RELATED R.D AND /OR C.B. NUMBER(S) (ATTACH COPY IF AVAILABLE) | LIST AND ATTACH COPY OF ANY OTHER RELATED REPORT (E.G. ANIMAL BITE AND MISC. INCIDENT EXCEPTION REPORTS, TRAFFIC CITATION, RADIO DISPATCH CARD, ETC.) |
|---|---|
| HM336795/HM336807 | |

### WITNESSES' SECTION

THE UNDERSIGNED HEREBY CERTIFIES THAT THE ABOVE RECORDED FACTS PERTINENT TO THE INJURY SUSTAINED BY THE ABOVE NAME INJURED ARE TRUE AND CORRECT.

| SIGNATURE OF WITNESS | ADDRESS |
|---|---|
| *[signature]* 1198 | 5101 S WENTWORTH |
| SIGNATURE OF WITNESS | ADDRESS |
| | |

**NAMES AND STAR NUMBERS OF OTHER MEMBERS INJURED**

P.O. N. Williams #7073/P.O. A. Benford #16561

| DATE OF INITIAL TREATMENT | | | NAME OF HOSPITAL | ATTENDING PHYSICIAN - NAME | PHYSICIAN'S ADDRESS |
|---|---|---|---|---|---|
| DAY 08 | MONTH May | YEAR 06 | Northwestern | Dr. Pang | 233 E. Superior |

I HEREBY CERTIFY THAT I HAVE INVESTIGATED THE INCIDENT DESCRIBED ABOVE AND ATTEST TO THE TRUTH AND ACCURACY OF THE REPORTED INCIDENTS AND REPORTS.

| SIGNATURE OF PERSON PREPARING REPORT - STAR NO. |
|---|
| *[signature]* # 916 |

## PART 2 - INJURED MEMBER

I HEREBY CERTIFY THAT THE INFORMATION GIVEN ABOVE IS CORRECT AND THAT THESE INJURIES WERE SUSTAINED IN THE PERFORMANCE OF DUTY. I HEREBY AGREE THAT IN CONSIDERATION OF THE PAYMENT BY THE CITY OF CHICAGO OF ANY MEDICAL AND/OR HOSPITAL EXPENSES INCURRED AS A RESULT OF THE ABOVE INJURIES, I WILL:

1. NOTIFY THE PERSONNEL DIVISION AS TO THE NAME AND ADDRESS OF ANY ATTORNEYS I MAY RETAIN FOR THE PURPOSE OF PROSECUTING A CLAIM ON MY BEHALF BECAUSE OF SAID INJURIES.
2. REIMBUSE THE CITY OF CHICAGO IN FULL FOR ANY SUMS WHICH IT HAS OR MAY EXPEND ON MY BEHALF FOR SAID MEDICAL AND/OR HOSPITAL EXPENSES FROM ANY RECOVERY WHICH I HAVE OR MAY EFFECT FROM THE PERSON OR PARTY WHOM IT IS CLAIMED IS RESPONSIBLE FOR MY INJURIES.

| IF INJURED MEMBER IS UNABLE TO SIGN, RECORD THIS IN SIGNATURE BLOCK. | SIGNATURE OF INJURED MEMBER | DATE (DAY - MONTH-YEAR) |
|---|---|---|
| | Unable (TB) | |

## PART 3 - COMMANDER

I HAVE RECEIVED THE INJURY ON DUTY REPORT AND RELATED DOCUMENTS AND ATTEST BASED ON AVAILABLE INFORMATION THAT IT IS COMPLETE AND SHOULD BE FORWARDED FOR FURTHER INVESTIGATION TO THE COMMITTEE ON FINANCE.

| SIGNATURE OF UNIT COMMANDER OF EXEMPT RANK | RANK | UNIT | DATE (DAY-MONTH-YEAR) |
|---|---|---|---|
| *[signature]* FOR THE SUPERINTENDENT | Cmdr | 002 | 08 MH 06 |

## PART 4 - PERSONNEL DIVISION

| CREDITOR'S NAME (BILLS ATTACHED) | ACCOUNT NO. - REMARKS | DATE OF BILL | AMOUNT |
|---|---|---|---|
| | | | $ |
| | | | |
| | | | |

I HEREBY CERTIFY THAT THE CHARGES MADE FOR SERVICES AS SHOWN ABOVE AND ON THE ATTACHED BILLS ARE REASONABLE.
SIGNATURE - MEDICAL ADMINISTRATOR

| | DATE RETURNED TO DUTY | FILE NUMBER |
|---|---|---|
| APPROVED - DIRECTOR OF PERSONNEL | | MAY 0 9 2006 |
| DATE | REMARKS | |

CPD-62.375 (REV. 11/97)

FORWARD TO MEDICAL SECTION

Board Exhibit #5
Page 29

*d. Have the physical ability to safely effectuate an arrest of an arrestee who is defined as an active resister.* No.

5. *In the event you find the officer is disabled, and unable to return to **any** assigned position (which may include a limited duty assignment), please provide an opinion for the following questions.*

*a. Based upon your personal examination, what objective findings cause the disablement?* The examinee has radiographic findings which appear to demonstrate loosening of the right acetabular component status post right cementless total hip arthroplasty performed on September 5, 2017 by Kevin Luke, MD. He has significant physical examination findings including an unsteady gait and reported constant daily pain and symptoms.

*b. Is the disabling injury casually related to the claimed incident?* No.

*c. Is the officer's current injury exacerbated by a prior medical condition, prior injury, or pre-existing dormant condition, which now results in an inability to return to a CPD assigned position?* The examinee's current disabling condition is unrelated to the May 7, 2006 occurrence.

*d. Is the mechanism of the claimed injury sufficiently damaging, that a pre-existing condition does not contribute to the current disability?* Does not apply. Please see my answer to question (c) above.

6. *If disabled, what are your recommendations for any future medical treatments or accommodations, and prognosis for the officer's subsequent ability to return to police service?* I continue to recommend as noted in my February 8, 2023 report, that the examinee undergo a right total hip revision arthroplasty which is unrelated to the May 7, 2006 occurrence. His prognosis regarding his ability to return to police service is unlikely.

All opinions expressed in this report are within a reasonable degree of medical and surgical certainty.

If you have any further questions, please feel free to contact me.

Sincerely yours,

JAY L. LEVIN, MD, FAAOS

cc:    Mr. Bob Crawford
       Policeman's Annuity & Benefit Fund of Chicago
       e-mail: bob@chipabf.org

       Ms. Susan Commet
       Managed Care Consultants
       e-mail: scommet@mccimidwest.com

**Board Exhibit #4**
**Page 28**

the first surgery. Patient seems to be thinking about self-harm but not saying it openly to writer. Patient to consider attending a self-help group for cops. Also rethink going inpatient treatment at this time.

On September 19, 2023, the examinee was seen by Dr. McQuillan for a followup. Here to discuss quetiapine management. States it helps him go to sleep but not for a longer duration of time. Requesting a new medication for his leg pain. Moderately severe depression in PHQ. Problem list addressed at this visit includes primary osteoarthritis of right hip and other chronic pain. Service to pain management recommended. Follow up 3 months.

Referable to the questions raised in the October 3, 2023 letter forwarded to me regarding the examinee's right hip and left hip as it relates to the occurrence of May 7, 2006, I submit the following answers therein:

1. *Diagnosis. Regarding the claimed incident, what is your current diagnosis?* As it relates to the May 7, 2006 occurrence, he sustained an acute right iliac crest contusion and no acute injury to his left hip. *Are there any current disabling conditions, other than the one(s) from the claimed incident?* Yes. *If so, what are those diagnoses?* The examinee underwent a right total hip arthroplasty unrelated to the occurrence of May 7, 2006 and has continued significant complaints of pain and radiographic findings obtained today and at his prior visit of February 8, 2023 which show what appears to be loosening of his right acetabular component.

2. *Please obtain a history of injury(ies) sustained and subsequent medical treatment received, regarding: (1) The above diagnosis related to the claimed incident and (2) Any other concurrent conditions unrelated to the claimed incident which may be disabling.* Please see my report as noted above including my prior report dated February 8, 2023.

3. *Please include treatment recommendations from the officer's treating physician.* The examinee stated that he is to follow up with Dr. Luke at the end of the month to see what else can be done for him.

4. *Is the applicant able to return to work in any capacity, including limited duty assignments?* Regarding the diagnosis of a right iliac crest contusion from the May 7, 2006 occurrence, he can work in a full duty unrestricted capacity. The examinee appears to have loosening of his right total hip arthroplasty, which is causing him significant symptoms, and due to these symptoms, which are unrelated to the May 7, 2006 occurrence, he is unable to work at this time. *Please note and comment on the applicant's ability to perform the following functions.*
   **To be eligible for Limited Duty, an applicant must meet all the requirements listed in a, b & c. (Limited Duty to be defined as clerical/desk duty in a secured location, with little to no public interaction.):**
   *a. Have the physical ability to safely carry, handle, and use their Department-approved firearm.* No.
   *b. Have the physical ability to maintain an independent and stable gait without the assistance of external ambulatory supporting devices (e.g., crutches, canes, walkers, wheelchairs, etc.). Subject to evaluation by the CPD Medical Services Section, an eligible sworn Department member wearing a prosthesis or other orthopedic device (e.g., brace, cast, etc.) may be granted a limited duty assignment.* No.
   *c. Have the physical ability to safely drive a motor vehicle.* No.
   **Full Duty (Same as above, but to include the following):**

flexion strength 5-/5 on the right, 5/5 on the left. Anterior tibialis strength 5-/5 on the right, 5/5 on the left. Abduction strength 3/5 on the right, 5/5 on the left. Adduction strength 3/5 on the right, 5/5 on the left. Ankle inversion strength 5-/5 on the right, 5/5 on the left. Ankle eversion strength 5-/5 on the right, 5/5 on the left. Temperature of the midcalf 90.5 °F on the right, 90.5 °F on the left. Babinskis are downgoing bilaterally. Homan sign negative bilaterally. Patellar reflex trace bilaterally symmetric. Achilles reflex trace bilaterally symmetric. Hoover sign negative bilaterally with pain reported in the right hip. Sensation increased over the left medial/lateral calf, increased over the left medial/lateral foot and increased over left plantar foot to tuning fork. Dorsalis pedis pulses are equal.

Radiographs, AP pelvis with lateral of the right and left hip (3 views) taken at today's visit and viewed on Symmetry Digital PACS software demonstrates severe left hip osteoarthritis and chronic deformation consistent with possible AVN. There is 6.87 mm of lucency between the right acetabulum and the acetabular cup. These findings can be consistent with loosening of the right acetabular component. Multiple calcifications noted in the soft tissue lateral to the right prosthetic hip component visualized.

Records forwarded to me have been reviewed which includes a 2-page sworn limited duty program.

On January 23, 2023, the examinee was seen at K.A.M. Alliance Inc. He was seen for a new psych eval with Monique Mobley, MD. Chronic diagnosis sleep issues. States that he was a police officer and got removed from his unit due to his hip replacement. Stated he had to get his hip replaced. Taking pain meds for over 3 years and lost his job. He sits in the house because his hip is causing him too much pain. Current medications etodolac 500 mg, quetiapine 50 mg and Nabumetone 750 mg. It appears that I do not have the complete medical record of the January 23, 2023, office note with Dr. Mobley.

On February 20, 2023, the examinee was seen by Dr. Mobley for a followup. Under assessment noted seemed to be in a bad mood due to his hip pain. Seems to be very hopeless. Seems to not be able to sit long or stand long. Patient to continue to see writer at least once a month. Patient is to try to use art to express his feelings.

On March 2, 2023, the examinee was seen by Moira McQuillan, MD, for a followup on medication/urine issues PSA/shingles vaccine. Still having hip pain. Seeing ortho for that. Quetiapine helps him fall asleep but he wakes up after about 2 hours. Assessment primary insomnia and suprapubic pain.

On March 20, 2023, the examinee was seen by Dr. Mobley for an individual therapy appointment. It was noted that he seemed to be in a fair mood. He is to continue to see writer at least twice a month. Continue to express his feelings with writer positive and negative.

On April 10, 2023, the examinee was seen by Carol Alexander, DMP through K.A.M. Alliance for medication management. It noted that this office visit was canceled and rescheduled patient with different date.

The examinee was seen on April 17, 2023, by Dr. Mobley for an individual therapy session. Noted he seemed to be dealing with a lot of pain from his hips. He seems to be very depressed. Talks a lot about being tired and seeing why others kill themselves but stated he would not do that.

On May 15, 2023, the examinee was seen by Dr. Mobley for an individual therapy appointment. Noted he seemed to be in a fair mood. Seemed to be open to moving forward with new surgery but still holding onto issues from

**Board Exhibit #4**
**Page 26**

Regarding his left hip he states that he has pain anywhere from 0-4/10. He will only get occasional pain at the lateral aspect of the left hip. He does not have any radicular complaints down the left leg. He does not describe any popping, clicking, or catching type feeling in the left hip. His left hip complaints are "nowhere close to" his right hip complaints.

Coughing, sneezing, sitting, standing and walking he has constant right hip pain. He avoids driving and his wife drives him almost all of the time. He describes that he almost had a "bad accident" due to the sharp, stabbing pain in the right leg which caused him to push down on the accelerator when he shouldn't have. He avoids lifting as it causes increased right hip pain. He has constant pain in the right hip with bending over at the waist. He is unable to squat due to right hip pain. Going up and down stairs he describes that he is limited and it is "almost impossible" to go up and down stairs. Getting in and out of the car he has to sit down first and almost grab his right leg to pull it in and out of the vehicle. He has not had to kneel but does not think that he could do it. Twisting at the waist increases his right hip pain. He does not smoke. He denies any recent fevers or chills. He denies any loss of bowel or bladder. He reports numbness and tingling in his bilateral feet and bilateral hands at times. He has not noticed any weight loss since his date of injury. He has been off of work since he was last evaluated on February 8, 2023. He denies any history of substance abuse. He does not consume alcohol.

Current Medications: Etodolac 500 mg daily, Relafen 750 mg q. day, Cymbalta 60 mg q. day, and Seroquel 50 mg q. day.

Allergies: Vicodin.

Past Medical History: Ulcers and depression. He denies a past medical history of asthma, diabetes, hypertension, high cholesterol, thyroid dysfunction, kidney disease, prostate issues, rheumatoid arthritis, cancer or ADD/ADHD.

Past Surgical History: 1987 facial surgery and right total hip arthroplasty September 5, 2017. He denies undergoing any other surgical procedures.

Orthopedic physical examination reveals a well-developed male. Weight 204 pounds. Height 5'10" tall. Gait: The examinee required assistance from myself and my clinical assistant to rise from a seated position in the exam chair to standing. He uses a walker which was provided by my office as he only brought a cane and was not stable enough. He was able to use the walker without any assistance and reported that he uses a walker at home. He had an antalgic gait on the right side with a shuffling stride. He was not asked to walk in a toe/toe or heel/heel fashion due to his unsteady gait. Trendelenburg was not tested. He required assistance from myself and my clinical assistant to go from a standing position in the exam room to a supine position on the exam table. Abdomen soft and nontender. There was no pain with stressing the sacroiliac joints bilaterally. 20° right knee flexion contracture present. Bilateral trochanteric tenderness present on palpation without erythema present. Well-healed 5" right lateral hip scar is present. Distal quadriceps circumference 17" on the right, 17-1/2" on the left. Midcalf circumference 15-1/2" on the right, 14-1/4" on the left. Logroll test positive on the right with immediate pain diffusely in the right hip, positive on the left with immediate pain at the left lateral hip. True leg length 38" bilaterally. Active flexion of the right hip 25° with pain, on the left 40°. Internal rotation right hip 0° with pain, on the left 30°. External rotation right hip 0° with pain, on the left 20° with pain. Hip abduction on the right 10° with pain, on the left 25° with pain. Hip adduction 0° on the right with pain, 10° on the left with pain. EHL strength 4-/5 on the right, 5/5 on the left. Common toe extensor strength 4-/5 on the right, 5/5 on the left. Plantar

October 11, 2023

Mr. Kevin Reichart
Policeman's Annuity & Benefit Fund of Chicago
221 North LaSalle Street, Room 1626
Chicago, IL 60601

e-mail: kreichart@chipabf.org

RE:   TIMOTHY MORAGNE
CL#:   45846
DOI:   May 8, 2006 / Per the examinee May 7, 2006

Dear Mr. Reichart,

The above examinee was seen in my office on October 11, 2023, for an Independent Medical Examination reevaluation regarding his right hip and left hip. Throughout the entire evaluation when any direct contact was made with him my clinical assistant, Amanda Santoro was present. Nurse case manager, Ms. Aimee Duque-Randolph, RN was present in the office but not in the exam room. Mr. Moragne understands he presented for an Independent Medical Examination and as such no physician-patient relationship has been established.

The examinee is a 60-year-old right hand-dominant male who since last being evaluated in my office on February 8, 2023, states that he was seen by Dr. Luke and had physical therapy which did not give him "real improvement." Therapy was then stopped. He saw his primary care physician, Moira McQuillan, MD, in Evergreen Park where he received pain medications and anti-depressants. He was referred to a pain specialist but was unable to continue treatment as he was told that he owes over $13,000. He has not been getting treatment on a consistent basis due to not being able to pay his copays. He last saw Dr. Luke in January 2023 and has a follow up scheduled at the end of the month to see what else can be done to help with his constant pain. He denies having any further treatment.

Regarding his right hip he states that he is worse since his date of injury describing that he has constant pain at the lateral aspect of the right hip. He rates the pain as a 9/10. He tries to keep his right leg straight because when he bends his knee or flexes his hip, he will have terrible pain. He says he "can't live like this" and that he is "tired." He describes loss of motion of the right hip and that he has constant pain. He has popping, clicking and a catching type feeling in the right hip with range of motion. He denies any recent infections or any redness or warmth in his right leg. He has deep hip pain which is like a stabbing pain. He changes his position as needed and any change of position can cause him to have increased right hip pain. It is hard for him to do all daily activities and he is only able to get approximately 2-3 hours of sleep at night at a time. When he sits he can get a stabbing pain where he has to stand up immediately in order to get the stabbing pain to decrease. He does not have any symptoms below his right knee. He brought a cane to the office today but uses a walker at home which he did not bring with for his visit. He was provided with a walker while in my office today as he was not stable enough while using just the cane.

**Board Exhibit #4**
**Page 24**

# RADIOLOGY REPORT

**NAME:** Timothy Moragne

**REVIEW DATE:** February 8, 2023

**EXAM DESCRIPTION:** Radiographs, AP pelvis with lateral of the right and left hip (3 views)

**INDICATION:** Right and left hip pain

**INTERPRETATION:** Study demonstrates severe left hip osteoarthritis with chronic deformation consistent with possible AVN. There is 5.72 mm of lucency between the right acetabulum and the acetabular cup. Multiple calcifications in the soft tissue lateral to the right prosthetic hip component are noted. These findings can be consistent with loosening of the right acetabular component.

3350 WEST SALT CREEK LANE, SUITE 110
ARLINGTON HEIGHTS, ILLINOIS 60005
(847) 481-6000   FAX (847) 634-4700
www.LevinOrthopedics.com

Mr. Kevin Reichart
Policeman's Annuity & Benefit Fund of Chicago
RE: TIMOTHY MORAGNE
February 8, 2023
Page 8

    *a. Based upon your personal examination, what objective findings cause the disablement?* Radiographic findings demonstrate what appears to be loosening of the right acetabular component following right cementless total hip arthroplasty performed on September 5, 2017 by Kevin Luke, MD.

    *b. Is the disabling injury casually related to the claimed incident?* No.

    *c. Is the officer's current injury exacerbated by a prior medical condition, prior injury, or pre-existing dormant condition, which now results in an inability to return to a CPD assigned position?* The diagnosis of a right iliac crest contusion from the May 7, 2006, was an acute injury therein. His current disabling condition is unrelated to the May 7, 2006 occurrence.

    *d. Is the mechanism of the claimed injury sufficiently damaging, that a pre-existing condition does not contribute to the current disability?* Does not apply. Please see my answer to question (c) above.

6.     *If disabled, what are your recommendations for any future medical treatments or accommodations, and prognosis for the officer's subsequent ability to return to police service?* Reviewing the examinee's radiograph of the right hip in concert with his physical examination findings of today's date, a right total hip revision arthroplasty would be a reasonable appropriate surgical intervention. Respectfully, I do not agree with Dr. Kevin Luke's comments as noted in a November 28, 2022 office visit that the components are intact and, in my opinion, one should consider the possibility that he has a lucency surrounding the femoral stem. The examinee could either live with his condition or consider a variation of a revision right total hip arthroplasty which is unrelated to the May 7, 2006 occurrence. His prognosis regarding his ability to return to police service is poor/unlikely.

All opinions expressed in this report are within a reasonable degree of medical and surgical certainty.

If you have any further questions, please feel free to contact me.

                          Sincerely yours,

                          JAY L. LEVIN, MD, FAAOS

cc:     Mr. Bob Crawford
       Policeman's Annuity & Benefit Fund of Chicago
       e-mail:

       Ms. Susan Commet
       Managed Care Consultants
       e-mail:

**Board Exhibit #4**
**Page 22**

Mr. Kevin Reichart
Policeman's Annuity & Benefit Fund of Chicago
RE: TIMOTHY MORAGNE
February 8, 2023
Page 7

Referable to the questions raised in the January 27, 2023 letter forwarded to me regarding the examinee's right and left hip as it relates to the occurrence of May 7, 2006, I submit the following answers therein:

1. *Diagnosis. Regarding the claimed incident, what is your current diagnosis?* Right iliac crest contusion from the occurrence of May 7, 2006. The examinee did not sustain an acute injury to his left hip from the May 7, 2006 occurrence. *Are there any current disabling conditions, other than the one(s) from the claimed incident?* Yes. *If so, what are those diagnoses?* The examinee underwent a right total hip arthroplasty unrelated to the occurrence of May 7, 2006. He has continued complaints and as commented on in my report above, radiographs obtained today show what appears to be loosening of the right acetabular component.

2. *Please obtain a history of injury(ies) sustained and subsequent medical treatment received, regarding: (1) The above diagnosis related to the claimed incident and (2) Any other concurrent conditions unrelated to the claimed incident which may be disabling.* Please see my report as noted above.

3. *Please include treatment recommendations from the officer's treating physician.* As noted above, the examinee stated when he was last seen by Dr. Luke, he was told that there was nothing else that Dr. Luke could do for him.

4. *Is the applicant able to return to work in any capacity, including limited duty assignments?* Regarding his diagnosis from the May 7, 2006 occurrence of a right iliac crest contusion, the examinee can work in a full duty unrestricted capacity which is also contestant with the records reviewed above where he was returned to work full duty on September 18, 2006. Regarding his current disabling condition noted in my answer to question #1 above which appears to be loosening of the right total hip arthroplasty, he is unable to work at this time. *Please note and comment on the applicant's ability to perform the following functions.*

   *To be eligible for Limited Duty, an applicant must meet all the requirements listed in a, b & c. (Limited Duty to be defined as clerical/desk duty in a secured location, with little to no public interaction.):*
   *a. Have the physical ability to safely carry, handle, and use their Department-approved firearm.* No.
   *b. Have the physical ability to maintain an independent and stable gait without the assistance of external ambulatory supporting devices (e.g., crutches, canes, walkers, wheelchairs, etc.). Subject to evaluation by the CPD Medical Services Section, an eligible sworn Department member wearing a prosthesis or other orthopedic device (e.g., brace, cast, etc.) may be granted a limited duty assignment.* No.
   *c. Have the physical ability to safely drive a motor vehicle.* The examinee can drive a motor vehicle in a civilian capacity, but as noted above, his wife drove him to today's evaluation as he avoids driving and only drives short distances. He is unable to drive a motor vehicle in a high speed chase or similar maneuver required as an on duty police officer.
   *Full Duty (Same as above, but to include the following):*
   *d. Have the physical ability to safely effectuate an arrest of an arrestee who is defined as an active resister.* No.

5. *In the event you find the officer is disabled, and unable to return to __any__ assigned position (which may include a limited duty assignment), __please provide an opinion__ for the following questions.*

**Board Exhibit #4**
**Page 21**

Mr. Kevin Reichart
Policeman's Annuity & Benefit Fund of Chicago
RE: TIMOTHY MORAGNE
February 8, 2023
Page 6 ʹ

On April 12, 2021, the examinee was seen by Dr. McQuillan for a 6 month followup. Noted slipped in the kitchen and pulled his right leg thigh R has a knot now. Painful #9 happened last Thursday. He did not fall, tried to catch himself. Felt a snap at the time. He can walk with pain. His limp is more pronounced than normal.

On June 29, 2021, it noted that he tested positive for Covid-19 on June 15, 2021, and is currently symptomatic. He can return to work July 5, 2021. This is signed by Dr. McQuillan.

On August 24, 2021, the examinee was seen at Parkview Orthopedics by Dr. Luke for a followup. Chief complaint, right lateral hip pain. Status post right cementless total hip arthroplasty with Biomet Taperloc standard offset stem/G7 acetabulum/Biolox ceramic head September 5, 2017. Returns today with increasing pain and discomfort about the right lateral hip. Denies any recent precipitating events or trauma per se. He again noted increased pain and discomfort about his right lateral hip in July of this year. Utilizing meloxicam and tramadol with minimal improvement. He was taken off work secondary to pain and disability. He comes in today for evaluation and consideration right lateral hip pain. Plan, discontinue meloxicam and placed on Relafen 750 mg p.o. b.i.d. with meals. Topical and local modalities versus Voltaren gel have been discussed. Consideration for lidocaine patches. Recommend physical therapy for pain and disability at this junction. Follow up 3 weeks after he starts physical therapy with new exam. He is to continue off of work.

The examinee continued to follow up with Dr. McQuillan for right hip pain noting in a progress noted dated July 11, 2022, that his right hip pain is bad.

On July 11, 2022, the examinee had a letter to whom it may concern authored by Dr. McQuillan noting he is not to drive for work for 6 weeks. Return to drive August 22, 2022.

The examinee was seen by Dr. Luke on October 14, 2022, where it was again recommended that he attend physical therapy for his continued right hip pain.

On November 28, 2022, the examinee was seen by Dr. Luke for a followup. Chief complaint, persistent right lateral hip pain. History of right hip greater trochanteric bursitis. Status post right cementless total hip arthroplasty September 5, 2017, and BMI noted as 28.7. Diagnosis, persistent subjective right hip greater trochanteric bursitis pain and disability with exam consistent with right hip greater trochanteric bursitis. Status post total right hip arthroplasty, component intact. He again has apparently been approved for physical therapy. Recommend physical therapy for modalities, range of motion and strengthening for pain and disability. Will discontinue Relafen and placed on generic Lodine 500 mg 1 tab by mouth b.i.d. with meals p.r.n. Will use topical and local modalities versus Voltaren gel. Recommend an infra Rx far-infrared heating pad for home use. This to help his pain/disability about his soft tissue issues about his right hip greater trochanteric region. He is continued off work at this time secondary to the need for therapy and to help diminish his pain and disability. Follow up 3 weeks after he starts therapy with new exam. Diagnoses noted as persistent subjective right hip greater trochanteric bursitis pain and disability with exam consistent with right hi greater trochanteric bursitis, and status post right total hip arthroplasty – components intact.

On December 8, 2022, an initial evaluation/plan of care is authored through ATI Physical Therapy for diagnosis bursitis right hip. It is recommended that he be seen 2 times a week for 6 weeks.

Mr. Kevin Reichart
Policeman's Annuity & Benefit Fund of Chicago
RE: TIMOTHY MORAGNE
February 8, 2023
Page 5

needed for his neck problem which has underlying arthritic condition but in general he is now well enough to return to most of the activities that he would require in line of duty.

On September 14, 2006, a handwritten note on a prescription pad of Dr. Gandhi notes cervical strain. May return to full duty work on September 18, 2006.

The next medical record I have in my possession is dated September 23, 2011, when the examinee was seen at Parkview Orthopedic Group by Kevin Luke, MD. Chief complaint, consultation right hip pain. Noted 48-year-old gentleman with multi-year history of increasing pain and discomfort, right hip. Recently increased to the point where it now interferes with activities. He notes pain in the right hip, groin, and thigh region. Denies radicular signs or symptoms or shooting pain. He was seen by Dr. Vargas, x-rayed and referred to us for evaluation and consultation regarding right hip pain. He is currently on no anti-inflammatory medication. There is no documentation in this office note dating back any of his right hip complaints to a May 7, 2006 occurrence. On physical exam, mild limp favoring his right hip, lower extremity. Diminished internal and external rotation to his right hip. Mild flexion contracture. Pain and discomfort about right hip consistent with arthritic type process. Positive dorsiflexion and positive plantarflexion. Diminished motion of the hip consistent with an arthritic type process. X-rays of the right hip demonstrate degenerative joint disease of the right hip. There are osteophyte and early bone-on-bone changes noted on the lateral. Sclerosis and exam consistent with degenerative joint disease, right hip. Diagnosis, degenerative joint disease, right hip. Discussed possibility of total hip arthroplasty. At this juncture going to try conservative measures. Placed him on meloxicam 15 mg 1 p.o. q. day. Recommend some weight reduction. Recommend chondroitin and glucosamine. He will try the symptomatic treatment and medicinal treatment to see if this helps. Ultimately if he fails, potential use of cortisone injection to hip joint. This may buy him some time as he is 48 years old. Ultimately if he fails, looking at the need for total hip arthroplasty.

Followup visits with Dr. Luke have been reviewed including the examinee undergoing a right hip arthrogram and cortisone injection on June 5, 2012, CT abdomen and pelvis with contrast on July 20, 2015, and continued treatment through the examinee undergoing a right cementless total hip arthroplasty with Biomet Taperloc standard offset stem/G7 acetabulum/Biolox ceramic head performed on September 5, 2017, at Advocate Christ Medical Center by Kevin Luke, MD, and assisted by Mitchell Meghpara, MD.

Postoperative visits along with physical therapy being completed at Athletico have been reviewed. This includes a work conditioning functional discharge report dated March 26, 2018, from Athletico noting that the examinee met 100% of his job demands. The physical demand level of the job is a medium physical demand level. Client does demonstrate the physical capabilities and tolerances to perform all of the essential functions of the job. Recommend discharge from PT at this time. Follow up with MD. Return to work full duty.

Additional medical records have been reviewed including progress notes from Rafael Vargas-Zapata, MD. An April 22, 2019, progress note noted complaints of right hip pain that has been present since hip replacement 2017, feels as if something is poking him, complains of lower back pain after he bent over this morning, pain on his way up, pain has lessened since morning. Assessment included primary osteoarthritis of right hip.

The examinee was seen on November 10, 2020, by Moira McQuillan, MD, where it was noted he still has discomfort in the right hip. On meloxicam and it is not working. Cannot take tramadol when working. Assessment, osteoarthritis of right hip, unspecified osteoarthritis type. He refilled tramadol and meloxicam and recommend to see ortho.

Mr. Kevin Reichart
Policeman's Annuity & Benefit Fund of Chicago
RE: TIMOTHY MORAGNE
February 8, 2023
Page 4

contusion of the right iliac crest area possibly related to seat belt. Has abrasion on left leg. This is healing. The neck area has marked limitation of movement with muscle spasm in this area. Weakness right hand and wrist noted which could be related to problems of the neck area. Advised muscle relaxant and physical therapy for this problem. Not able to return to work.

On May 17, 2006, the examinee was seen for physical therapy for diagnosis cervical strain with right upper extremity radiation. There is no documentation of any right hip complaints or left hip complaints in this physical therapy note.

On May 18, 2006, the examinee was seen by Dr. Gandhi noting pain in neck and back of the head has gotten worse. Numbness of right hand. These are all related to cervical strain and possible disc injury. There is no documentation of any right or leg hip complaints.

Physical therapy notes from Physiotherapy Associates have been reviewed.

On June 8, 2006, the examinee was seen by Dr. Gandhi for a followup. Noted that he was found to have degenerative changes in the cervical spine along with findings consistent with foraminal narrowing and his neck area bilaterally. There was no documentation of any right or left hip complaints.

On June 22, 2006, the examinee was seen by Dr. Gandhi for a followup. Still has weakness right upper extremity and stiffness of the neck. There is no documentation of any right or left hip complaints.

Additional physical therapy notes through Physiotherapy Associates have been reviewed.

On July 6, 2006, the examinee was seen by Dr. Gandhi for a followup. Notes still gets aches and pains at the end of the day. Range of motion and strength improving. Recommend to continue therapy a few more weeks, then recheck again in approximately 4 weeks' time which I expect to have him return to work.

On August 3, 2006, the examinee was seen by Dr. Gandhi for a followup. Seen regarding his cervical spine and right upper extremity. There is no documentation of any right or left hip complaints.

Additional physical therapy has been reviewed.

On August 17, 2006, the examinee was seen by Dr. Gandhi for a followup. He is undergoing work conditioning program. Doing 3 hours a day. Finding this difficult and symptoms have increased including tingling and numbness in the right arm and hand. It is likely that this will subside with continuing work conditioning program. He still has 1 more week of this left. There is no documentation of any right or left hip complaints in this office note.

On August 24, 2006, the examinee was seen by Dr. Gandhi for a followup. There is no documentation of any right or left hip complaints in the office note.

Additional physical therapy notes have been reviewed.

On September 12, 2006, the examinee was seen by Dr. Gandhi for a followup. Noted he has now recovered significantly for him to return to full duty work. Advised to continue regular exercises and take medications as

Mr. Kevin Reichart
Policeman's Annuity & Benefit Fund of Chicago
RE: TIMOTHY MORAGNE
February 8, 2023
Page 3

Past Medical History: Ulcers. He denies a past medical history of asthma, diabetes, hypertension, high cholesterol, thyroid dysfunction, kidney disease, prostate issues, rheumatoid arthritis, cancer or ADD/ADHD.

Past Surgical History: 1987 facial surgery and September 5, 2017 right total hip arthroplasty. He denies undergoing any other surgical procedures.

Orthopedic physical examination reveals a well-developed male in no acute distress. Weight 198 pounds. Height 5'10" tall. Gait, the examinee walks with a cane in his right hand. With right heel strike, he states he has pain in the right hip and is unsteady. Holding onto the exam table for balance, Trendelenburg is attempted but he is too unsteady and cannot put full weight on his right lower extremity. Supine on the exam table: He keeps his right hip flexed to 20°. Abdomen is soft and non-tender. There is no pain with stressing the sacroiliac joints bilaterally. Straight leg raise on the right gives immediate right lateral hip pain, negative on the left. Internal rotation of the right hip 5° with significant pain, on the left 20° with minimal left hip pain. External rotation of the right hip 5° with significant pain, 20° on the left with minimal left hip pain. Hip adduction 5° on the right with significant right hip pain and 20° on the left without complaints of pain. Hip abduction 5° on the right with significant pain and 20° on the left without complaints of pain. There is tenderness over the right greater trochanter, negative on the left. No erythema, ecchymosis or abrasions noted in the bilateral lower extremities. There is no midshaft tenderness bilaterally. Flexion contracture of 15° of the right knee. No local tenderness over the right or left knee on palpation. FABER sign is positive on the right for hip pain, negative on the left. FADIR sign is positive on the right for hip pain, negative on the left. Distal quadriceps circumference 17-1/2" on the right, 17" on the left. Midcalf circumference 15-1/2" on the right, 15" on the left. Temperature of the distal thigh 94.6 °F on the right, 95.1 °F on the left. Temperature of the midcalf 89.7 °F bilaterally. Logroll he cannot do on the right as any motion causes "too much pain." Log roll on the left negative. Sensation symmetric over the medial calf, increased over the left lateral calf, symmetric over the medial/lateral thigh, medial/lateral foot and symmetric over the plantar aspect of the foot to tuning fork. EHL strength 5/5 bilaterally. Common toe extensor strength 4+ to 5-/5 on the right, 5/5 on the left. Plantar flexion strength 5/5 bilaterally. Anterior tibialis strength 5/5 bilaterally. Abduction strength 5/5 bilaterally. Adduction strength 5/5 bilaterally. Ankle inversion strength 5/5 bilaterally. Ankle eversion strength 5/5 bilaterally. Hoover sign unable to test on the right, negative on the left. Quadriceps strength 5-/5 on the right, 5/5 on the left. Iliopsoas strength 5-/5 on the right, 5/5 on the left. Sitting over the side of the exam table: Patellar reflex 1+ bilaterally symmetric. Achilles reflex trace to absent on the right, 1+ on the left. Homans sign negative bilaterally. Dorsalis pedis pulses are equal. Babinskis are downgoing. Well-healed 5" right hip scar is noted.

Radiographs, AP pelvis with lateral of the right and left hip (3 views) taken at recent visit and viewed on Symmetry Digital PACS software demonstrates severe left hip osteoarthritis with chronic deformation consistent with possible AVN. There is 5.72 mm of lucency between the right acetabulum and the acetabular cup. Multiple calcifications in the soft tissue lateral to the right prosthetic hip component are noted. These findings can be consistent with loosening of the right acetabular component.

Records forwarded to me have been reviewed which includes an injury on duty report dated May 7, 2006, which notes abrasion to head, pain to right ankle and knee. Responding to call to assist officers. They were involved in traffic crash and sustained serious injuries. Injuries that the officer sustained were serious and still being evaluated.

On May 11, 2006, the examinee was seen by Vikram Gandhi, MD. Noted involved in another accident in trying to get out of this burning car, sustained injuries. His neck has been strained in the process and he also has

<b>Board Exhibit #4<br>Page 17</b>

Mr. Kevin Reichart
Policeman's Annuity & Benefit Fund of Chicago
RE: TIMOTHY MORAGNE
February 8, 2023
Page 2

September 5, 2017. He was in the hospital for 3 days denying any wound healing issues or any infections. He attended a significant amount of physical therapy following surgery and was able to return back to work full duty approximatly 3-4 months following surgery. He continued to have complaints and saw Dr. Luke for followup's over the years being on tramadol and Mobic for a 5 year period. Dr. Luke told him that his x-rays looked good, diagnosed him with bursitis of the left hip and told him that he could try additional physical therapy which he did. He continued to work and started to have more frequent pain in or around December 2021 and by July 2022 he stopped working due to the amount of pain he was in and he has been off work since. Dr. Luke told him that there is nothing else that he can do for him. The examinee wishes that he did not have the surgery in the first place as he has constant daily pain. His left hip complaints he believes is from him compensating for his right hip. He has no specific known injury to his left hip.

Regarding the examinee's right hip, he rates his average pain as a 9/10. He is 0% improved since his date of injury. He describes shooting pain at all times in the right hip. When the shooting pain occurs, the pain can go up to a 10/10. He will get spasms at times. He has severe weakness in his right lower extremity and is unable to put full weight on the right lower extremity without significant pain and feeling he is unstable. He has pain at the lateral aspect of the right hip and uses a cane in his right hand all the time as he is having balance issues. His right leg will give out on him and he has fallen. The examinee stopped carrying his gun in August 2022 as he felt that he could not carry it safely and could not protect his weapon due to his significant pain and weakness. The examinee has loss of motion of the right hip.

Regarding his left hip, he is 0% improved since his date of injury rating his average pain as a 6/10. He has pain at the lateral aspect of the left hip which he describes as "not as bad" as his right hip. He does not get a throbbing or shooting pain in the left hip and his left hip pain comes and goes. He believes that the left hip pain is caused from compensating for his right lower extremity. He does not describe any loss of motion, popping, clicking or catching type feeling in the left hip.

Coughing and sneezing he has no increased pain. Sitting and standing causes increased pain. Lying down increases his pain. Walking increases his pain. The examinee is able to drive but only does short distances and his wife drove him to today's visit. The examinee avoids driving as it does increase his pain. He has increased pain with lifting, bending over at the waist, kneeling and twisting at the waist. Getting in and out of the car he has increased pain. He avoids squatting as it causes increased pain. Going up and down stairs increases his pain worse so going up stairs rather than going downstairs. He does not smoke. He denies any recent fevers or chills. He denies any loss of bowel or bladder. He reports numbness and tingling in the bilateral upper extremities at times. He denies any weight loss since his date of injury. The examinee worked full duty until undergoing surgery on September 5, 2017, consisting of a right total hip arthroplasty and was off work following surgery for approximately 3-4 months when he returned back to work full duty. He worked full duty until July 11, 2022, and due to continued pain he was taken off of work. He denies any other injuries since the May 7, 2006 occurrence. He does hold a broker's license which he was hoping to be able to sell homes when he retires but due to the significant amount of pain he has, he is unable to even go and show any homes. He denies any history of substance abuse. He does not consume alcohol.

Current Medications: Meloxicam p.r.n., tramadol p.r.n., turmeric daily, Relafen daily, Seroquel daily, etodolac daily and Cymbalta daily.

Allergies: None known.

**Board Exhibit #4**
**Page 16**


**LEVIN ORTHOPEDICS,S.C.**

February 8, 2023

Mr. Kevin Reichart
Policeman's Annuity & Benefit Fund of Chicago
221 North LaSalle Street, Room 1626
Chicago. IL 60601

**e-mail:** kreichart remini ad on

RE: TIMOTHY MORAGNE
CL#: 45846
DOI: May 8, 2006 / Per the examinee May 7, 2006

Dear Mr. Reichart,

The above examinee was seen in my office on February 8, 2023 for an Independent Medical Examination referable to his right and left hip. Throughout the entire evaluation when any direct contact was made with him, my clinical assistant, Amanda Santoro was present. Present in the office but not in the exam room was nurse case manager, Ms. Aimee Randolph, RN. Mr. Moragne understands he presented for an Independent Medical Examination and as such no physician-patient relationship has been established.

The examinee is a 59-year-old right hand-dominant male who has been employed by the City of Chicago working full time since August 1998 as a police officer. In his job he works for internal affairs where he does investigations and surveillance in an unmarked squad. He does a lot of driving, office work and sitting.

He had a prior work related injury in March 2006 when he fell in the parking lot and injured his right shoulder. He did not require any surgery and was able to return back to work full duty. He denies any prior MRIs, x-rays, injuries, treatment, complaints or ever being involved in a motor vehicle accident where he had an injury to his right hip or left hip prior to the May 7, 2006 injury.

On May 7, 2006, he was seat belted in the back of an unmarked squad, with 2 other police officers in the front seat. They were in pursuit of an offender that was speeding on the expressway and as they went to make a quick exit to follow the offender, the police officer driving the car lost control and the car flipped 3 or 4 times landing back over the right side up. The examinee frantically looked for his radio to call in the accident and as he went to try to get out of the vehicle, the vehicle caught on fire. He had to kick the window with his foot to break it so he could get out and went to help the other 2 officers out of the vehicle. The car was filled with smoke and one of the officers had to shoot out the window to get the smoke to dissipate. He was able to help one of the officers out and the other officer had to be removed when additional help came. The examinee was taken by ambulance to Northwestern describing he did not have hip pain right away but that his hip pain was gradual on the right side. He was told that he bruised his hip and underwent physical therapy. He underwent multiple cortisone injections since the injury performed by Dr. Luke through Parkview Orthopedics. Dr. Luke finally told him that he was not able to have any additional cortisone injections and the examinee underwent a right total hip arthroplasty on

3350 WEST SALT CREEK LANE, SUITE 110
ARLINGTON HEIGHTS, ILLINOIS 60005
(847) 481-6000 FAX (847) 634-4700
www.LevinOrthopedics.com

**Board Exhibit #4**
**Page 15**

| | | 2022 12-JUL-2022 | 2022 19-AUG-2022 | Recurrence Of I.O.D. | HIP PAIN CAN NOT DRIVE WHILE T | | 39 | 07-MAY-2006 | PC0Z739 | PC0CQ40 |
|---|---|---|---|---|---|---|---|---|---|---|
| **report total:** | **\*\*\*\*** | | | | | **122** | **413** | | | |

## Limited Duty Summary

no data found

**LD, NON-IOD Calculation**
**Effective Date End Date Calendar Days**
Total LD, NON-IOD days: **0**

User:PC0CP85

Board Exhibit #3
Page 14

**Chicago Police Department**                                      **Day Count Summary**

## Employee Information

| | | | |
|---|---|---|---|
| Name | [MORAGNE, TIMOTHY W ] | Assigned Unit [121 ] | Emp No. [45846 ] |
| Address | [8033 S ALBANY AVE ] | Detailed Unit [006 ] | Star No. [N/A ] |
| | [CHICAGO IL 60652 ] | Watch [2 ] | Position [POLICE OFFICER ] |
| Phone No. | [(773) 842-1496 ] | Day Off Group [63 ] | District of Residence [008 ] |
| Furlough Period | [05B,12B, ] | | |

[ ]

## Day Count Details

| | First Day ▲ | Last Day | Category | Nature of Sickness Injury | Non-IOD Days | IOD Days | IOD Date | Created By | Modified By |
|---|---|---|---|---|---|---|---|---|---|
| **** | 06-JUL-2004 | 15-JUL-2004 | Sickness | ABDOMINAL PAIN/CRAMPS | 10 | | | PC0Q141 | PC0T980 |
| Edit **** | 15-MAR-2006 | 01-MAY-2006 | Injured On Duty | INJURED RT. SHOULDER | | 48 | 12-MAR-2006 | PC0Q084 | PC0V913 |
| Edit **** | 08-MAY-2006 | 17-SEP-2006 | Injured On Duty | ABRASION TO THE HEAD, PAIN TO | | 133 | 07-MAY-2006 | PC0M071 | PC0U543 |
| Edit **** | 05-SEP-2017 | 23-DEC-2017 | Recurrence Of I.O.D. | HIP SURGERY | | 110 | 07-MAY-2006 | PC0G981 | PC01778 |
| **** | 24-DEC-2017 | 06-JAN-2018 | Furlough | | | | | | PC01778 |
| Edit **** | 07-JAN-2018 | 27-MAR-2018 | Recurrence Of I.O.D. | HIP SURGERY | | 80 | 07-MAY-2006 | PC01778 | PC0BR58 |
| **** | 16-JAN-2019 | 17-JAN-2019 | Sickness | HIP PAIN | 2 | | | PC0H642 | PC0BR58 |
| Edit **** | 06-AUG-2019 | 08-AUG-2019 | Recurrence Of I.O.D. | RIGHT HIP PAIN | | 3 | 07-MAY-2006 | PC0G981 | PC0BR58 |
| **** | 29-JAN-2020 | 31-JAN-2020 | Sickness | COLD/FLU SYMPTOMS | 3 | | | PC0G981 | PC0AO22 |
| **** | 02-APR-2020 | 30-APR-2020 | Sickness | COLD/FLU SYMPTOMS | 29 | | | PC0K607 | ILCPDSBAAG |
| **** | 23-SEP-2020 | 06-OCT-2020 | Sickness | COLD/FLU SYMPTOMS | 14 | | | PC0G981 | ILCPDSBAAE |
| **** | 24-JUN-2021 | 12-AUG-2021 | Sickness | COVID | 50 | | | PC0G981 | PC0BU15 |
| **** | 25-APR- | 08-MAY- | Sickness | OUT PATIENT PROCEDURE | 14 | | | PC0Q742 | PC0CQ96 |

Board Exhibit #3 Page 13



**CLEAR11g**



Medical / Timekeeping

Print | Logout | Help



## Employee Information

| | | | | | |
|---|---|---|---|---|---|
| Name | MORAGNE, TIMOTHY W | Assigned Unit | 121 | Emp No. | 45846 |
| Address | 8033 S ALBANY AVE | Detailed Unit | 006 | Star No. | N/A |
| | CHICAGO IL 60652 | Watch | 2 | Position | POLICE OFFICER |
| Phone No. | (773) 842-1496 | Day Off Group | 63 | District of Residence | 008 |
| Furlough Period | 05B,12B, | | | | |

## Day Count Summary

| IOD / Non-IOD | IOD Date ▼ | Calendar Days | Number Of Absences |
|---|---|---|---|
| Non-IOD from 01-JAN-2006 | | 112 | 6 |
| IOD | 07-MAY-2006 | 365 | 4 |
| IOD | 12-MAR-2006 | 48 | 1 |
| report total: | | 525 | 11 |

row(s) 1 - 3 of 3

## Limited Duty Summary

no data found

**LD, NON-IOD Calculation**

**Effective Date End Date Calendar Days**

Total LD, NON-IOD days: **0**

User: PC0CP85
Module: 15090  $Revision: 1.65 $

Copyright © 2007. All rights reserved.

# PERSONNEL ACTION REQUEST (PAR FORM)

HUMAN RESOURCES DIVISION
CHICAGO POLICE DEPARTMENT

TODAY'S DATE
18 Aug 22

## MEMBER'S INFORMATION

MEMBER TO BE AFFECTED (LAST NAME - FIRST - M.I.)
Moragne, Timothy W.

STAR NO. 45846

EMPLOYEE NO. 45846

UNIT ASSIGNED 006

EFFECTIVE DATE 20 Aug 99

JOB TITLE Police Officer

## TYPE OF ACTION REQUESTED (Check only one box.)

- [✓] LEAVE, DISABILITY PENSION - SWORN ONLY
- [ ] LEAVE, OTHER (30 DAYS AND OVER)
- [ ] RETIREMENT
- [ ] TRANSFER REQUEST
- [ ] RECOGNIZED OPENING BID (FOP)
- [ ] RECOGNIZED VACANCY BID (FOP)

- [ ] UNPAID ABSENCE (29 DAYS AND UNDER) NO INSURANCE BENEFITS
- [ ] LEAVE, EXTENSION OF
- [ ] RESIGNATION
- [ ] SEPARATION TO ACCEPT OTHER CITY POSITION/TITLE
- [ ] FAMILY MEDICAL LEAVE ACT (FMLA)
- [ ] FAMILY MEDICAL LEAVE ACT (FMLA) INTERMITTENT

## PERSONNEL TRANSFER & ASSIGNMENT SECTION

| UNIT OF ASSIGNMENT REQUESTED | HOME ADDRESS 8053 S Albany Ave Chicago | TELEPHONE NO. (773) 849-1490 | SENIORITY DATE | TITLE CODE | GRADE |
|---|---|---|---|---|---|
| DATE ASSIGNED TO PRESENT UNIT | DATE OF BIRTH | [✓] UNIT NOTICE OF RECOGNIZED OPENING NO | | POSITION REQUESTED | |
| | | [ ] RECOGNIZED VACANCY LISTING AMC NO: | | | |
| DATE SUBMITTED | TIME SUBMITTED | COMMANDING OFFICER'S SIGNATURE TIM810@AOL.COM | | STAR NO. | |

## LEAVE OF ABSENCE AGREEMENT (Member must complete this agreement when requesting any leave of absence.)

TO SUPERINTENDENT OF POLICE:

I HEREBY TENDER MY RESIGNATION AS _Police Officer_ FROM THE DEPARTMENT OF POLICE,
(POSITION OR RANK)

TO TAKE EFFECT IF I FAIL TO REPORT FOR DUTY IMMEDIATELY AT THE EXPIRATION OF MY LEAVE, _____
(EXPIRATION DATE OF LEAVE)

_(SIGNATURE OF MEMBER)_

I HEREBY ACCEPT THE RESIGNATION OF _____ BECAUSE OF FAILURE TO COMPLY WITH ABOVE

AGREEMENT, THIS _____ DAY OF _____ , 20 ___ .

(SUPERINTENDENT OF POLICE)

## REMARKS SECTION

Moragne, T. MEMBER HAS EXHAUSTED ALL AVAILABLE MEDICAL DAYS AS OF 19 Aug 22
A LEAVE OF ABSENCE REQUEST IS EFFECTIVE AS OF 20 Aug 22

RECEIVED AUG 18 2022

## SIGNATURES

SIGNATURE OF MEMBER (IF REQUIRED)

| RECOMMEND | SIGNATURE & TITLE |
|---|---|
| [ ] APPROVAL | |
| [ ] DISAPPROVAL | |

RECOMMEND | SIGNATURE & TITLE (UNIT C.O.)
- [ ] APPROVAL
- [ ] DISAPPROVAL

| RECOMMEND | SIGNATURE & TITLE |
|---|---|
| [ ] APPROVAL | |
| [ ] DISAPPROVAL | |

## HUMAN RESOURCES DIVISION SECTION ONLY

RECOMMEND | SIGNATURE
- [ ] APPROVAL
- [ ] DISAPPROVAL

RECOMMEND | SIGNATURE
- [✓] APPROVAL
- [ ] DISAPPROVED

COMMENTS

BIA CLEARANCE AS OF:

CPD-11.612 (REV. 9/20)    DISTRIBUTION: WHITE - HUMAN RESOURCES DIVISION  YELLOW - FINANCE  PINK - MEMBER  GOLD - UNIT

**Board Exhibit #2**
**Page 11**

Office of Public Safety Administration                                   15 September 2022
Medical Services Section


**TO:**          Erin Keane
                 Executive Director
                 Policemen's Annuity Benefit Fund

**FROM:**        Michele Spikes-Cain
                 Medical Administrator
                 Medical Services Section

**SUBJECT:**     Application for Duty Disability Pension

**RE:**          Moragne, Timothy W.
                 Employee # 45846

Police Officer Moragne exhausted all available IOD medical days afforded to all FOP members under the union's collective bargaining agreement effective 19 AUG 2022.

The following is a calendar breakdown of those benefits used:

| First Day | Last Day | Days Used |
|-----------|----------|-----------|
| 08 May 06 | 17 Sep 06 | 133 |
| 05 Sep 17 | 23 Dec 17 | 110 |
| 07 Jan 18 | 27 Mar 18 | 80 |
| 06 Aug 19 | 08 Aug 19 | 3 |
| 12 Jul 22 | 19 Aug 22 | 39 |
| **Total** | | **365** |

Furlough: 24 Dec 17 – 06 Jan 18

For purposes of this application, the following diagnosis shall be considered: "s/p total right hip arthroplasty, chronic right hip pain, severe osteoarthritis, left hip,".


Michele Spikes-Cain
Medical Administrator
Medical Services Section

**Board Exhibit #2**
**Page 10**

## PROOF OF SERVICE BY MAIL

I, Robert Crawford, certify that I served a copy of the within notice of hearing by mailing to the individual named at the address reflected herein (by certified mail with return receipt requested) and to his/her retained counsel with a written appearance on-file (by first-class mail) by depositing the same in the U.S. Mail, at 221 N. LaSalle St., Chicago, Illinois, with proper postage prepaid on September 27, 2023.

CERTIFIED MAIL – RETURN RECEIPT
#7022 2410 0002 9743 3213

SUBSCRIBED TO AND BEFORE
ME THIS DAY OF
September 27, 2023

NOTARY PUBLIC

"OFFICIAL SEAL"
KATHLEEN M HYLTON
NOTARY PUBLIC. STATE OF ILLINOIS
My Commission Expires August 29, 2024

3

**Board Exhibit #1**
**Page 9**

## STATEMENT OF PURPOSE

The purpose of this hearing is to provide, without undue technicality and expense, the swift, efficient, and fair resolution of your matter / application allowing for a full and fair opportunity to be heard.

BE ADVISED, IT IS YOUR OBLIGATION TO PROVE ENTITLEMENT TO THE BENEFIT SOUGHT, OR ENTITLEMENT TO A CONTINUATION WITHOUT MODIFICATION OR TERMINATION, OF ANY BENEFIT PREVIOUSLY AWARDED. THEREFORE, YOU ARE ADVISED TO PRESENT TO THE BOARD FOR ITS CONSIDERATION ALL PROOFS WHICH YOU DEEM NECESSARY TO ESTABLISH ENTITLEMENT TO THE BENEFITS SOUGHT OR A CONTINUATION OF ANY BENEFIT PREVIOUSLY AWARDED.

## HEARING RULES & PROCEDURES

The Rules and Procedures applicable to all hearings held before the Board are located at: chipabf.org/about/

## APPEARANCES

You may, if you choose, be represented by an attorney licensed to practice in the State of Illinois. Prior to the scheduled hearing, retained counsel shall file a written appearance advising the Board of his/her representation on your behalf and setting forth his/her mailing address, phone number, and email address for the purpose of accepting subsequent communication.

The Board must be notified in writing of any change or substitution of counsel.

**THESE PROCEEDINGS ARE COMMENCED PURSUANT TO THE PROVISIONS OF THE ILLINOIS PENSION CODE, 40 ILCS 101 ET SEQ. AND YOU ARE ADVISED TO REVIEW THE APPLICABLE PROVISIONS THEREOF.**

The Retirement Board of the
Policemen's Annuity & Benefit Fund
City of Chicago

_____
Kevin Reichart
Executive Director

2

**Board Exhibit #1**
**Page 8**

The Retirement Board of the
# Policemen's Annuity and Benefit Fund of Chicago

221 North LaSalle St – Suite 1626, Chicago, IL 60601
(312) 744-3891      www.chipabf.org

**ELECTED TRUSTEES**
JOHN LALLY
MICHAEL K. LAPPE
WAYNE METCALFE
MICHAEL J. STISCAK, President / Recording Secretary

**EXECUTIVE DIRECTOR**
KEVIN REICHART

**APPOINTED TRUSTEES**
MELISSA CONYEARS-ERVIN
ANNETTE GUZMAN
JILL JAWORSKI
JEFFREY LEVINE

September 27, 2023

Mr. Timothy Moragne
8033 South Albany Avenue
Chicago, IL 60652

## NOTICE OF HEARING

The Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (the "Board"), pursuant to the provisions of the Illinois Pension Code, 40 ILCS 101 *et seq.*, has scheduled a hearing on your matter / application.

- If your matter / application seeks a benefit, the Board will consider, among other issues, your entitlement to the benefit sought, the type of benefit to be awarded, if any, and the amount of benefit to be awarded, if any, to which you may be entitled.

- In the event the Board, prior to your hearing, granted you a benefit without prejudice to such hearing, the hearing will also determine if that benefit shall be continued, modified, or discontinued.

- In the event you are already in receipt of a benefit, the hearing will be to determine continued eligibility.

### SCHEDULED HEARING

Day: **Monday**     Date: **October 30, 2023** Time: **10:00 AM**

Address: **221 N. LaSalle St., Suite 1626  Chicago, IL 60601**

**Board Exhibit #1**
**Page 7**

After my surgery I received physical therapy and remained on the medical roll until March 27, 2018 and returned to work in a full duty capacity. I subsequently went on the medical from August 6 – August 8, 2019, and July 12, 2022 – August 22, 2022 because of severe left hip pain.

As a result of these injuries, I am currently unable to perform the essential duties of a Chicago Police Officer. I am currently under the care of a medical doctor and receive physical therapy. I have been advised by my treating surgeon that I will need additional medical treatment.

The following Chicago Police Officer was at the scene after my traffic crash:
- P.O. Noble Williams – Star #7073
- P.O. Andre Benford – Star #16561

This is a summary of the facts and circumstances surrounding the injuries I sustained on May 7, 2006. A more detailed description will be given during my testimony at the hearing in this matter.

Signed: _____
Timothy W. Moragne

Address:    8033 S. Albany
            Chicago, IL 60652

Subscribed and sworn to before me

This 29th day of November, 2022.

Notary Public

OFFICIAL SEAL
RALPH J LICARI
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 05/08/2026

Page 2 of 2

**Board Exhibit #1**
**Page 6**

<u>**AFFIDAVIT**</u>

**State of Illinois** )
 )
**County of Cook** )

I, Timothy W. Moragne – Star #19052, being first duly sworn, on oath depose and state that:

On May 7, 2006, I was assigned to the 002 District Tactical Team, on duty wearing civilian clothing, my bulletproof vest with CPD identification, my duty firearm with ammunition, handcuffs, police radio, and my police duty belt. During my tour of duty, I was a passenger in an unmarked CPD vehicle responding to a request for officer assistance with the vehicle's emergency equipment activated. While driving to the location, my vehicle was involved in a traffic crash in which my vehicle flipped over and caught on fire. The incident was reported under RD #HM 336795 and HM 336807. An Injury on Duty report was prepared by my Sergeant.

After I was involved in the traffic crash, I felt severe pain on the right side of entire body near my rib cage and hip. I was subsequently transported the Emergency Department of Northwestern Memorial Hospital by Chicago Fire Department paramedics. While at the hospital I was treated by a doctor and released. I subsequently followed up my medical treatment with the CPD medical services section.

I remained on the medical roll from May 8, 2006 – September 17, 2006 and returned to full duty. On September 5, 2017, I went back on the medical because of severe pain I was experiencing in my right hip and had surgery on that same date. I also received more than twenty-four (24) cortisone injections in my right hip prior to the surgery.

The following procedures were performed during the surgery on September 5, 2017:
- Right total hip arthroplasty with Biomel Taperloc Standard offset stem/G7 acctabuium/Biolox ceramic head.

**Page 1 of 2**

LAW OFFICES

RALPH J. LICARI & ASSOCIATES, LTD.

35 SOUTH LA SALLE STREET · SUITE 2200
CHICAGO, ILLINOIS 60603
(312) 541-8989

RALPH J. LICARI

FACSIMILE (312) 541-8991
E-MAIL rjl@rjlc.com

November 29, 2022

***Sent via E-mail:*** bob@chipabf.org

Bob Crawford
The Retirement Board of the Policemen's
Annuity and Benefit Fund of Chicago
221 N. LaSalle Street – Suite 1626
Chicago, Illinois 60601

**Re:** P.O. Timothy W. Moragne - Star #19052

Dear Mr. Crawford:

Please let this letter serve as my appearance for P.O. Timothy W. Moragne - Star #19052.

I am also requesting that the Board make available the file and any and all documents contained therein which the Board proposes to introduce as part of the Administrative Record.

Thank you for your anticipated cooperation.

Very truly yours,

**Ralph J. Licari & Associates, Ltd.**

By: _Ralph J. Licari_____
     Ralph J. Licari

RJL/mz

**Board Exhibit #1
Page 4**

## Acknowledgment

I acknowledge that this application seeks a disability benefit and The Pension Board will consider, among other issues, my entitlement to the benefit sought, including, but not limited to, the type of benefit to be awarded, if any, and the amount of the benefit to be awarded, if any, to which I may be entitled.

I further acknowledge that in the event The Pension Board, prior to any hearing and without prejudice to total review at a hearing, grants temporary ("without prejudice") benefits, the hearing on this application will also determine whether those temporary ("without prejudice") benefits shall be continued, modified or discontinued.

**Failure to sign this acknowledgment may affect the Pension Board's decision to grant a temporary "Without Prejudice" benefit prior to a full hearing.**

I have read and fully understand the above statements.

Signature: X _____

Date: X 11/29/22

State of Illinois

County of Cook

Subscribed and sworn before me on this 29th day of November, 2022

By Timothy W. Moragne

(Name of Person signed above)

Notary Public

OFFICIAL SEAL
RALPH J LICARI
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 05/09/2026

Timothy W. Moragne, Service File #48667

**Board Exhibit #1**
Page 3

Page 3

## Children

I have no natural or adopted offspring who had not yet attained age 18 on August 20, 2022, or who is otherwise eligible for child benefits under the disability provisions of the laws governing the Policemen's Annuity and Benefit Fund Laws of the State of Illinois.

## Applicant Contact Information

**Address:** 8033 S Albany , Chicago, IL 60652

**Phone:** 1-773-842-1496 (Mobile)

**Email:** tim8109 e aol.com

**Signature:** X _(signature)_

**Date:** X 11/29/22

State of Illinois

County of Cook

Subscribed and sworn before me on this 29th day of November, 2022

By Timothy W. Moragne
*(Name of Person signed above)*

_(signature)_ Notary Public

```
OFFICIAL SEAL
RALPH J LICARI
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 05/09/2026
```



# APPLICATION for
# DISABILITY BENEFIT

| **Police Officer:** | Timothy W. Moragne | **Social Security #:** | XXX-XX-1543 |
|---|---|---|---|
| **Date of Birth:** | June 18, 1963 | **Meeting Date:** | November 30, 2022 |

Application of **Timothy W. Moragne** for disability benefits, under the provisions of the Policemen's Annuity and Benefit Fund Laws of the State of Illinois, together with attached Acknowledgment.

> **I have carefully read and fully understand Illinois Pension Code provision 40 ILCS 5/1-135, which in part provides a criminal penalty (Class 3 felony) for any person who "knowingly makes any false statement or falsifies or permits to be falsified any record of a retirement system or pension fund in an attempt to defraud the retirement system or pension fund."**

I, **Timothy W. Moragne,** being first duly sworn, on oath depose and say that I have performed police duty as a member of the Police Department of Chicago, and that the following statements are true and are made for the purpose of obtaining disability benefits under the provisions of the Policemen's Annuity and Benefit Fund Laws of the State of Illinois.

Is the disability claimed the result of an incident (**Check one**):

☒ On-duty ☐ Off-Duty/Illness ☐ Occupational Disease (Heart)

On the date of the Injury on Duty, were you wearing a body camera? (**Check one**):

☐ Yes ☒ No ☐ N/A

On the date of the Injury on Duty, was a dash-cam in use? (**Check one**):

☐ Yes ☒ No ☐ N/A

## Service History

I began service as a member of the Chicago Police Department on or about August 31, 1998.

I was last assigned to duty as a Police Officer in District 2.

## Age

I was born on June 18, 1963; I was 59 years of age on my last birthday.

## DUTY DISABILITY BENEFIT (CLAIMED)

| NAME & NUMBER | RANK | STAR # | PRESENT AGE | WHEN AGE 63 |
|---|---|---|---|---|
| MORAGNE, Timothy W. | PO | 19052 | 60 | 06/18/2026 |

ADDRESS:          8033 South Albany Avenue  Chicago, IL 60652
BORN:              June 18, 1963
APPT. DATE:      August 31, 1998
SERVICE CREDIT:  24-years plus
DATE OF INJURY:  May 7, 2006[Per Affidavit]
NATURE OF SICKNESS:  S/P Total Right Hip Arthroplasty, Chronic Right Hip Pain; Severe Osteoarthritis, Left Hip. [per CPD Memo]

On November 29, 2022, Officer Moragne filed an application for Duty Disability benefits. In accordance with his claim, Officer Moragne was scheduled for a hearing before the Board. The Application, Acknowledgement, Attorney Appearance, Affidavit, and Notice of Hearing are **EXHIBIT #1**.

A review of Officer Moragne's file* produced the following information:

Pursuant to a City of Chicago Inter-Office Communication from the Medical Services Section of the Chicago Police Department, and a Personnel Action Request form indicates Officer Moragne has exhausted his <u>IOD</u> medical roll usage effective August 20, 2022. **EXHIBIT #2.**

A report of Medical Roll Use supplied by the Medical Services Section of the CPD is **EXHIBIT #3**.

Jay L. Levin, MD, examined Officer Moragne on February 8, 2023. On October 11, 2023, Dr. Levin reexamined Office Moragne. Dr. Levin's provided reports are **EXHIBIT #4.**

A City of Chicago Injury On Duty Report, dated May 7, 2006, indicates that Officer Moragne was involved in a squad car accident and sustained serious injuries which were still being evaluated at the time the report was being made.. This report and various medical records are **EXHIBIT #5.**

*\* The records contained herein are copied as supplied by the Medical Services Section of the Chicago Police Department.*

# EXHIBIT B

## Medical Roll / IOD Status

<< Insert corresponding document behind this page >>

**Healthonomic - Palos Heights**
**12050 S HARLEM AVE**
**PALOS HEIGHTS IL 60463-2803**
**708-671-1500**

**Moira McQuillan**
**MD**
**7/16/2022**

To whom it may concern,

This is a note to confirm that Timothy Moragne was seen in my office July 11, 2022 for a doctor's appointment. Patient is not able to drive while on controlled medication prescribed by me. Patient is to return to full driving duties for work and home August 22, 2022.
If you have any questions in this regard, please do not hesitate to call me.

Sincerely,

Moira McQuillan McGee MD

# EXHIBIT C

**EEOC Initial Inquiry**

<< Insert corresponding document behind this page >>

EEOC (Inquiry) Number: **440-2022-07293**

## INQUIRY INFORMATION

### INQUIRY OFFICE

**Receiving:** Chicago District Office

**Accountable:** Chicago District Office

### POTENTIAL CHARGING PARTY

**Name:** Mr. Timothy W. Moragne

**Address:** 8033 S. Albany Avenue

CHICAGO, IL 60652

**Year of Birth:**

**Email Address:** tim8109@aol.com

**Phone Number:** 773-842-1496

### POTENTIAL CHARGING PARTY'S DEMOGRAPHICS

**Gender:** Male

**Disabled?**

**Are you Hispanic or Latino?**

**Ethnicity:**

**National Origin:**

### RESPONDENT/Employer

**Organization Name:** Chicago Police Department

**Type of Employer:** State or Local Government that I applied to, work for, or worked for

**Number of Employees:** An uncertain number of employees

**Primary Address:** 3510 S MICHIGAN AVE

CHICAGO, IL 60653

**County:** Cook

**Phone Number:** 312-745-5000

**Work Address:**

**Remote Work:**

### RESPONDENT CONTACT

**Name:**

**Email Address:**

**Phone Number:**

**Title:** Human Resources Director or Owner

### REASON(S) FOR CLAIM

**Date of Incident (Approximate):** 07/12/2022

**Reason for Complaint:** Age - I am 40 years of age or older, Disability, Retaliation - I filed a charge of job discrimination about any of the above

**Pay Disparity:**

**Location of Incident:** Illinois

**Submission (initial inquiry) Date** 07/19/2022

**Claim previously filed as charge with EEOC?** No

**Approximate Date of Filing:**

**Charge Number:** 440-2022-07293

**Claim previously filed as complaint with another Agency?** No

**Agency Name:**

**Approximate Date of Filing:**

**Nature of Complaint:**


## ADVERSE ACTION(s)

Because of my reoccurring Right Hip Replacement surgery due to on duty vehicle accident and after my wife made a formal complaint against Sergeant Duckins who called me over a dozen times and came to my place of residence to serve me with a SPAR for City Of Chicago indebtedness for vehicle tickets that she knew weren't mine, i was called and told by the Deputy Chief Traci Walker that i was no longer fit for the unit even though i have been given excellent evaluations while in the unit the last 13 years. Because there is a character count limit i cannot go more in depth with this complaint at this time but have a lot more to say.


## APPOINTMENT

**Appointment Date and time:** 11/28/2022 08:30:00 CST

**Interview Type:** Phone


## APPROXIMATE DEADLINE FOR FILING A CHARGE: 05/09/2023

# EXHIBIT D

**EEOC Complaint Narrative**

<< Insert corresponding document behind this page >>

### Supplemental Information

### What Reason(s) were you given for the action taken against you?

After 13 years of receiving excellent evaluations i was told because of my Injured On Duty reoccurrence of my Right Hip Replacement Pain that i was no longer fit for the unit.

### Was anyone in a similar situation treated the same, better, or worse thanyou?

Yes numerous people in the unit have been off of work due to an injury or illness much longer than myself, some for up to a year and none with a better evaluation then myself.

### Please provide name(s) and email and/or phone number of anyone who will support your claim, and briefly describe the information this personwill provide.

Rodney Smith.....Retired Sergeant, Phone #773-716-6195

Micheal Cruz.....Retired Police Officer, Phone #773-354-1443

Patricia Gallagher....Active Police Officer, Phone #773-443-4501

### Please tell us any other information about your experience.

It's been a very difficult and stressful time and has made the heart condition that i developed after receiving the Covid shots worse.I'm a Chicago Police Officer who was assigned for the last 13 years to the Bureau Of Internal Affairs. In May of 2006 i was involved while on duty in a very bad accident on the Dan Ryan Expressway located in Chicago while in pursuit of a gun shooting offender. The car flipped over several times before coming to a rest against a pillar on the expressway. There were 3 of us in the car, i was in the back seat and the two other officers were in the front passenger and drivers side seats. After the car flipped over several times and finally came to a rest i radioed in for help but at this time i nor the other two officers who were moaning for help had yet to notice that the car was on fire! After noticing this in a desperate attempt to free myself and help my fellow officers i was able to unbuckle my seatbelt (That had pulled so tight and later was determined to be the cause of my severely bruised ribs) and kick the left rear window out. In a panick i head first jumped out of the window and fell on my Right Hip to the concrete. While frantically calling for help on the radio while at the same time trying to get these two trapped officers out of this burning vehicle i was almost shot unintentionally by the passenger side officer who was just trying to get some air and keep breathing from all of the black smoke that had fille the vehicle. After this incident i was off for a few months because of the injury to my Right Hip and Ribs. For 9 years after this incident i was continuously given to my Right Hip Cortisone shots and Meloxicam in order to alleviate the pain until in 2017 when he told me that because the Hip had progressively gotten worse that he would no longer be able to give me the Cortisone shots and that if i didn't get a Hip replacement i would eventually be unable to walk. Now from a few months after the accident up until the time i received the surgery i very rarely took off for anything, and although Co-Workers constantly asked me what was wrong because of my very noticeable limp i continued to not only work but received excellent evaluations for the past 16 years, and have been coming to work sometimes in pain because i didn't want to take off. Fast forward to July 11, 2022 when a new to our unit sergeant Jessica Duckins came back from her Furlough (Vacation). I went into her office to tell her that i was going on a police officer who was under investigation due to the Deputy Chief, Traci Walker making a special request. She then told me that i should've went out on him earlier, i then explained to her that while she was absent that the sergeant who filled in (Sergeant Hosley) for her during her vacation had instructed all of us to come into the office everyday and to do our prior day surveillance report that included pictures before leaving the office. To this she stated that i'm sure if you had told Sergeant Hosley that the Deputy Chief had made this request that she would've let you go straight there. I then explained to her that the prior week i tried that but she insisted that i come in first anyway and that she was aware that the Deputy Chief made the request because she talks with her everyday. So after this i left the office and went on another target that she (Sergeant Duckins) assigned me. After i left the office according to Sergeant Duckins a co-worker named Patricia Gallagher told her that "i think you insulted Tim".....now i wasn't there this is what Sergeant Duckins stated to me when she came to my surveillance location. After stating that i didn't take it that way and that we use to go straight out especially when the Deputy Chief or an exempt member made a request, and again explained to her that i was just doing what i was told in her absence. So after feeling as though that situation was straightened out and put to rest she left and i continued to do my surveillance. A few minutes later i received a reminder on my iPhone that i had a 3:20 doctors appointment that had been scheduled weeks before Sergeant Duckins return, so i text her to let her know that i would be leaving at 2:45 to make it, to this she stated ok. During my doctors visit for the Right Hip pain i explained to her that the Tramadol that i was up until a month ago taking primarily on the weekends now had to be taken everyday, sometimes twice a day and that while on it a few weeks ago that i almost was involved at work in a bad automobile accident that would've been undoubtedly my fault, i also explained to her that i kept falling asleep at my surveillance locations. After this

she gave me a referral to see my Hip Replacement doctor, Kevin Luke along with a note to remain off with no driving while under the influence of this medication at least until i see y hip replacement surgeon. So her receptionist faxed the paperwork to the Chicago police Departments Medical Services Section on that day July 11, 2022. The next morning while under the influence of this Tramadol before i got up i had received several messages from coworkers asking me where i was at, now at this point i hadn't even had a chance to notify the Sergeant (Duckins) of my Injured On Duty reoccurrence yet. When i talked with her around 7:25 am i notified her and also let he know that the medical section had already faxed the paperwork. After hearing this in my opinion i think that the Sergeant believed that i was going on I.O.D. because of what coworker Patricia Gallagher said and that this was some sort of way to show her up. Even after explaining to her that this doctors appointment for the constant pain in my hip was scheduled weeks before her return which i didn't even know was on July 11, 2022. During the next two days she called me a dozen times for minut things, the first of which was to inform me that she was sending someone over to get my covert car which in my 13 years in the unit had never been done on the first day of medical absence, she called to inform me that my I.O.D. absence had been approved which she knew i already knew, she then sent an 008th district Sergeant over to my house to do a medical check, this has not been done to any other officer in the unit sense its inception in May of 2009. On July 12, 2022 she called me to tell me that she had to serve me a SPAR for indebtedness to the City Of Chicago so (Summary Punishment Action Request) we talked on the phone and i explained to her that none of the tickets in question belonged to me and that they were all my sons tickets who happens o have the same name. After that conversation concluded she called me back about the same thing so i at that point explained to her that if she ran the license plate in question she would be able to determine that the tickets didn't belong to me based on the owners age, so she did and that conversation concluded until July 13, 2022 at 11:01 am Sergeant Dunkins arrived at my home with another unknown sergeant to serve me with this Summary Punishment even though she knew from running the license plates the prior day that none of the tickets or indebtedness were mine! The entire conversation was recorded by my Nest Doorbell camera and on it she even admits that she ran the plates and discovered whose tickets they were but still wanted to serve and have me sign a Summary Punishment for tickets that aren't mine, so i refused. I told her that at this point sense she already had knowledge of who the rightful owner of the cars in question and who the tickets belonged to that this was harassment. After this she and the other sergeant left. My wife Kelly Moragne whom was standing in listening distance heard the whole conversation subsequently filed a complaint on July 16, 2022 at 11:01 am i received a call from the new Deputy Chief Traci Walker stating that i was no longer fit for the unit. I have a lot more to say because of the word limit i can't.

# EXHIBIT E

**EEOC Charge Documents**

<< Insert corresponding document behind this page >>

From: EEOC <no-reply@service.eeoc.gov>
Subject: EEOC has Prepared Charge 440-2022-07293 for Your Review
Date: November 28, 2022 at 9:29:03 AM CST
To: "Mr. Timothy W. Moragne" <tim8109@aol.com>


U.S. Equal Employment Opportunity Commission
At your request, the Equal Employment Opportunity Commission has
drafted a Charge of Discrimination against CITY OF CHICAGO (CPD0 for
your recent inquiry, 440-2022-07293.

This document is only a draft of your charge, and EEOC will not notify
CITY OF CHICAGO (CPD0 of your charge until you sign and submit it.
Please go to the EEOC Public Portal to review the details and
particulars of your proposed charge before you sign it. (In the
Portal, go to "Returning Users" to sign-in, then select "My Cases" and
open Inquiry 440-2022-07293.).

If you wish to correct or revise the charge information, you may
submit your recommended corrections and/or revisions to EEOC through
the Public Portal. When you are ready to file the charge with EEOC,
you may digitally sign and submit it through the Portal. CITY OF
CHICAGO (CPD0 will be notified of the charge after you file it with
EEOC, as required by law.

This email is an official notification from the Equal Employment
Opportunity Commission (EEOC) regarding charge 440-2022-07293. Please
do not reply to this email.
Notice of Confidentiality: This email may contain privileged and
confidential information, including information protected by federal
and state privacy laws. It is intended only for the use of the
person(s) named above. If you are not the intended recipient, you are
hereby notified that any review, dissemination, distribution, or
duplication of this communication is strictly prohibited and may be
unlawful. If you are not the intended recipient, please contact (800)
669-4000 and destroy all copies of the original message and
attachments.

# EXHIBIT F

**Duty Disability Application**

<< Insert corresponding document behind this page >>

Office of Public Safety Administration
Medical Services Section

15 September 2022

TO: Erin Keane
Executive Director
Policemen's Annuity Benefit Fund

FROM: Michele Spikes-Cain
Medical Administrator
Medical Services Section

SUBJECT: Application for Duty Disability Pension

RE: Moragne, Timothy W.
Employee # 45846

Police Officer Moragne exhausted all available IOD medical days afforded to all FOP members under the union's collective bargaining agreement effective 19 AUG 2022.

The following is a calendar breakdown of those benefits used:

| First Day | Last Day | Days Used | |
|-----------|----------|-----------|---|
| 08 May 06 | 17 Sep 06 | 133 | |
| 05 Sep 17 | 23 Dec 17 | 110 | |
| | | | Furlough: 24 Dec 17 – 06 Jan 18 |
| 07 Jan 18 | 27 Mar 18 | 80 | |
| 06 Aug 19 | 08 Aug 19 | 3 | |
| 12 Jul 22 | 19 Aug 22 | 39 | |
| Total | | 365 | |

For purposes of this application, the following diagnosis shall be considered: "s/p total right hip arthroplasty, chronic right hip pain, severe osteoarthritis, left hip,".

Michele Spikes-Cain
Medical Administrator
Medical Services Section

# PERSONNEL ACTION REQUEST (PAR FORM)

HUMAN RESOURCES DIVISION
CHICAGO POLICE DEPARTMENT

TODAY'S DATE

## MEMBER'S INFORMATION

MEMBER TO BE AFFECTED (LAST NAME - FIRST - MI) | STAR NO. | EMPLOYEE NO. | UNIT ASSIGNED

EFFECTIVE DATE | POSITION TITLE
Police Officer

## TYPE OF ACTION REQUESTED (Check only one box.)

- [✓] LEAVE, DISABILITY PENSION - SWORN ONLY
- [ ] LEAVE, OTHER (30 DAYS AND OVER)
- [ ] RETIREMENT
- [ ] TRANSFER REQUEST
- [ ] RECOGNIZED OPENING BID (FOP)
- [ ] RECOGNIZED VACANCY BID (FOP)

- [ ] UNPAID ABSENCE (29 DAYS AND UNDER) NO INSURANCE BENEFITS
- [ ] LEAVE, EXTENSION OF
- [ ] RESIGNATION
- [ ] SEPARATION TO ACCEPT OTHER CITY POSITION/TITLE
- [ ] FAMILY MEDICAL LEAVE ACT (FMLA)
- [ ] FAMILY MEDICAL LEAVE ACT (FMLA) INTERMITTENT

## PERSONNEL TRANSFER & ASSIGNMENT SECTION

UNIT OF ASSIGNMENT REQUESTED | HOME ADDRESS | TELEPHONE NO. | SENIORITY DATE | TITLE CODE | GRADE

DATE ASSIGNED TO PRESENT UNIT | DATE OF BIRTH | [ ] UNIT NOTICE OF RECOGNIZED OPENING NO | POSITION REQUESTED
| | [ ] RECOGNIZED VACANCY LISTING AMC NO: |

DATE SUBMITTED | TIME SUBMITTED | COMMANDING OFFICER'S SIGNATURE | STAR NO

## LEAVE OF ABSENCE AGREEMENT (Member must complete this agreement when requesting any leave of absence.)

TO SUPERINTENDENT OF POLICE:

I HEREBY TENDER MY RESIGNATION AS _Police Officer_ FROM THE DEPARTMENT OF POLICE,
(POSITION OR RANK)

TO TAKE EFFECT IF I FAIL TO REPORT FOR DUTY IMMEDIATELY AT THE EXPIRATION OF MY LEAVE

(EXPIRATION DATE OF LEAVE)

(SIGNATURE OF MEMBER)

I HEREBY ACCEPT THE RESIGNATION OF _____ BECAUSE OF FAILURE TO COMPLY WITH ABOVE

AGREEMENT. THIS _____ DAY OF _____ , 20 ____ .

(SUPERINTENDENT OF POLICE)

## REMARKS SECTION

MEMBER HAS EXHAUSTED ALL AVAILABLE MEDICAL DAYS AS OF 19 Aug 22

A LEAVE OF ABSENCE REQUEST IS EFFECTIVE AS OF 20 Aug 22

RECEIVED AUG 18 2022

## SIGNATURES

SIGNATURE OF MEMBER (IF REQUIRED) | | RECOMMEND | SIGNATURE & TITLE
| | [ ] APPROVAL |
| | [ ] DISAPPROVAL |

RECOMMEND | SIGNATURE & TITLE (UNIT C O ) | RECOMMEND | SIGNATURE & TITLE
[ ] APPROVAL | | [ ] APPROVAL |
[ ] DISAPPROVAL | | [ ] DISAPPROVAL |

## HUMAN RESOURCES DIVISION SECTION ONLY

RECOMMEND | SIGNATURE | RECOMMEND | SIGNATURE
[ ] APPROVAL | | [ ] APPROVAL |
[ ] DISAPPROVAL | | [ ] DISAPPROVED |

COMMENTS | BIA CLEARANCE AS OF:

CPD-11.512 (REV 9/20) DISTRIBUTION: WHITE - HUMAN RESOURCES DIVISION YELLOW - FINANCE PINK - MEMBER GOLD - UNIT

OFFICE OF PUBLIC
SAFETY ADMINISTRATION
MEDICAL SERVICES SECTION

DATE: _13 JUL 22_

TO: _MORAGNE, TIMOTHY W_  _45846_
(Name)  (Employee #)

_8033 S ALBANY AVE_  _19052_
(Street)  (Star #)

Chicago, IL 606 _52_  _121_
(Zip)  (District/Unit)

Please be advised that the records of the Medical Section of the Chicago Police Department indicate that as of _13 JUL 22_ you have used _328_
(Date)  (Number)
days of the maximum allowable for your current Duty/Non-Duty medical absence.

If you are not able to return to work, your last day on the Medical Roll is projected to be _19 AUG 22_ .
(Date)

Your options at that time will include: Limited Duty, Retirement, Resignation or Leave of Absence, such as to apply for Disability Pension benefits.

You must report to the MSS no later than _05 AUG 22_ to notify the Medical Section of which of the listed options you will take so that there will be no delay in processing. Failure to comply will lead to a PAR being submitted on your behalf placing you on Leave of Absence for Duty/Non-Duty Disability. PLEASE KEEP IN MIND THAT MEMBERS MAY BE RQUIRED TO UNDERGO A FITNESS FOR DUTY EVALUATION PRIOR TO THEIR RETURN TO DUTY. THIS PROCESS MAY TAKE UP TO 3 TO 4 WEEKS FOR RESULTS.

_____
Medical Services Section
Mariana Sotirova

CC:   Unit Commander
      Unit Timekeeper
      Medical File



Chicago Police Department
Medical Services Section-Unit 231
3510 S. Michigan
Chicago, Illinois 60653

Date 18 Aug 22

I. Timothy W. McKeogve _____ release all medical records and privileged
(Print your name)

information including alcohol, substance abuse and psychiatric information included in my

Chicago Police Department medical records to the Policemen's Annuity and Benefit Fund.

_____
Signature

Bureau of Constitutional Policing and Reform
Human Resources Division

Date: 18 Aug 22

TO:

Name: Timothy W. Moragne        EMP # 45746

Title: Police Officer

Unit: 006

FROM        Robert Landowski
            Director
            Human Resources Division

SUBJECT:        Leave of Absence for Disability

Soon you will have utilized all available medical time. You will then be removed from active payroll of the Chicago Police Department having utilized all said medical time. To apply for disability income through the Policeman's Annuity and Benefit Fund of Chicago you must take a leave of absence from the Chicago Police Department. Only members in current leave of absences status are eligible to apply for disability income.

General Order 94-5, addendum 7 requires that the star, shield and identification card issued to you by the Chicago Police Department be returned to the Human Resources Division prior to the effective date of the leave of absence. Processing a leave request cannot be completed until a member has complied with this order.

You are hereby ordered to cause delivery of the star, shield and identification card issued to you by the Chicago Police Department to the Human Resources Division of the Chicago Police Department prior to the effective date of your leave of absence. You are further ordered to return the department issued helmet and gas mask, if any, to the Equipment and Supply Section of the Chicago Police Department prior to the effective date of the leave absence.

You are hereby advised that sworn members of the Chicago Police Department on an unpaid leave of absence are not authorized to exercise the power of arrest or any other police power bestowed upon them by virtue of their office as sworn members of the Chicago Police Department including, but not limited to, carrying a firearm or weapon. All members on leave of absence are subject to the orders and the Rules and Regulations of the Chicago Police Department.

The Human Resources Division, Administrative Section is open on normal business days from 0800 until 1630 hours. Question regarding this procedure may be directed to the Human Resources Division, Administrative Section.

Robert Landowski
Director
Human Resources Division

Date: 18 Aug 22

Rec: _____        Date: 18 Aug 22

Witness or certified: _____        Date/time: 18 August 2022

Tentative Effective 19 August 2022        Date of Leave of Absence: 20 August 2022



1. DISABILITY BENEFITS –

   Policemen's Annuity & Benefits Fund

   221 N. LaSalle, Room 1626

   312.744.3891

   www.chipabf.org                                    Contact: Bob Crawford


2. HEALTH INSURANCE –

   City of Chicago Benefits Service Center

   333 S. State St. – Room 400

   877.299.5111

   www.cityofchicagobenefits.org                       Contact: Staff


3. CPD EQUIPMENT (STAR, ID BADGE, SHIELD, HELMET) –

   CPD HEADQUARTERS

   3510 S. Michigan Ave. 3rd Floor

   312.745.5300                                         Contact: Staff


4. THE FOP LODGE (POLICE) –

   1412 W. Washington

   312.733.2401 / 312.733.7776                          Contact: Maggie O'Grady


   P.B.P.A (Sgt. / Lt. / Capt.)

   1616 W. Pershing Rd.

   773.376.7272                                         Contact: Jim Calvino

CONTACT INFORMATION FOR DISABILITY PURPOSES

5. FINAL PAYCHECK –

Payroll Division

CPD HEADQUARTERS

3510 S. Michigan Ave. 3rd Floor

312.745.5650

policepayroll@chicagopolice.org          Contact: Chief Timekeeper

6. ONGOING MEDICAL CARE (IOD ONLY) –

Medical Services Section

CPD HEADQUARTERS

3510 S. Michigan Ave. 1st Floor

312.745.5000          Contact: Assigned Nurse

7. REINSTATEMENT FROM LEAVE OF ABSENCE –

Human Resources

CPD HEADQUARTERS

3510 S. Michigan Ave. 3rd Floor

312.745.5300          Contact: Staff

_____          _____
Member's Signature                Date Received

_____          _____
MS Staff Signature                Date Filed

# EXHIBIT G

## City Initial Position Statement

<< Insert corresponding document behind this page >>

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## CHICAGO DISTRICT OFFICE

TIMOTHY W. MORAGNE,                      )
                                         )
    Charging Party,                    )
                                         )
        v.                         )      Charge No. 440-2022-07293
                                         )
THE CITY OF CHICAGO, CHICAGO             )
POLICE DEPARTMENT,                       )
                                         )
    Respondent.                        )

To:    Investigator Kimberly Engram
       U.S. Equal Employment Opportunity Commission
       kimberly.engram@eeoc.gov

### NOTICE OF FILING

PLEASE TAKE NOTICE that I have on this day caused **Respondent's Response to Charge and Position Statement** to be electronically filed with the U.S. Equal Employment Opportunity Commission by uploading said document to the EEOC's Respondent Portal, a copy of which is attached hereto and served upon the EEOC.

### CERTIFICATE OF SERVICE

I hereby certify that I have on this day caused a true and correct copy of the above and foregoing **Respondent's Response to Charge and Position Statement** to be provided to the EEOC by uploading a copy onto the EEOC's Respondent Portal and emailing a copy to kimberly.engram@eeoc.gov.

DATED at Chicago, Illinois, this 20th day of January, 2023.

                                  Jessica Franklin
                                  Assistant Corporation Counsel

City of Chicago, Department of Law
2 North LaSalle Street, Suite 660
Chicago, Illinois 60602
jessica.franklin@cityofchicago.org
(312) 742-8167 (phone)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## CHICAGO DISTRICT OFFICE

TIMOTHY W. MORAGNE,                )
                                   )
    Charging Party,              )
                                   )
v.                                 )    **Charge No. 440-2022-07293**
                                   )
THE CITY OF CHICAGO, CHICAGO        )
POLICE DEPARTMENT,                  )
                                   )
    Respondent.                  )

## RESPONDENT'S RESPONSE TO CHARGE AND POSITION STATEMENT

The City of Chicago, Chicago Police Department, ("Respondent" or "CPD"), through its

attorney, Assistant Corporation Counsel, Jessica Franklin, hereby acknowledges receipt of the

above captioned Charge of Discrimination ("Charge") filed by Timothy W. Moragne ("Charging

Party") alleging he was discriminated against on the basis of disability and retaliated against. As

a preliminary matter, Respondent states that the following response and position statement, while

accurate to the best of Respondent's knowledge, is based upon a preliminary investigation, and is

subject to change as new facts come to light. Respondent states that Respondent's Bureau of

Internal Affairs ("BIA") is currently investigating the allegations in the Charge, and Respondent

will supplement its Response and Position Statement when BIA completes its investigation.

### I.    REPONSE TO CHARGE

**I was hired by the Respondent on or about August 31, 1988.**

**RESPONSE:**

Respondent admits that its records show that Charging Party was hired on or around August 31, 1998. *See* **Exhibit A**, Employee Work History.

**My position is Police Officer.**

**RESPONSE:**

Respondent objects to the term/phrase "position" as vague, ambiguous and open to multiple interpretations. Subject to and without waiving any objection, Respondent admits that its records show Charging Party's title is Police Officer. *See* **Exhibit A**, Employee Work History.

**Respondent is aware of my disability.**

**RESPONSE:**

Respondent objects to the term and/or phrase "aware of my disability," as vague, ambiguous, and subject to multiple interpretations, in that, for example, Charging Party fails to identify what his purported disability is, who at Respondent is purportedly "aware of [his] disability," how "Respondent is aware of [his] disability," and when Respondent was purportedly made "aware of [his] disability." Subject to and without waiving any objection, Respondent lacks sufficient information and knowledge to admit or deny this allegation. Respondent states that BIA is investigating the allegations in the Charge, and Respondent will supplement and amend this response after BIA's investigation is complete.

**In or around July 2022, the Respondent was informed of my medical leave.**

**RESPONSE:**

Respondent objects to this allegation as vague, ambiguous, and open to multiple interpretations in that, for example, Charging Party fails to identify who at Respondent he "informed of [his] medical leave" and how he informed Respondent. Subject to and without waiving any objection, Respondent lacks sufficient information to admit or deny this allegation. Respondent states that its records reflect that, in approximately July 2022, it notified Charging Party that he had used 328 days of the maximum allowable for his medical absence and that, if he was unable to return to work, his last day on the medical roll was projected to be August 19, 2022. Respondent further states Charging Party's work history shows Charging Party took a leave of absence on or around August 20, 2022. See Exhibit A, Employee Work History. Respondent states that BIA is investigating the allegations in the Charge, and Respondent will supplement and amend this response after BIA's investigation is complete.

**Subsequently, I was subjected to harassment which included their attempt to issue me a discipline, of which I complained.**
<u>**RESPONSE:**</u>

Respondent objects to this allegation as vague, ambiguous, and subject to multiple interpretations, in that, for example, Charging Party fails to identify when he was purportedly "subjected to harassment," what else, if anything, the purported "harassment" consisted of, who subjected him to the purported "harassment," who purportedly "attempt[ed] to issue [him] a discipline" and when, and to whom, when, and how he purportedly "complained." Respondent further objects to the terms and/or phrases, "subsequently," "subjected," "harassment," "discipline," and "I complained," as vague, ambiguous, and open to multiple interpretations. Subject to and without waiving any objection, Respondent lacks sufficient information and knowledge to admit or deny this allegation. Respondent states that BIA is investigating the

allegations in the Charge, and Respondent will supplement and amend this response after BIA's investigation is complete.

**Four-days into my medical leave, I was reassigned.**

**RESPONSE:**

Respondent objects to this allegation as vague, ambiguous, and subject to multiple interpretations, in that, for example, Charging Party fails to explain when he was on medical leave, what he was reassigned from and to, who informed him he was reassigned, and how he was reassigned. Subject to and without waiving any objection, Respondent lacks sufficient information and knowledge to admit or deny this allegation. Respondent states that BIA is investigating the allegations in the Charge, and Respondent will supplement and amend this response after BIA's investigation is complete.

**I believe that I have been discriminated against because of my disability, and retaliated against for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.**

**RESPONSE:**

Respondent objects to this allegation to the extent it calls for a legal conclusion. Respondent further objects to this allegation as vague, ambiguous, and subject to multiple interpretations, in that, for example, Charging Party fails to identify his "disability," how, when, and by whom he was purportedly "discriminated against" and how the purported discrimination related to his purported "disability" (if at all), how when, and by whom he was purportedly "retaliated against," what "protected activity" he purportedly engaged in, and how and when he purportedly engaged "in protected activity." Subject to and without waiving any objection, Respondent lacks sufficient information and knowledge to admit or deny Charging Party's

beliefs. Respondent further lacks sufficient information to admit or deny any remaining allegations in this section. Respondent states that BIA is investigating the allegations in the Charge and will supplement and amend this response once BIA completes its investigation.

## II.    RESPONDENT'S POSITION STATEMENT

Respondent hereby acknowledges receipt of the above captioned Charge. As stated above, Respondent's Bureau of Internal Affairs ("BIA") is currently investigating the allegations in the Charge. Respondent will supplement its response and position statement after BIA completes its investigation.

### A. Respondent's Background

Respondent is the police department serving residents of and visitors to the City of Chicago. Respondent is led by the Superintendent of Police, who is appointed by the Mayor. In addition to overall Department management, the Office of the Superintendent is responsible for critical functions such as planning and implementing the Community Police Strategy, facilitating and coordinating law enforcement services, planning police coverage at public gatherings, addressing legal and legislative matters, administering labor agreements and providing a liaison to the news media.[1] Currently, Respondent has 25 districts within the Chicago neighborhoods.[2] Additionally, Respondent has online services that allow citizens to submit information to the police[3] and receive information from the police.[4]

---

[1] https://home.chicagopolice.org/about/department-offices/ (last visited: January 9, 2023).
[2] https://home.chicagopolice.org/about/police-districts/ (last visited: January 9, 2023).
[3] https://home.chicagopolice.org/home/to-police (last visited: January 9, 2023).
[4] https://home.chicagopolice.org/home/from-police/ (last visited: January 9, 2023).

Respondent is part of and empowered by the community and is committed to protect the lives, property, and rights of all people.[5] Respondent is committed to maintaining order and enforcing the law impartially.[6] Respondent strives to provide quality police service in partnership with other members of the community.[7] To fulfill its mission, Respondent strives to attain the highest degree of ethical behavior, and professional conduct at all times.[8] Respondent provides a plethora of services for the community.[9]

### B. Charging Party's Background with Respondent

Charging Party began working for Respondent on or around August 31, 1998. *See* **Exhibit A**, Employee Work History. Charging Party works as a Police Officer. *Id.* As a Police Officer, Charging Party, under supervision, works for the benefit of citizens by protecting life and property from harm and maintains order. *See* **Exhibit B**, Police Officer Job Description. A Police Officer's essential duties include, but are not limited to, the following: monitoring environment and crime conditions of an assigned geographic area through the use of random patrol methods; responding to incidents either assigned or observed as required; actively pursuing suspected law violators using search and containment methods; and protecting citizens from life threatening situations by the use of movement or protective cover. *Id.*

### C. The City is an Equal Opportunity Employer and has an Established Policy Which Ensures the City Operates in a Manner to Protect Against Discrimination on the Basis of a Protected Class

The City of Chicago is an equal opportunity employer, and the City's and Respondent's policies prohibit discrimination against employees on the basis of race, color, sex, age, religion,

---

[5] https://www.chicago.gov/city/en/depts/cpd/auto_generated/cpd_mission.html (last visited: January 9, 2023).
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] https://www.chicago.gov/city/en/depts/cpd/provdrs/police_services.html; https://home.chicagopolice.org/services/ (last visited: January 9, 2023).

national origin or ancestry, marital status, parental status, sexual orientation, military service, disability, gender identity, and other classifications protected by law. *See* **Exhibit C**, Employee Resource E01-01, Equal Employment Opportunity Policy ("EEO Policy"), at Sec. II. These policies prohibit discrimination in the form of harassment of an individual on the basis of a protected classification. *See* **Ex. C** at Sec. II.

The City's and Respondent's policies specifically prohibit any form of retaliation against an employee for making or filing internal or external charges or complaints of employment discrimination or for cooperating with any internal investigation or mediation of a complaint. *See* **Ex. C** at Sec. III. Retaliation includes adverse employment actions taken against an individual in whole or in part because that person either filed a charge of discrimination or participated in the investigation or mediation of that charge. *Id.* Furthermore, the EEO policies of the City and Respondent are more comprehensive that state or federal law. *Id.* Conduct that does not violate state or federal law may violate the City's and Respondent's policies, and may subject an employee to discipline, up to and including discharge. *Id.*

## D. The City Prohibits Discrimination on the Basis of Disability and has an Established Process for Providing Reasonable Accommodations

The City of Chicago is committed to providing equal access to employment opportunities for individuals with disabilities. *See* **Exhibit D**, Employee Resource E01-04, City of Chicago Reasonable Accommodation Policy ("CPD RA Policy"). It is the policy of the City of Chicago to provide reasonable accommodations to qualified applicants and employees with disabilities. Members of CPD can request a reasonable accommodation by contacting their immediate supervisor, Respondent's disability liaison, or the City of Chicago Department of Human Resources Disability Officer. *See* **Ex. D at Sec. IV(A)(1)**.

The City of Chicago is an equal employment opportunity employer that provides reasonable accommodations to applicants with disabilities during the hiring process and to qualified employees with disabilities who need to accommodations to perform the essential functions of their job. *See* **Exhibit E**, City of Chicago Reasonable Accommodation Policy ("City's Accommodation Policy"), effective July 24, 2015, at Sec. I. The City's Accommodation Policy is designed to ensure that reasonable accommodation requests are evaluated efficiently and fairly. *Id.* The City's Accommodation Policy and the procedures established therein are managed by the EEO Division. *Id.* The City's Accommodation Policy applies to volunteers and employees of the City, who have a permanent or temporary disability, whether they are paid or unpaid, as well as to all applicants for paid or volunteer positions with the City. *See* **Ex. E**, at Sec. II. Under the City's Accommodation Policy, a reasonable accommodation is any modification to the work environment or the way that work is performed that enables a qualified individual with a disability to perform the essential functions of his or her job. *See* **Ex. E**, at Sec. III.

A reasonable accommodation may include, but is not limited to, the following: 1) making physical changes to the worksite or furniture; 2) restructuring jobs; 3) modifying schedules, purchasing or modifying equipment such as computers or telephones; 4) modifying workplace policies; 5) providing materials in alternative formats; 6) providing readers, interpreters, or other assistive services; and 7) offering reassignment to a vacant position. *Id.* The Disability Officer will evaluate the request for accommodation after all required information and documentation has been received by the Disability Officer. *See* **Ex. E**, at Sec. IV; *see also* **Ex. D**, at IV. The Disability Officer will provide the requesting individual with a written notice, stating whether an accommodation has been granted or denied. *Id.*

The City of Chicago Reasonable Accommodation Request form is available from Respondent's disability liaison, through Respondent's Human Resources Division's intranet website, and through the City of Chicago Department of Human Resources website, which is: https://www.chicago.gov/city/en/depts/dhr/supp_info/Accommodation_Request_Forms.html.

## III.   CONCLUSION

In conclusion, Respondent's Bureau of Internal Affairs is investigating the allegations in the Charge, and Respondent will amend this response once BIA completes its investigation.

**WHEREFORE**, Respondent will amend its Response to Charge and Position Statement after BIA concludes its investigation.

[Remainder of Page Intentionally Left Blank]

Respectfully submitted,

Chicago Police Department

By:

Sgt. Daniel O'Brien

Office of Legal Affairs

By:

Jessica Franklin

Assistant Corporation Counsel

Attorney for Respondent

City of Chicago, Department of Law

2 N. LaSalle St. Suite 660

Chicago, Illinois 60602

Jessica.Franklin@cityofchicago.org

312-742-8167

# EXHIBIT H

## Disability Hearing Notice

<< Insert corresponding document behind this page >>

The Retirement Board of the
# Policemen's Annuity and Benefit Fund of Chicago

221 North LaSalle St – Suite 1626, Chicago, IL 60601
(312) 744-3891     www.chipabf.org

| ELECTED TRUSTEES | EXECUTIVE DIRECTOR | APPOINTED TRUSTEES |
|---|---|---|
| SGT. JOHN LALLY, President | KEVIN REICHART | MELISSA CONYEARS-ERVIN |
| THOMAS LONERGAN (Ret.) | | ANNETTE GUZMAN |
| DETECTIVE BROCK MERCK | | JILL JAWORSKI |
| LT. BRIAN E. WRIGHT, Recording Secretary | | JEFFREY LEVINE, Vice President |

December 19, 2025

Mr. Timothy W. Moragne
8033 South Albany Avenue
Chicago IL 60652

### NOTICE OF HEARING

The Retirement Board of the Policemen's Annuity and Benefit Fund of
the City of Chicago (the "Board"), pursuant to the provisions of
the Illinois Pension Code, 40 ILCS 101 *et seq.*, has scheduled a
hearing on your matter / application.

- If your matter / application seeks a benefit, the Board
  will consider, among other issues, your entitlement to
  the benefit sought, the type of benefit to be awarded, if
  any, and the amount of benefit to be awarded, if any, to
  which you may be entitled.

- In the event the Board, prior to your hearing, granted
  you a benefit without prejudice to such hearing, the
  hearing will also determine if that benefit shall be
  continued, modified, or discontinued.

- In the event you are already in receipt of a benefit, the
  hearing will be to determine continued eligibility.

### SCHEDULED HEARING

**Day: Tuesday    Date: December 23, 2025 Time: 8:30 AM**

**Address: 221 N. LaSalle St., Suite 1626  Chicago, IL 60601**

*** Please be advised that all hearings are assigned the same starting
time.  Each case will be called individually by the Board. This
means that there may be a waiting period before your case is heard.
We appreciate your patience and understanding as we work through
each hearing in an orderly manner.*

## STATEMENT OF PURPOSE

The purpose of this hearing is to provide, without undue technicality and expense, the swift, efficient, and fair resolution of your matter / application allowing for a full and fair opportunity to be heard.

BE ADVISED, IT IS YOUR OBLIGATION TO PROVE ENTITLEMENT TO THE BENEFIT SOUGHT, OR ENTITLEMENT TO A CONTINUATION WITHOUT MODIFICATION OR TERMINATION, OF ANY BENEFIT PREVIOUSLY AWARDED. THEREFORE, YOU ARE ADVISED TO PRESENT TO THE BOARD FOR ITS CONSIDERATION ALL PROOFS WHICH YOU DEEM NECESSARY TO ESTABLISH ENTITLEMENT TO THE BENEFITS SOUGHT OR A CONTINUATION OF ANY BENEFIT PREVIOUSLY AWARDED.

## HEARING RULES & PROCEDURES

The Rules and Procedures applicable to all hearings held before the Board are located at: chipabf.org/about/

## APPEARANCES

You may, if you choose, be represented by an attorney licensed to practice in the State of Illinois. Prior to the scheduled hearing, retained counsel shall file a written appearance advising the Board of his/her representation on your behalf and setting forth his/her mailing address, phone number, and email address for the purpose of accepting subsequent communication.

The Board must be notified in writing of any change or substitution of counsel.

THESE PROCEEDINGS ARE COMMENCED PURSUANT TO THE PROVISIONS OF THE ILLINOIS PENSION CODE, 40 ILCS 101 ET SEQ. AND YOU ARE ADVISED TO REVIEW THE APPLICABLE PROVISIONS THEREOF.

The Retirement Board of the
Policemen's Annuity & Benefit Fund
City of Chicago

_____
Kevin Reichart
Executive Director

2

## PROOF OF SERVICE BY MAIL

I, Robert Crawford, certify that I served a copy of the within notice of hearing by mailing to the individual named at the address reflected herein (by certified mail with return receipt requested) and to his/her retained counsel with a written appearance on-file (by first-class mail) by depositing the same in the U.S. Mail, at 221 N. LaSalle St., Chicago, Illinois, with proper postage prepaid on December 19, 2025.

CERTIFIED MAIL – RETURN RECEIPT
**#9589 0710 5270 1812 9478 70**

SUBSCRIBED TO AND BEFORE
ME THIS DAY OF
December 19, 2025

NOTARY PUBLIC

"OFFICIAL SEAL"
PAUL EDWARD RZESZUTKO
Notary Public, State Of Illinois
Commission No. 1007386
My Commission Expires March 27, 2029

3



The Retirement Board of the
# Policemen's Annuity and Benefit Fund of Chicago

221 North LaSalle St – Suite 1626, Chicago, IL 60601
(312) 744-3891    www.chipabf.org

**ELECTED TRUSTEES**
SGT. JOHN LALLY, President
THOMAS LONERGAN (Ret.)
DETECTIVE BROCK MERCK
LT. BRIAN E. WRIGHT, Recording Secretary

**EXECUTIVE DIRECTOR**
KEVIN REICHART

**APPOINTED TRUSTEES**
MELISSA CONYEARS-ERVIN
ANNETTE GUZMAN
JILL JAWORSKI
JEFFREY LEVINE, Vice President

January 5, 2026

Mr. Timothy W Moragne
8033 S Albany Ave
Chicago IL 60652

## NOTICE OF HEARING (RESCHEDULED)

The Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (the "Board"), pursuant to the provisions of the Illinois Pension Code, 40 ILCS 101 *et seq.*, has scheduled a hearing on your matter / application.

- If your matter / application seeks a benefit, the Board will consider, among other issues, your entitlement to the benefit sought, the type of benefit to be awarded, if any, and the amount of benefit to be awarded, if any, to which you may be entitled.

- In the event the Board, prior to your hearing, granted you a benefit without prejudice to such hearing, the hearing will also determine if that benefit shall be continued, modified, or discontinued.

- In the event you are already in receipt of a benefit, the hearing will be to determine continued eligibility.

### SCHEDULED HEARING

**Day: Monday    Date: January 26, 2026 Time: 10:30 AM**

**Address: 221 N. LaSalle St., Suite 1626  Chicago, IL 60601**

** *Please be advised that all hearings are assigned the same starting time. Each case will be called individually by the Board. This means that there may be a waiting period before your case is heard. We appreciate your patience and understanding as we work through each hearing in an orderly manner.*

## PROOF OF SERVICE BY MAIL

I, Robert Crawford, certify that I served a copy of the within notice of hearing by mailing to the individual named at the address reflected herein (by certified mail with return receipt requested) and to his/her retained counsel with a written appearance on-file (by first-class mail) by depositing the same in the U.S. Mail, at 221 N. LaSalle St., Chicago, Illinois, with proper postage prepaid on January 5, 2026.

CERTIFIED MAIL – RETURN RECEIPT
**#9589 0710 5270 1812 9479 17**

SUBSCRIBED TO AND BEFORE
ME THIS DAY OF
January 5, 2026

NOTARY PUBLIC

"OFFICIAL SEAL"
PAUL EDWARD RZESZUTKO
Notary Public, State Of Illinois
Commission No. 1007386
My Commission Expires March 27, 2029

3

# EXHIBIT I

**EEOC Correspondence / Delay**

<< Insert corresponding document behind this page >>

From: KIMBERLY ENGRAM <KIMBERLY.ENGRAM@EEOC.GOV>
Subject: 440-2022-07293
Date: January 23, 2023 at 8:23:09 AM CST
To: Timothy Moragne <tim8109@aol.com>

Officer Moragne:

Here is the City's preliminary response to your ADA claims. We will await for
them to submit their second response addressing your specific claims after the
BIA completes its
Investigation.

-----Original Message-----
From: Timothy Moragne <tim8109@aol.com>
Sent: Friday, January 20, 2023 2:44 PM
To: KIMBERLY ENGRAM <KIMBERLY.ENGRAM@EEOC.GOV>
Subject: Re: 440-2022-07293

Oh okay thanks, and no they haven't responded as of yet.

On Jan 20, 2023, at 2:40 PM, KIMBERLY ENGRAM
<KIMBERLY.ENGRAM@EEOC.GOV> wrote:

Mr. Moragne:

The error does not affect anything. If we get it wrong, the City corrects that.
They responded to you claims.

-----Original Message-----
From: Timothy Moragne <tim8109@aol.com>
Sent: Friday, January 20, 2023 2:09 PM
To: KIMBERLY ENGRAM <KIMBERLY.ENGRAM@EEOC.GOV>
Subject: 440-2022-07293

CAUTION: The sender of this message is external to the EEOC network. Please
use care when clicking on links and responding with sensitive information.
Forward suspicious emails to phishing@eeoc.gov.


Good afternoon Ms. Engram i just wanted to let you know that i tried several
times right after i talked with you on November 28, 2022 to change the error that
is listed as my date of hire by the City Of Chicago, Department Of Police which
should've stated August 31, 1998 not August 31, 1988. There is no way of
knowing if the correction had went through so i assumed that since i hadn't heard
anything it did until today. If there is anything that you need me to do to correct
this error again please feel free to contact me at (773) 842-1496 or reply to this
email, thank you.

From: KIMBERLY ENGRAM <KIMBERLY.ENGRAM@EEOC.GOV>
Subject: RE: 440-2022-07293
Date: August 21, 2024 at 2:50:59 PM CDT
To: Timothy Moragne <tim8109@aol.com>

Mr. Moragne –

Thank you for contacting me regarding your claim(s).  So, on June 24, 2024, their Corporation Counsel replied back to my status e-mail, as follows;

_____

Good morning, Investigator Engram –

Ms. Franklin is no longer with our office.  I am following up regarding this matter.  Apologies for the delay.

I've inquired with my client, who reports that the case is currently in the "Advocate Review" stage, meaning that it is in its final stages before the member/complainant are notified of the outcome.  I therefore expect the City to be able to supplement its response soon and will keep you apprised.


Sincerely,
Maria

Maria C. Vuolo-Milan
Chief Assistant Corporation Counsel, Labor Division

------Original Message-----
From: Timothy Moragne <tim8109@aol.com>
Sent: Wednesday, August 21, 2024 10:22 AM
To: KIMBERLY ENGRAM <KIMBERLY.ENGRAM@EEOC.GOV>
Subject: Re: 440-2022-07293

Good Morning Ms. Engram have there been any updates from the City regarding their supplemental response? I applied for disability from the City of Chicago, Department of Police in August of 2022 due to an on duty automobile accident and as of todays date i have yet to even have a hearing which in this period of time is unbelievable! I'm pretty sure that this is being done because of the Complaint/Lawsuit that i filed with the EEOC and is being used as some sort of punishment to deter myself and others from filing complaints. Whenever you get a chance could you please send me a status update, thank you.

On Jun 10, 2024, at 11:14 AM, Timothy Moragne <tim8109@aol.com> wrote:

Thank you very much.
TWM

On Jun 10, 2024, at 11:07 AM, KIMBERLY ENGRAM
<Kimberly.engram@eeoc.gov> wrote:

Mr. Moragne —

The City submitted a preliminary response which did not address your
claims.  So, the EEOC went back to them asking them to provide a
supplemental response specifically addressing their claims.
Their Counsel responded that the City attorney handling your claims
was no longer with the City.  They did reassign your claims to another
attorney who sent us a request for an extension to provide their
supplemental response.  That was about a week or two ago, and they are
asking to respond around the end of the month.  When they do, I will
contact you

-----Original Message-----
From: Timothy Moragne <tim8109@aol.com>
Sent: Monday, June 10, 2024 11:02 AM
To: KIMBERLY ENGRAM <KIMBERLY.ENGRAM@EEOC.GOV>
Subject: 440-2022-07293

CAUTION: The sender of this message is external to the EEOC network.
Please use care when clicking on links and responding with sensitive
information. Forward suspicious emails to phishing@eeoc.gov.


Could you please call me at 773-842-1496, i have emailed you about
this case but never got a response. Just trying to see if they (The
Chicago Police Department) ever responded to your inquirery.


From: KIMBERLY ENGRAM <KIMBERLY.ENGRAM@EEOC.GOV>
Subject: RE: 440-2022-07293
Date: June 10, 2024 at 11:07:33 AM CDT
To: Timothy Moragne <tim8109@aol.com>

Mr. Moragne —

The City submitted a preliminary response which did not address your
claims.  So, the EEOC went back to them asking them to provide a
supplemental response specifically addressing their claims.
Their Counsel responded that the City attorney handling your claims
was no longer with the City.  They did reassign your claims to another
attorney who sent us a request for an extension to provide their
supplemental response.  That was about a week or two ago, and they are
asking to respond around the end of the month.  When they do, I will
contact you

-----Original Message-----
From: Timothy Moragne <tim8109@aol.com>
Sent: Monday, June 10, 2024 11:02 AM
To: KIMBERLY ENGRAM <KIMBERLY.ENGRAM@EEOC.GOV>
Subject: 440-2022-07293

CAUTION: The sender of this message is external to the EEOC network.
Please use care when clicking on links and responding with sensitive
information. Forward suspicious emails to phishing@eeoc.gov.


Could you please call me at 773-842-1496, i have emailed you about
this case but never got a response. Just trying to see if they (The
Chicago Police Department) ever responded to your inquirery.

# EXHIBIT J

**BIA Investigation File**

<< Insert corresponding document behind this page >>



# Quick View Report

## INFORMATION/COMPLAINT DETAILS

| | |
|---|---|
| **Log No** | 2022-0005279 |
| **Primary Category** | Operation/Personnel Violations EEO Investigations Disability 10S |

| | | | |
|---|---|---|---|
| **Incident Type** | Information/Complaint | **Affidavit Received** | No |
| **Incident Origin** | Phone | **Date of Incident** | 16-July-2022 11:00 |
| **Status** | Under BIA Investigation | **Date of Incident To** | |
| **Investigator** | JEREMY J DRZEWIECKI | **Supervisor** | THOMAS J OSIKA |

**Incident Description** CPD Initiation report: It is alleged that the accused discriminated against the complainant on the basis of disability, and it is alleged the complainant was reassigned while on medical leave.

## SPECIAL CONSIDERATIONS

| | |
|---|---|
| CIVIL SUIT :No | PCRIA : No |
| CRIMINAL :No | PURSUIT RELATED :No |
| CONFIDENTIAL :No | POLICE SHOOTING (U) :No |
| EEOC :Yes | PPO :No |
| EXTRAORDINARY OCCURRENCE :No | REPRESENTED :No |
| FATAL:No | SELF INFLICTED INJURY :No |
| MAJOR CASE :No | Separation :No |
| MEDIATION :No | SERIOUS BODILY INJURY :No |
| MOTOR VEHICLE (V) :No | SUICIDE ATTEMPT :No |
| INCARCERATED :No | WARD OF THE STATE :No |
| JUVENILE :No | |

## RELATED CPD

| Role | Name | Star No. | Employee No. | Position | On Duty |
|---|---|---|---|---|---|
| Accused | TRACI WALKER | 222 | ███ | DEPUTY CHIEF | On Duty |
| Reporting Party: Subject | TIMOTHY MORAGNE | 19052 | ███ | POLICE OFFICER | Off Duty |
| Reporting Party: Third Party | DANIEL O BRIEN | 1636 | ███ | POLICE OFFICER ASSIGNED AS LEGAL OFFICER II | On Duty |

## RELATED NON CPD

Report executed   5/3/24

Page 1 of  2



# Quick View Report

## RELATED LOCATIONS

| Role | Address | Beat | District | Location |
|------|---------|------|----------|----------|
| Location of Occurrence | 3510 S MICHIGAN AVE CHICAGO, 60653 | 0213 | 002 | 280 - POLICE FACILITY / VEHICLE PARKING LOT |

## ATTACHMENTS

| Final Attachments | Internal Attachments | Total Attachments | Total Number of Pages |
|-------------------|----------------------|-------------------|-----------------------|
| 0 | 6 | 6 | 0 |

COLUMN | Investigative

**Log No : 2022-0005279**

| | | | |
|---|---|---|---|
| **Attachment #** | 1 | **Category** | DOCUMENT OTHER |
| **File Name** | Quick View Report.pdf | **No. of Pages** | 2 |
| **Description** | | | |

| | | | |
|---|---|---|---|
| **Attachment #** | 2 | **Category** | CONFLICT CERTIFICATION |
| **File Name** | Conflict Certification.pdf | **No. of Pages** | 1 |
| **Description** | | | |

| | | | |
|---|---|---|---|
| **Attachment #** | 3 | **Category** | SWORN AFFIDAVIT - NOT REQUIRED |
| **File Name** | Sworn Affidavit.pdf | **No. of Pages** | 1 |
| **Description** | | | |

| | | | |
|---|---|---|---|
| **Attachment #** | 4 | **Category** | DOCUMENT INITIATION REPORT |
| **File Name** | Initiation Report and Charge of Discrimination.pdf | **No. of Pages** | 3 |
| **Description** | | | |

| | | | |
|---|---|---|---|
| **Attachment #** | 5 | **Category** | INTERVIEW-REPORTING PARTY |
| **File Name** | Reporting Party MORAGNE Interview.MP3 | **No. of Pages** | 0 |
| **Description** | | | |

| | | | |
|---|---|---|---|
| **Attachment #** | 6 | **Category** | INTERVIEW - ACCUSED |
| **File Name** | Accused DC WALKER Interview.MP3 | **No. of Pages** | 0 |
| **Description** | | | |

| | | | |
|---|---|---|---|
| **Attachment #** | 7 | **Category** | MEDICAL SERVICES SECTION - MEDICAL ABSENCE REPORT |
| **File Name** | Medical Information.pdf | **No. of Pages** | 1 |
| **Description** | | | |

COLUMN | Investigative

**Log No : 2022-0005279**

| Attachment # | 8 | Category | MEDICAL SERVICES SECTION - MEDICAL ABSENCE REPORT |
|---|---|---|---|
| File Name | Disability Information.pdf | No. of Pages | 1 |
| Description | | | |

| Attachment # | 9 | Category | DOCUMENT OTHER |
|---|---|---|---|
| File Name | Phone records.pdf | No. of Pages | 2 |
| Description | | | |

| Attachment # | 10 | Category | DOCUMENT OTHER |
|---|---|---|---|
| File Name | Case Audit Report for CL 2022-0002947.pdf | No. of Pages | 11 |
| Description | | | |

| Attachment # | 11 | Category | DOCUMENT OTHER |
|---|---|---|---|
| File Name | History of Log Number 2022-0002947.png | No. of Pages | 1 |
| Description | | | |

| Attachment # | 12 | Category | DOCUMENT EMAIL |
|---|---|---|---|
| File Name | Detail Order Email.pdf | No. of Pages | 1 |
| Description | | | |

| Attachment # | 13 | Category | CLOSING REPORT |
|---|---|---|---|
| File Name | Closing Packet.pdf | No. of Pages | 9 |
| Description | | | |

| Attachment # | 14 | Category | COMMAND CHANNEL BYPASS |
|---|---|---|---|
| File Name | REQUEST TO BYPASS.pdf | No. of Pages | 2 |
| Description | | | |

COLUMN | Investigative

**Log No : 2022-0005279**

**Attachment #** 15

**File Name** OFFICER NOTIFICATION LETTER WALKER 22-5279.pdf

**Description**

**Category**

**No. of Pages**

---

**Attachment #** 16

**File Name** COMPLAINANT LETTER MORAGNE 22-5279.pdf

**Description**

**Category**

**No. of Pages**

---

**Attachment #** 17

**File Name** ASR_2022-0005279.pdf

**Description**

**Category** ADMINISTRATIVE SUMMARY REPORT

**No. of Pages**

---

**Total Attachments :** 17

**Total Pages :** 35

Executed on:27-Feb-2026 07:37:45 CST

Page 3 of 3

# LOG NUMBER CONFLICT CERTIFICATION
## CHICAGO POLICE DEPARTMENT

Log No.: **2022-0005279**

1) I hereby certify that, to the best of my knowledge, I do not have a professional (outside of Chicago Police Department business), external business, financial, or close personal relationship with the complainant, a witness, or the accused.

2) I further certify that, to the best of my knowledge, no household or immediate family member (e.g. spouse, domestic partner, parent(s), sibling(s), child (children)), has a professional (outside of Chicago Police Department business), external business, financial, or close personal relationship with the complainant, a witness, or the accused.

3) I further certify that, to the best of my knowledge, the resolution of the matter under investigation will not positively or negatively affect my financial interest

4) I further certify that, to the best of my knowledge, the resolution of the matter I under investigation will not positively or negatively affect the financial interests of any member of my household or immediate family.

5) I further certify that, to the best of my knowledge, I am not an accused or witness in this matter.

6) I further certify that, to the best of my knowledge, I did not authorize, engage in conduct that led to, or otherwise allegedly participated in the incident giving rise to the complaint.

7) I further certify that I am not the complainant in this matter.

8) I understand and acknowledge that I must disclose, to the Chief, Bureau of Internal Affairs or the Chief Administrator, Civilian Office of Police Accountability, in writing, any change in the above certifications, including:

a the acquisition of any financial interest or the development or discovery of any professional (outside of Chicago Police Department business), external business, or close personal relationship that would directly affect my ability to conduct all impartial objective investigations and render unbiased decisions concerning the matter under investigation.

b the discovery that a member of my household or immediate family has or has acquired a professional (outside of Chicago Police Department business), external business, financial, or close personal relationship with a victim, complainant, witness or the accused member(s).

c the discovery that I or a member of my household or immediate family will be positively or negatively affected by the resolution of the matter under investigation.

Signature | Supervisor
--- | ---
*Jeremy J Drzewiecki* | *Thomas J Osika*
Investigator (Print) | Supervisor (Print)
Aug 2 2023 | Aug 2 2023
Date | Date

**CPD-44.201 (REV. 2/22)**

2022-0005279

Log No.:

# SWORN AFFIDAVIT FOR LOG NUMBER INVESTIGATION
CHICAGO POLICE DEPARTMENT

**STATE OF ILLINOIS** )

**COUNTY OF COOK** )

CC

| Location of Incident | Date | Time |
|---|---|---|
| | | |

Summary of Statement(s):

I,_____ hereby state as follows:

1. I have read the above summary and/or attached statement(s) in its entirety, reviewed it for accuracy and been given an opportunity to make corrections and additions to the statement(s).

2. Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the information set forth in the statement(s) above and/or attached summary are true and correct, except as to any matters therein stated to be on information and belief as to such matters, I certify as aforesaid that I verily believe the same to be true.

_____
Print Affiant's Name

_____
Print Witness' Name

_____
Affiant's Signature

_____
Witness' Signature

_____
Date

_____
Date

**INVESTIGATOR USE ONLY**

**COMPLETE THIS SECTION ONLY WHEN THE SWORN AFFIDAVIT HAS NOT BEEN SIGNED.**

A Sworn Affidavit has not been signed for this investigation under the following circumstances:

☐ NO AFFIDAVIT - NO CONTACT     ☐ NO AFFIDAVIT - REFUSED     ☐ NO AFFIDAVIT - NO COOPERATION     ☒ NO AFFIDAVIT REQUIRED

**CPD-44.126 (Rev. 8/16) English**

Attachment No. 3

Log No. 2022-0005279

# INITIATION REPORT – CHICAGO POLICE DEPARTMENT

| OFFICE/BUREAU<br>Office of the Superintendent | | | | DATE<br>13 Dec 22 | |
|---|---|---|---|---|---|

**DISTRICT/UNIT OF ASSIGNMENT**
Legal Affairs Division

**TO:**

| DISTRICT/UNIT COMMANDING OFFICER NAME<br>Dana O'Malley |
|---|
| DISTRICT/UNIT COMMANDING OFFICER RANK/TITLE<br>General Counsel |
| DISTRICT/UNIT NAME<br>Legal Affairs Division |

**FROM:**

| NAME<br>Daniel O'Brien |
|---|
| RANK/TITLE<br>Sergeant |
| DISTRICT/UNIT NAME<br>Legal Affairs Division |

**SUBJECT:** | **INITIATION REPORT FOR** | LOG NUMBER<br>2022-0005279

## ACCUSED

| NAME (LAST, FIRST, MI)<br>N/A | | | RANK | STAR NO. | BEAT NO. |
|---|---|---|---|---|---|
| RACE | SEX | DATE OF ASSIGN. | DATE OF BIRTH | UNIT ASSIGNED | UNIT DETAILED |
| DUTY STATUS: ☐ ON-DUTY<br>☐ OFF-DUTY ☐ UNK. | UNIFORM: ☐ CIVILIAN DRESS<br>☐ UNIFORM ☐ UNK. | | ADDITIONAL IDENTIFIERS OR DESCRIPTIONS: | | |

## ACCUSED #2

| NAME (LAST, FIRST, MI) | | | RANK | STAR NO. | BEAT NO. |
|---|---|---|---|---|---|
| RACE | SEX | DATE OF ASSIGN. | DATE OF BIRTH | UNIT ASSIGNED | UNIT DETAILED |
| DUTY STATUS: ☐ ON-DUTY<br>☐ OFF-DUTY ☐ UNK. | UNIFORM: ☐ CIVILIAN DRESS<br>☐ UNIFORM ☐ UNK. | | ADDITIONAL IDENTIFIERS OR DESCRIPTIONS: | | |

## ACCUSED #3

| NAME (LAST, FIRST, MI) | | | RANK | STAR NO. | BEAT NO. |
|---|---|---|---|---|---|
| RACE | SEX | DATE OF ASSIGN. | DATE OF BIRTH | UNIT ASSIGNED | UNIT DETAILED |
| DUTY STATUS: ☐ ON-DUTY<br>☐ OFF-DUTY ☐ UNK. | UNIFORM: ☐ CIVILIAN DRESS<br>☐ UNIFORM ☐ UNK. | | ADDITIONAL IDENTIFIERS OR DESCRIPTIONS: | | |

## REPORTING PARTY

| NAME (LAST, FIRST, MI)<br>MORAGNE, Timothy | ☐ UNK. ☐ ANONYMOUS | RACE | SEX<br>M | DATE OF BIRTH |
|---|---|---|---|---|
| ADDRESS ██████████████████████████████████ | ██████ | ██████ | ████ | ████ |

## VICTIM

| NAME (LAST, FIRST, MI) ☐ SAME AS REPORTING PARTY | | RACE | SEX | DATE OF BIRTH | |
|---|---|---|---|---|---|
| ADDRESS | APT # | CITY | | STATE | ZIP |
| HOME PHONE | CELL PHONE | EMAIL ADDRESS | | | |

## WITNESS / DNA

| NAME (LAST, FIRST, MI) | | RACE | SEX | DATE OF BIRTH | |
|---|---|---|---|---|---|
| ADDRESS | APT # | CITY | STATE | | ZIP |
| HOME PHONE | CELL PHONE | EMAIL ADDRESS | | | |

CPD-44.100 (12/21)  *ADDITIONAL ACCUSED, VICTIM, AND WITNESS INFORMATION WILL BE INCLUDED IN THE NARRATIVE.*  – *Over for page 2*

# INITIATION REPORT – CHICAGO POLICE DEPARTMENT

| CONTACT WITH REPORTING PARTY: LOCATION | DATE | TIME | TYPE OF CONTACT: ☐ PHONE ☐ IN-PERSON ☒ OTHER: via email from COL |
|---|---|---|---|

**COMPLAINT/ALLEGATION OF MISCONDUCT:**

Discrimination: The complainant alleges that he has been discriminated against on the basis of his disability in violation of the American with Disabilities Act of 1990

| ALLEGATION LOCATION | ☐ APPROXIMATE | DATE | ☐ APPROX. | TIME | ☐ APPROX. |
|---|---|---|---|---|---|

| EVENT NUMBER | RD NUMBER | CB NUMBER |
|---|---|---|

**NARRATIVE** (State how the allegation came to your attention and describe the Reporting Party's complaints as specifically as possible, including all descriptive information provided and listing any other Department members known to have responded or on scene. Describe any observed or complaints of injury, any video viewed, or any social media in possession of the Reporting Party and whether the video or social media was preserved. If additional space is required, additional Initiation Reports will be completed and submitted together.)

R/Sgt. received an EEOC charge filed by the complainant Timothy Moragne, Emp. ▮▮▮▮ with the Illinois Department of Human Rights (charge #440-2022-07293, attached). The charge was sent to R/Sgt. via email from paralegal Donna Pappas at the Labor Division of the city's Law Department. R/Sgt. read the charge in which the charging party alleges that he has been discriminated against and harassed on the basis of an unspecified disability, in that he alleges that four days into a medical leave he was reassigned. Complainant also alleges retaliation. No additional facts are included in the Charge of Discrimination.

**PHYSICAL EVIDENCE** (List items inventoried and the associated Inventory Number):

| DOES REPORTING PARTY HAVE VIDEO/AUDIO EVIDENCE? ☒ NO ☐ YES | WAS VIDEO/AUDIO EVIDENCE INVENTORIED? ☒ NO ☐ YES, INV NO:_____ | DOES REPORTING PARTY HAVE SOCIAL MEDIA EVIDENCE? ☒ NO ☐ YES | WAS SOCIAL MEDIA EVIDENCE INVENTORIED? ☒ NO ☐ YES, INV NO:_____ |
|---|---|---|---|

IS THERE DEPARTMENT-RECORDED VIDEO? ☐ YES ☒ NO, EXPLAIN IN NARRATIVE

DEPARTMENT-RECORDED VIDEO HELD, TAGGED, OR RETAINED? ☐ BODY-WORN CAMERA ☐ IN-CAR VIDEO ☐ POD CAMERA ☐ OTHER (Describe): _____

ATTACHMENTS: ☐ CASE REPORT RD NO:_____  ☐ SUPPLEMENTARY REPORT ☐ CITATION NO:_____
☐ ARREST REPORT CB NO:_____  ☐ BOND RECEIPT  ☐ CRIME SCENE PROCESSING REPORT
☐ PCAD PRINTOUT  ☐ ADIR  ☐ TACTICAL RESPONSE REPORT ☒ OTHER (Describe): Charge of Discrimination and related docs

| INITIATION NOTIFICATION TO: ☒ COPA ☐ CPIC: NAME Upshaw | EMPLOYEE/STAR NO. ▮▮▮▮ | DATE 13 Dec 22 | TIME 1245 Hrs. |
|---|---|---|---|
| REPORTING DEPARTMENT MEMBER: NAME Daniel O'Brien | STAR/EMP. NO. 1636 / 1181 | BEAT NO. 3CD | DATE 13 Dec 22 |

CPD-44.100 (12/21)

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC FEPA | **440-2022-07293** |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Mr. Timothy W. Moragne | ▇▇▇▇▇▇ | 1963 |

| Street Address |
|---|
| 8033 S. Albany Avenue |
| CHICAGO, IL 60652 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| CITY OF CHICAGO (CPD0 | 501+ Employees | |

| Street Address |
|---|
| 3510 S MICHIGAN AVE |
| CHICAGO, IL 60653 |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| Disability, Retaliation | Earliest: 07/16/2022    Latest: 07/16/2022 |
| | Continuing Action |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by the Respondent on or about August 31, 1988. My position is Police Officer. Respondent is aware of my disability. In or around July 2022, the Respondent was informed of my medical leave. Subsequently, I was subjected to harassment which included their attempt to issue me a discipline, of which I complained. Four-days into my medical leave, I was reassigned. I believe that I have been discriminated against because of my disability, and retaliated against for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally Signed By: Mr. Timothy W. Moragne** 11/29/2022 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| *Charging Party Signature* | |

CLEARiig

Name: MORAGNE, TIMOTHY W    Emp No.    Category: Recurrence Of I.O.D.    Status: Stationary    First Day of Medical Absence: 12-JUL-2022

## Employee Information

| At Time Of Absence | | Current Information | | | | |
|---|---|---|---|---|---|---|
| Name | MORAGNE, TIMOTHY W | Assigned Unit | 121 | Assigned Unit 121 | Emp No. | |
| Address | | Detailed Unit | | Detailed Unit 006 | Star No. | 19052 |
| | | Watch | 5 | Watch 5 | Position | POLICE OFFICER |
| Phone No. | | Day Off Group | 8 | Day Off Group 8 | District of Residence 008 | |
| Furlough Period | 05B,12B. | | | | | |

Last Day of Assigned Duty    11-JUL-2022    Received Date/Time 12-JUL-2022 08:00

First Day of Medical Absence 12-JUL-2022    Received by    DUCKINS, JESSICA    Star No 1211

Entered Date    12-JUL-2022    Approved by    DUCKINS, JESSICA

Category    Recurrence Of I.O.D. Reevaluation Date    23-AUG-2022 10:00

Original I.O.D. : Day 07 Month MAY Year 2006

## Nature of Sickness or Injury

Other Sickness or Injury HIP PAIN CAN NOT DRIVE WHILE TAKING MEDICATION.

Hospitalized? NO

## Requested Visits & Follow-Up Reports

| Visit Requested By | Notification Date/Time | Contacted? | Attempted Date/Time | Contact Method | Signed By | Narrative |
|---|---|---|---|---|---|---|
| DUCKINS, JESSICA | 12-JUL-2022 09:42 | Y | 12-JUL-2022 17:21 | HOME | CHUDY, JEFFREY R/SGT | MADE CONTACT WITH THE ABOVE LISTED OFFICER |

Copyright © 2005. All rights reserved.

**CLEAR** 11g

Print | Logout | Help

Home · Medical / Timekeeping

Name: **MORAGNE, TIMOTHY W**    Emp No.

| Name | MORAGNE, TIMOTHY W | Assigned Unit | 121 | Emp No. | 45846 |
|------|--------------------|---------------|-----|---------|-------|
| Address | | Detailed Unit | 006 | Star No. | N/A |
| | | Watch | 2 | Position | POLICE OFFICER |
| Phone No. | | Day Off Group | 63 | District of Residence | 008 |
| Furlough Period | 05B,12B, | | | | |

## Progress Notes History

| Type | Medical Absence | Notes | Entered By | Entered Date/Time | Case Manager | Note No. | IOD Count |
|------|-----------------|-------|------------|-------------------|--------------|----------|-----------|
| ==> Notes | - | The Policemen's Retirement Boa | SPIKES-CAIN, MICHELE | 28-FEB-2023 11:00 | | 1167556 | |
| View Notes | - | recurrence to right hip IOD is | ARJMAND, SUSAN | 13-OCT-2022 14:15 | | 1146965 | |
| View Details | - | Received progress notes from p | PATTERSON, NENA | 12-OCT-2022 15:08 | PATTERSON, NENA | 1146771 | |
| View Notes | - | MEMBER CALLED TO FOLLOW-UP WIT | MANNIE, KHARMIEL | 04-OCT-2022 13:46 | | 1145399 | |
| View Notes | - | Medical File copied and sent t | SOTIROVA, MARIANA | 16-SEP-2022 09:27 | | 1142351 | |

row(s) 1 - 5 of 137 Next ▶

## Progress Note

Entered By    SPIKES-CAIN, MICHELE    Entered Date/Time 28-FEB-2023 11:00

Notes
The Policemen's Retirement Board awarded Ordinary Disability*
Begins 08/20/2022
Ends 06/18/2026

User:
Module: 15020  $Revision: 1 85 $

Copyright © 2002, All rights reserved

# FIRSTNET.
Built with AT&T

| | |
|---|---|
| Page: | A1 of A14 |
| Issue Date: | Aug 05, 2022 |
| Account Number: | ▉ |
| Foundation Account: | ▉ |

## Your detailed usage

**Wireless,** ▉
TIMOTHY MORAGNE

### Call Detail

| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Addl Charges |
|---|---|---|---|---|---|---|---|
| **Wednesday, Jul 06** | | | | | | | |
| 07:16am | LA GRA IL | | FNET | | 2 | $0.00 | $0.00 |
| 08:36am | CHICAG I | | FNET | | 21 | $0.00 | $0.00 |
| 09:46am | INCOMI C | | FNET | | 49 | $0.00 | $0.00 |
| 10:42am | CHICAG I | | FNET | | 11 | $0.00 | $0.00 |
| 10:58am | CHICAG I | | FNET | | 1 | $0.00 | $0.00 |
| 11:03am | INCOMI C | | FNET | | 11 | $0.00 | $0.00 |
| 01:43pm | INCOMI C | | FNET | | 1 | $0.00 | $0.00 |
| 02:23pm | INCOMI C | | FNET | | 6 | $0.00 | $0.00 |
| **Thursday, Jul 07** | | | | | | | |
| 06:54am | INCOMI CL | | FNET | | 14 | $0.00 | $0.00 |
| 07:37am | INCOMI CL | | FNET | | 8 | $0.00 | $0.00 |
| 08:45am | PALOS IL | | FNET | | 1 | $0.00 | $0.00 |
| 08:52am | PALOS IL | | FNET | | 7 | $0.00 | $0.00 |
| 09:31am | CHICAG IL | | FNET | | 1 | $0.00 | $0.00 |
| 10:29am | INCOMI CL | | FNET | | 27 | $0.00 | $0.00 |
| 10:56am | CHICAG IL | | FNET | | 1 | $0.00 | $0.00 |
| 12:02pm | CHICAG IL | | FNET | | 2 | $0.00 | $0.00 |
| 12:27pm | INCOMI CL | | FNET | | 2 | $0.00 | $0.00 |
| 03:11pm | INCOMI CL | | FNET | | 1 | $0.00 | $0.00 |
| 03:15pm | TINLEY IL | | FNET | | 2 | $0.00 | $0.00 |
| 03:39pm | INCOMI CL | | FNET | | 7 | $0.00 | $0.00 |
| 04:17pm | INCOMI CL | | FNET | | 1 | $0.00 | $0.00 |
| 05:20pm | CHICAG IL | | FNET | | 2 | $0.00 | $0.00 |
| **Friday, Jul 08** | | | | | | | |
| 06:46am | CHICAG IL | | FNET | | 32 | $0.00 | $0.00 |
| 08:23am | INCOMI CL | | FNET | | 7 | $0.00 | $0.00 |
| 10:18am | SUMMIT IL | | FNET | | 2 | $0.00 | $0.00 |
| 10:52am | CHICAG IL | | FNET | | 8 | $0.00 | $0.00 |
| 11:17am | INCOMI CL | | FNET | | 29 | $0.00 | $0.00 |
| 11:58am | INCOMI CL | | FNET | | 2 | $0.00 | $0.00 |
| 01:48pm | OAK LA IL | | FNET | | 6 | $0.00 | $0.00 |
| 02:25pm | INCOMI C | | FNET | | 18 | $0.00 | $0.00 |
| 02:44pm | OAK LA IL | | FNET | | 4 | $0.00 | $0.00 |
| 03:31pm | INCOMI CL | | FNET | | 1 | $0.00 | $0.00 |
| 05:28pm | INCOMI CL | | FNET | | 8 | $0.00 | $0.00 |
| 08:55pm | INCOMI CL | | FNET | | 1 | $0.00 | $0.00 |
| **Saturday, Jul 09** | | | | | | | |
| 08:54am | INCOMI CL | | FNET | | 2 | $0.00 | $0.00 |
| 09:13am | INCOMI CL | | FNET | | 11 | $0.00 | $0.00 |
| 10:00am | MCKINN TX | | FNET | | 3 | $0.00 | $0.00 |
| 01:25pm | INCOMI CL | | FNET | | 1 | $0.00 | $0.00 |
| 01:33pm | CHICAG IL | | FNET | | 2 | $0.00 | $0.00 |
| 06:23pm | INCOMI CL | | FNET | | 1 | $0.00 | $0.00 |
| 07:17pm | INCOMI CL | | FNET | | 32 | $0.00 | $0.00 |
| **Sunday, Jul 10** | | | | | | | |
| 07:35am | CHICAG IL | | FNET | | 2 | $0.00 | $0.00 |
| 02:32pm | SUMMIT IL | | FNET | | 1 | $0.00 | $0.00 |
| 02:33pm | INCOMI CL | | FNET | | 1 | $0.00 | $0.00 |

773.842.1496 contin...

| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Addl Charges |
|---|---|---|---|---|---|---|---|
| 02:36pm | INCOMI CL | | WIFI | | 8 | $0.00 | $0.00 |
| 03:33pm | INCOMI CL | | WIFI | | 7 | $0.00 | $0.00 |
| 04:34pm | INCOMI CL | | FNET | | 6 | $0.00 | $0.00 |
| 04:40pm | INCOMI CL | | WIFI | | 11 | $0.00 | $0.00 |
| **Monday, Jul 11** | | | | | | | |
| 09:48am | INCOMI CL | | FNET | | 3 | $0.00 | $0.00 |
| 09:58am | INCOMI CL | | FNET | | 1 | $0.00 | $0.00 |
| 10:16am | INCOMI CL | | FNET | | 7 | $0.00 | $0.00 |
| 12:48pm | INCOMI CL | | FNET | | 3 | $0.00 | $0.00 |
| 12:52pm | CHICAG IL | | FNET | | 2 | $0.00 | $0.00 |
| 12:54pm | CALL WAIT | | FNET | CW | 1 | $0.00 | $0.00 |
| 01:39pm | INCOMI CL | | FNET | | 9 | $0.00 | $0.00 |
| 01:47pm | CHICAG IL | | FNET | | 10 | $0.00 | $0.00 |
| 04:52pm | CHICAG IL | | FNET | | 1 | $0.00 | $0.00 |
| 04:54pm | CHICAG IL | | FNET | | 2 | $0.00 | $0.00 |
| 05:00pm | CHICAG IL | | FNET | | 8 | $0.00 | $0.00 |
| 05:27pm | SUMMIT IL | | FNET | | 1 | $0.00 | $0.00 |
| 05:28pm | INCOMI CL | | FNET | | 7 | $0.00 | $0.00 |
| 06:00pm | SUMMIT IL | | FNET | | 2 | $0.00 | $0.00 |
| 09:17pm | INCOMI CL | | FNET | | 3 | $0.00 | $0.00 |
| 09:19pm | CALL WAIT | | FNET | CW | 2 | $0.00 | $0.00 |
| 09:21pm | SUMMIT IL | | FNET | | 1 | $0.00 | $0.00 |
| 09:23pm | SUMMIT IL | | FNET | | 1 | $0.00 | $0.00 |
| 09:39pm | INCOMI CL | | FNET | | 1 | $0.00 | $0.00 |
| 09:40pm | INCOMI CL | | WIFI | | 1 | $0.00 | $0.00 |
| 09:51pm | INCOMI CL | | NET | | 1 | $0.00 | $0.00 |
| **Tuesday, Jul 12** | | | | | | | |
| 06:20am | CHICAG IL | | FNET | | 2 | $0.00 | $0.00 |
| 07:53am | CHICAG IL | | FNET | | 4 | $0.00 | $0.00 |
| 08:57am | CHICAG IL | | WIFI | | 2 | $0.00 | $0.00 |
| 09:16am | SUMMIT IL | | WIFI | | 2 | $0.00 | $0.00 |
| 09:37am | INCOMI CL | | FNET | | 6 | $0.00 | $0.00 |
| 09:43am | PALOS IL | | WIFI | | 1 | $0.00 | $0.00 |
| 09:43am | CALL WAIT | | WIFI | CW | 4 | $0.00 | $0.00 |
| 09:47am | PALOS IL | | WIFI | | 2 | $0.00 | $0.00 |
| 10:08am | CHICAG IL | | NET | | 3 | $0.00 | $0.00 |
| 10:12am | SUMMIT IL | | NET | | 2 | $0.00 | $0.00 |
| 10:36am | OAK LA IL | | NET | | 5 | $0.00 | $0.00 |
| 10:40am | OAK LA IL | | WIFI | | 1 | $0.00 | $0.00 |
| 10:49am | OAK LA IL | | WIFI | | 4 | $0.00 | $0.00 |
| 11:28am | CHICAG IL | | NET | | 1 | $0.00 | $0.00 |
| 11:35am | INCOMI CL | | WIFI | | 2 | $0.00 | $0.00 |
| 11:46am | CHICAG IL | | NET | | 8 | $0.00 | $0.00 |
| 12:12pm | PALOS IL | | NET | | 10 | $0.00 | $0.00 |
| 12:29pm | INCOMI CL | | NET | | 1 | $0.00 | $0.00 |
| 12:31pm | OAK LA IL | | NET | | 2 | $0.00 | $0.00 |
| 12:33pm | OAK LA IL | | NET | | 7 | $0.00 | $0.00 |
| 12:43pm | PALOS IL | | NET | | 1 | $0.00 | $0.00 |
| 12:43pm | PALOS IL | | IFI | | 4 | $0.00 | $0.00 |
| 01:02pm | CHICAG IL | | IFI | | 3 | $0.00 | $0.00 |
| 01:39pm | INCOMI CL | | NET | | 1 | $0.00 | $0.00 |
| 01:39pm | INCOMI CL | | IFI | | 8 | $0.00 | $0.00 |
| 01:50pm | BLUEIS IL | | IFI | | 1 | $0.00 | $0.00 |
| 01:59pm | INCOMI CL | | IFI | | 1 | $0.00 | $0.00 |
| 02:16pm | INCOMI CL | | IFI | | 1 | $0.00 | $0.00 |
| 03:23pm | INCOMI CL | | IFI | | 26 | $0.00 | $0.00 |
| 04:24pm | CHICAG IL | | IFI | | 2 | $0.00 | $0.00 |
| 07:26pm | CHICAG | | IFI | | 1 | $0.00 | $0.00 |
| 07:30pm | INCOMI CL | | IFI | | 32 | $0.00 | $0.00 |

 
| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Addl Charges |
|------|------|------|------|------|------|------|------|
| **Wednesday, Jul 13** | | | | | | | |
| | | | WIFI | CW | 19 | $0.00 | $0.00 |
| | | | WIFI | | 2 | $0.00 | $0.00 |
| | | | WIFI | | 13 | $0.00 | $0.00 |
| | | | WIFI | | 1 | $0.00 | $0.00 |
| | | | WIFI | | 1 | $0.00 | $0.00 |
| | | | WIFI | | 2 | $0.00 | $0.00 |
| | | | FNET | | 2 | $0.00 | $0.00 |
| | | | FNET | | 2 | $0.00 | $0.00 |
| | | | FNET | | 2 | $0.00 | $0.00 |
| | | | FNET | | 9 | $0.00 | $0.00 |
| | | | WIFI | | 3 | $0.00 | $0.00 |
| | | | FNET | | 2 | $0.00 | $0.00 |
| | | | WIFI | | 3 | $0.00 | $0.00 |
| | | | FNET | | 1 | $0.00 | $0.00 |
| **Thursday, Jul 14** | | | | | | | |
| 08:54am | INCOMI CL | | | | 6 | $0.00 | $0.00 |
| 09:00am | INCOMI CL | | | | 1 | $0.00 | $0.00 |
| 09:30am | WESTER IL | | | | 2 | $0.00 | $0.00 |
| 11:30am | CHICAG IL | | | | 3 | $0.00 | $0.00 |
| 11:35am | INCOMI CL | | FNET | | 1 | $0.00 | $0.00 |
| 11:36am | INCOMI CL | | WIFI | | 3 | $0.00 | $0.00 |
| 11:40am | INCOMI CL | | WIFI | | 4 | $0.00 | $0.00 |
| 11:49am | CHICAG IL | | WIFI | | 1 | $0.00 | $0.00 |
| 11:50am | CHICAG IL | | WIFI | | 1 | $0.00 | $0.00 |
| 12:07pm | CHICAG IL | | FNET | | 10 | $0.00 | $0.00 |
| 12:16pm | CHICAG IL | | WIFI | | 9 | $0.00 | $0.00 |
| 01:01pm | INCOMI CL | | FNET | | 2 | $0.00 | $0.00 |
| 02:00pm | CHICAG IL | | FNET | | 9 | $0.00 | $0.00 |
| 02:08pm | CHICAG IL | | WIFI | | 7 | $0.00 | $0.00 |
| 02:52pm | INCOMI CL | | WIFI | | 2 | $0.00 | $0.00 |
| 03:16pm | INCOMI CL | | WIFI | | 4 | $0.00 | $0.00 |
| 03:39pm | CHICAG IL | | WIFI | | 1 | $0.00 | $0.00 |
| 03:50pm | WESTER I | | WIFI | | 3 | $0.00 | $0.00 |
| 04:05pm | CHICAG IL | | WIFI | | 1 | $0.00 | $0.00 |
| 04:39pm | INCOMI CL | | WIFI | | 1 | $0.00 | $0.00 |
| 04:48pm | INCOMI CL | | WIFI | | 3 | $0.00 | $0.00 |
| 06:02pm | CHICAG IL | | WIFI | | 1 | $0.00 | $0.00 |
| **Friday, Jul 15** | | | | | | | |
| 08:01am | CHICAG IL | | FNET | | 5 | $0.00 | $0.00 |
| 08:07am | CHICAG IL | | FNET | | 1 | $0.00 | $0.00 |
| 08:42am | FRANKF | | WIFI | | 2 | $0.00 | $0.00 |
| 08:48am | WESTER I | | WIFI | | 4 | $0.00 | $0.00 |
| 08:52am | INCOMI CL | | WIFI | | 6 | $0.00 | $0.00 |
| 09:03am | INCOMI CL | | WIFI | | 3 | $0.00 | $0.00 |
| 09:35am | WAYNE MI | | WIFI | | 2 | $0.00 | $0.00 |
| 09:42am | INCOMI CL | | WIFI | | 1 | $0.00 | $0.00 |
| 09:43am | INCOMI CL | | WIFI | | 16 | $0.00 | $0.00 |
| 09:53am | CALL WAIT | | WIFI | CW | 1 | $0.00 | $0.00 |

| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Addl Charges |
|------|------|------|------|------|------|------|------|
| 09:59am | CHICAG IL | | WIFI | | 1 | $0.00 | $0.00 |
| 10:14am | INCOMI CL | | WIFI | | 2 | $0.00 | $0.00 |
| 10:27am | INCOMI CL | | WIFI | | 18 | $0.00 | $0.00 |
| 10:45am | WAYNE MI | | WIFI | | 3 | $0.00 | $0.00 |
| 10:53am | CHICAG IL | | WIFI | | 1 | $0.00 | $0.00 |
| 10:58am | PALOS IL | | WIFI | | 3 | $0.00 | $0.00 |
| 11:06am | CHICAG IL | | WIFI | | 1 | $0.00 | $0.00 |
| 11:11am | CHICAG IL | | WIFI | | 1 | $0.00 | $0.00 |
| 11:12am | CHICAG IL | | FNET | | 1 | $0.00 | $0.00 |
| 11:13am | INCOMI CL | | FNET | | 12 | $0.00 | $0.00 |
| 11:30am | CHICAG IL | | FNET | | 3 | $0.00 | $0.00 |
| 11:38am | PALOS IL | | FNET | | 2 | $0.00 | $0.00 |
| 11:40am | PALOS IL | | WIFI | | 2 | $0.00 | $0.00 |
| 11:42am | CHICAG IL | | WIFI | | 1 | $0.00 | $0.00 |
| 11:42am | CALL WAIT | | WIFI | CW | 11 | $0.00 | $0.00 |
| 12:04pm | CHICAG IL | | WIFI | | 18 | $0.00 | $0.00 |
| 12:48pm | WESTER IL | | WIFI | | 2 | $0.00 | $0.00 |
| 12:50pm | INCOMI CL | | WIFI | | 9 | $0.00 | $0.00 |
| 01:54pm | INCOMI CL | | WIFI | | 1 | $0.00 | $0.00 |
| 02:08pm | WAYNE MI | | WIFI | | 2 | $0.00 | $0.00 |
| 02:13pm | CHICAG IL | | WIFI | | 3 | $0.00 | $0.00 |
| 03:41pm | INCOMI CL | | WIFI | | 4 | $0.00 | $0.00 |
| 04:03pm | WESTER IL | | WIFI | | 2 | $0.00 | $0.00 |
| 04:08pm | CHICAG IL | | WIFI | | 14 | $0.00 | $0.00 |
| 05:07pm | INCOMI CL | | WIFI | | 3 | $0.00 | $0.00 |
| 05:18pm | INCOMI CL | | WIFI | | 2 | $0.00 | $0.00 |
| 06:17pm | INCOMI CL | | WIFI | | 19 | $0.00 | $0.00 |
| **Saturday, Jul 16** | | | | | | | |
| 08:48am | CALUME IL | | FNET | | 11 | $0.00 | $0.00 |
| 08:58am | CALUME IL | | WIFI | | 25 | $0.00 | $0.00 |
| 09:42am | Toll F CL | | WIFI | | 17 | $0.00 | $0.00 |
| 09:59am | WESTER IL | | WIFI | | 3 | $0.00 | $0.00 |
| 10:18am | Toll F CL | | FNET | | 1 | $0.00 | $0.00 |
| 10:39am | INCOMI CL | | FNET | | 4 | $0.00 | $0.00 |
| 10:42am | INCOMI CL | | WIFI | | 2 | $0.00 | $0.00 |
| 11:00am | INCOMI CL | | WIFI | | 5 | $0.00 | $0.00 |
| 11:09am | WAYNE MI | | WIFI | | 2 | $0.00 | $0.00 |
| 11:11am | CHICAG IL | | WIFI | | 5 | $0.00 | $0.00 |
| 11:26am | CHICAG | | WIFI | | 8 | $0.00 | $0.00 |
| 11:34am | CHICAG IL | | WIFI | | 1 | $0.00 | $0.00 |
| 11:34am | CHICAG IL | | WIFI | | 14 | $0.00 | $0.00 |
| 11:48am | CALL WAIT | | WIFI | CW | 19 | $0.00 | $0.00 |
| 12:49pm | INCOMI CL | | WIFI | | 12 | $0.00 | $0.00 |
| 01:10pm | CHICAG IL | | WIFI | | 2 | $0.00 | $0.00 |
| 01:28pm | CATON | | WIFI | | 57 | $0.00 | $0.00 |
| 03:31pm | INCOMI CL | | WIFI | | 1 | $0.00 | $0.00 |
| 03:59pm | WHEELI IL | | FNET | | 1 | $0.00 | $0.00 |
| 04:28pm | INCOMI CL | | FNET | | 2 | $0.00 | $0.00 |
| 05:45pm | INCOMI C | | FNET | | 10 | $0.00 | $0.00 |
| 07:05pm | INCOMI | | FNET | | 3 | $0.00 | $0.00 |
| 07:07pm | CHICAG IL | | FNET | | 6 | $0.00 | $0.00 |
| 07:17pm | WHEELI IL | | FNET | | 1 | $0.00 | $0.00 |
| 07:22pm | CHICAG IL | | FNET | | 7 | $0.00 | $0.00 |
| 07:28pm | WHEELI IL | | FNET | | 13 | $0.00 | $0.00 |
| **Sunday, Jul 17** | | | | | | | |
| 06:51am | INCOMI CL | | FNET | | 1 | $0.00 | $0.00 |
| 06:58am | INCOMI C | | FNET | | 1 | $0.00 | $0.00 |
| 09:43am | INCOMI CL | | FNET | | 21 | $0.00 | $0.00 |
| 03:22pm | CHICAG IL | | WIFI | | 1 | $0.00 | $0.00 |

*773.842.1496 continues...*



# Case Audit Report: 2022-0002947

| Audit Date | Updated By | Audit Value |
|---|---|---|
| 5/7/2024 | JEREMY J DRZEWIECKI | View |
| 5/7/2024 | JEREMY J DRZEWIECKI | View |
| 5/7/2024 | JEREMY J DRZEWIECKI | View |
| 2/3/2024 | SONNY MICETICH | View |
| 11/17/2023 | SARAH L DONNELLAN | View |
| 7/29/2023 | Aubrey Shombert | Attachment View |
| 7/23/2023 | AR_ESCALATOR | Add Attachment |
| 7/19/2023 | SUSAN E BROHLIN | View |
| 7/15/2023 | DINA M POWELL WARD | View |
| 7/14/2023 | DINA M POWELL WARD | Status Change |
| 7/14/2023 | DINA M POWELL WARD | Status Reason Change |
| 7/14/2023 | DINA M POWELL WARD | Move Attachment |
| 7/14/2023 | DINA M POWELL WARD | Move Attachment |
| 7/11/2023 | YOLANDA L TALLEY | Attachment View |



# Case Audit Report: 2022-0002947

| Audit Date | Updated By | Audit Value |
|---|---|---|
| 7/6/2023 | JOSE L SANCHEZ | View |
| 7/4/2023 | JOSE L SANCHEZ | View |
| 7/1/2023 | JOSE L SANCHEZ | View |
| 6/28/2023 | LARRY E THOMAS JR | View |
| 6/22/2023 | DINA M POWELL WARD | View |
| 6/21/2023 | JOSE L SANCHEZ | View |
| 6/19/2023 | JOSE L SANCHEZ | View |
| 6/16/2023 | JOSE L SANCHEZ | View |
| 6/15/2023 | JOSE L SANCHEZ | View |
| 6/13/2023 | JOSE L SANCHEZ | View |
| 6/12/2023 | JOSE L SANCHEZ | View |
| 6/9/2023 | JOSE L SANCHEZ | View |
| 6/7/2023 | JOSE L SANCHEZ | View |
| 6/7/2023 | LEVESTER DENHAM | View |



# Case Audit Report: 2022-0002947

| Audit Date | Updated By | Audit Value |
|---|---|---|
| 6/2/2023 | JOSE L SANCHEZ | View |
| 5/16/2023 | JOSE L SANCHEZ | Attachment View |
| 5/16/2023 | JOSE L SANCHEZ | View |
| 5/3/2023 | TRACI L WALKER | Status Reason Change |
| 4/29/2023 | TRACI L WALKER | Attachment View |
| 4/14/2023 | JOSE L SANCHEZ | View |
| 4/13/2023 | JOSE L SANCHEZ | Attachment View |
| 4/13/2023 | JOSE L SANCHEZ | View |
| 4/13/2023 | LARRY E THOMAS JR | Attachment View |
| 4/13/2023 | LARRY E THOMAS JR | View |
| 4/12/2023 | JOSE L SANCHEZ | Status Change |
| 4/12/2023 | JOSE L SANCHEZ | Status Reason Change |
| 4/12/2023 | DINA M POWELL WARD | View |
| 4/12/2023 | THOMAS J OSIKA | Attachment View |



# Case Audit Report: 2022-0002947

| Audit Date | Updated By | Audit Value |
|---|---|---|
| 4/12/2023 | THOMAS J OSIKA | View |
| 4/11/2023 | THOMAS J OSIKA | Status Change |
| 4/11/2023 | THOMAS J OSIKA | Status Reason Change |
| 4/7/2023 | JEREMY J DRZEWIECKI | Attachment View |
| 4/7/2023 | JEREMY J DRZEWIECKI | View |
| 4/7/2023 | THOMAS J OSIKA | Attachment View |
| 4/7/2023 | THOMAS J OSIKA | View |
| 4/6/2023 | JEREMY J DRZEWIECKI | Status Reason Change |
| 4/6/2023 | JEREMY J DRZEWIECKI | Add Attachment |
| 4/6/2023 | JEREMY J DRZEWIECKI | View |
| 4/5/2023 | JEREMY J DRZEWIECKI | Non-CPD Role Changed |
| 4/5/2023 | JEREMY J DRZEWIECKI | Incident Type Change |
| 4/2/2023 | JEREMY J DRZEWIECKI | Attachment View |
| 4/2/2023 | JEREMY J DRZEWIECKI | View |



# Case Audit Report: 2022-0002947

| Audit Date | Updated By | Audit Value |
| --- | --- | --- |
| 4/1/2023 | JEREMY J DRZEWIECKI | Attachment View |
| 4/1/2023 | JEREMY J DRZEWIECKI | View |
| 3/31/2023 | JEREMY J DRZEWIECKI | Add Attachment |
| 3/31/2023 | JEREMY J DRZEWIECKI | View |
| 3/30/2023 | JEREMY J DRZEWIECKI | Attachment View |
| 3/30/2023 | JEREMY J DRZEWIECKI | View |
| 3/29/2023 | JEREMY J DRZEWIECKI | Move Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Add Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Add Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Attachment Rename |
| 3/29/2023 | JEREMY J DRZEWIECKI | Attachment Rename |
| 3/29/2023 | JEREMY J DRZEWIECKI | Attachment Rename |
| 3/29/2023 | JEREMY J DRZEWIECKI | Move Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Move Attachment |



# Case Audit Report: 2022-0002947

| Audit Date | Updated By | Audit Value |
|---|---|---|
| 3/29/2023 | JEREMY J DRZEWIECKI | Move Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Move Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Move Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Attachment Rename |
| 3/29/2023 | JEREMY J DRZEWIECKI | Attachment Rename |
| 3/29/2023 | JEREMY J DRZEWIECKI | Move Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Move Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Attachment Rename |
| 3/29/2023 | JEREMY J DRZEWIECKI | Move Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Add Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Attachment Rename |
| 3/29/2023 | JEREMY J DRZEWIECKI | Attachment Rename |
| 3/29/2023 | JEREMY J DRZEWIECKI | Move Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Attachment Rename |



# Case Audit Report: 2022-0002947

| Audit Date | Updated By | Audit Value |
|---|---|---|
| 3/29/2023 | JEREMY J DRZEWIECKI | Move Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Attachment Rename |
| 3/29/2023 | JEREMY J DRZEWIECKI | Move Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Attachment Rename |
| 3/29/2023 | JEREMY J DRZEWIECKI | Attachment Rename |
| 3/29/2023 | JEREMY J DRZEWIECKI | Add Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Add Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Move Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Move Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Move Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Add Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Add Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Add Attachment |
| 3/29/2023 | JEREMY J DRZEWIECKI | Attachment Rename |



# Case Audit Report: 2022-0002947

| Audit Date | Updated By | Audit Value |
|---|---|---|
| 3/29/2023 | JEREMY J DRZEWIECKI | Attachment Rename |
| 3/29/2023 | JEREMY J DRZEWIECKI | Penalty Changed |
| 3/29/2023 | JEREMY J DRZEWIECKI | Finding Changed |
| 3/26/2023 | JEREMY J DRZEWIECKI | Attachment View |
| 3/26/2023 | JEREMY J DRZEWIECKI | View |
| 3/17/2023 | JEREMY J DRZEWIECKI | View |
| 3/15/2023 | JEREMY J DRZEWIECKI | Attachment View |
| 3/15/2023 | JEREMY J DRZEWIECKI | View |
| 3/14/2023 | JEREMY J DRZEWIECKI | Add Attachment |
| 3/13/2023 | JAMES M FIEDLER | View |
| 3/12/2023 | JAMES M FIEDLER | Supervisor Assignment Change |
| 3/11/2023 | JEREMY J DRZEWIECKI | Attachment View |
| 3/11/2023 | JEREMY J DRZEWIECKI | View |
| 3/9/2023 | JEREMY J DRZEWIECKI | Attachment View |



# Case Audit Report: 2022-0002947

| Audit Date | Updated By | Audit Value |
|---|---|---|
| 3/9/2023 | JEREMY J DRZEWIECKI | View |
| 3/9/2023 | KESHIA FRIERSON | View |
| 3/9/2023 | MARIAN A RODRIGUEZ | View |
| 2/24/2023 | DAWN HINTON | View |
| 9/20/2022 | JEREMY J DRZEWIECKI | Add Attachment |
| 9/20/2022 | JEREMY J DRZEWIECKI | Add Attachment |
| 9/13/2022 | JEREMY J DRZEWIECKI | Add Attachment |
| 9/13/2022 | JEREMY J DRZEWIECKI | Add Attachment |
| 9/13/2022 | JEREMY J DRZEWIECKI | Add Attachment |
| 9/13/2022 | JEREMY J DRZEWIECKI | Category Changed |
| 9/10/2022 | JEREMY J DRZEWIECKI | Contact Attempt |
| 9/3/2022 | JEREMY J DRZEWIECKI | Non-CPD Role Changed |
| 9/3/2022 | JEREMY J DRZEWIECKI | CPD Role Changed |
| 7/27/2022 | JEREMY J DRZEWIECKI | Add Attachment |



# Case Audit Report: 2022-0002947

| Audit Date | Updated By | Audit Value |
|---|---|---|
| 7/27/2022 | JEREMY J DRZEWIECKI | Add Attachment |
| 7/26/2022 | JEREMY J DRZEWIECKI | Add Attachment |
| 7/22/2022 | JEREMY J DRZEWIECKI | Move Attachment |
| 7/22/2022 | JEREMY J DRZEWIECKI | Delete Attachment |
| 7/22/2022 | JEREMY J DRZEWIECKI | Add Attachment |
| 7/22/2022 | JEREMY J DRZEWIECKI | Add Attachment |
| 7/22/2022 | JEREMY J DRZEWIECKI | Add Attachment |
| 7/22/2022 | JEREMY J DRZEWIECKI | Delete Attachment |
| 7/22/2022 | JEREMY J DRZEWIECKI | Contact Attempt |
| 7/19/2022 | JEREMY J DRZEWIECKI | Add Attachment |
| 7/19/2022 | JEREMY J DRZEWIECKI | Contact Attempt |
| 7/19/2022 | JEREMY J DRZEWIECKI | Add Attachment |
| 7/19/2022 | JEREMY J DRZEWIECKI | Move Attachment |
| 7/18/2022 | MARIAN A RODRIGUEZ | Contact Attempt |



# Case Audit Report: 2022-0002947

| Audit Date | Updated By | Audit Value |
|---|---|---|
| 7/18/2022 | MARIAN A RODRIGUEZ | Add Attachment |
| 7/18/2022 | KESHIA FRIERSON | Status Change |

## Frierson, Keshia

| | |
|---|---|
| **From:** | Curry, Cynthia |
| **Sent:** | Friday, July 15, 2022 8:39 PM |
| **To:** | Parra, Angela L. |
| **Cc:** | Talley, Yolanda L.; Walker, Traci L.; Denham, Levester; Frierson, Keshia; Hosley, Annetta V.; Riles, Laurie A. |
| **Subject:** | Member Detailed Out of 121 |

Angela -

For timekeeping purposes, please be aware that PO Timothy Moragne is being detailed to Unit 006 **effective Sunday, 17 July 2022**.

| | |
|---|---|
| From Unit | 123 |
| Sent By | JOHNSON, KARLA |
| Sent Date/Time | 15-JUL-2022 19:31 |
| Action Required? | |

Message
MORAGNE, TIMOTHY, EMPLOYEE NO. ▓▓▓▓
DETAILED TO UNIT 006 FROM UNIT 121
EFFECTIVE DATE: 17-JUL-2022
DUTY STATUS: FULL DUTY
STATUS: **DBA APPROVED**
Notification Notes

Thank you,


**Cynthia Curry**
Administrative Sergeant
**Bureau of Internal Affairs**
Bell: (312) 745-6125
PAX: 0216



City of Chicago | Chicago Police Department

---

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail (or the person responsible for delivering this document to the intended recipient), you are hereby notified that any dissemination, distribution, printing or copying of this e-mail, and any attachment thereto, is strictly prohibited. If you have received this e-mail in error, please respond to the individual sending the message, and permanently delete the original and any copy of any e-mail and printout thereof.

1

**BUREAU OF INTERNAL AFFAIRS**
General Investigations Section

07 May 2024
Log No: 2022-0005279

TO:     Yolanda L. Talley
        Chief
        Bureau of Internal Affairs

FROM:   Jeremy J. Drzewiecki #2203
        Sergeant
        Bureau of Internal Affairs

SUBJECT: Approval of Log Number 2022-0005279

The attached Log Number Investigation has been completed and submitted for your review.



Sergeant Jeremy J. Drzewiecki #2203
General Investigations Section
Bureau of Internal Affairs

**Approved:**

Kelly Schnoor
Lieutenant
Bureau of Internal Affairs



# Investigative Closing Report

**Log No : 2022-0005279**

| | | | |
|---|---|---|---|
| **Incident Type** | Complaint Register | **Case Status** | Under BIA Investigation |
| **Team** | GENERAL INVESTIGATIONS | **Date of Incident** | 07/16/2022 |
| **Investigator** | JEREMY J DRZEWIECKI | **Time of Incident** | 11:00 AM |
| **Confidential?*** | No | **Initiation Date** | 12/13/22 12:44 PM |
| **Non-Disciplinary Intervention** | No | **Days Open** | 518 |
| **Manner Received?** | Phone | **Date Complete** | |
| **Pursuit Related?*** | No | **Criminal?** | No |
| **Initial Assignment** | COPA | **Civil Suit?** | No |
| **Agency** | BIA | | |
| **EEO Complaint No.?** | 2022-054 | | |

## CPD Involved Parties- Count: 3

### Role — Reporting Party: Subject 1

| | | | |
|---|---|---|---|
| Name | TIMOTHY MORAGNE | Position | POLICE OFFICER |
| Star No. | 19052 | Sex | M |
| Employee No. | ███████ | Race | BLK |
| Unit No. | 121 | Phone | |
| Current Status | N | | |

### Role — Reporting Party: Third Party 2

| | | | |
|---|---|---|---|
| Name | DANIEL O BRIEN | Position | POLICE OFFICER ASSIGNED AS LEGAL OFFICER II |
| Star No. | 1636 | Sex | M |
| Employee No. | ███████ | Race | WHI |
| Unit No. | 261 | Phone | |
| Current Status | Y | | |

### Role — Accused 1

| | | | |
|---|---|---|---|
| Name | TRACI WALKER | Position | DEPUTY CHIEF |
| Star No. | 222 | Sex | F |
| Employee No. | ███████ | Race | BLK |
| Unit No. | 121 | Phone | |
| Current Status | Y | **Recommended Penalty** | ████████ |

## Incident Address - Count: 1

Report executed   5/15/24                                         Page 1 of  4



# Investigative Closing Report

**Log No : 2022-0005279**

| Role | Location of Occurrence |
|---|---|
| Incident From Date/Time | 7/16/22 11:00 AM |
| Address Of Incident | 3510 S MICHIGAN AVE      CHICAGO, 60653 |
| Beat | 0213 |
| District Of Occurrence | 002 |
| Location Code | 280 - POLICE FACILITY / VEHICLE PARKING LOT |
| Location Description | Work address for the accused. |

## Current Allegations - Count: 2

**Accused Name**      TRACI WALKER

| Allegation | 1 | | Initial | Yes |
|---|---|---|---|---|
| Category 1 | Operation/Personnel Violations | | Category 3 | Disability |
| Category 2 | EEO Investigations | | | |
| Rec. Finding | ▮▮▮▮▮ | | | |
| Finding | ▮▮▮▮▮ | | | |

Allegation: It is alleged by the Reporting Party that on 16 July 2022, at 1100 hours, at the location of 3510 S. Michigan Ave., the Accused Department Member reassigned the Reporting Party from the Bureau of Internal Affairs due to his disability.

| Allegation | 2 | | Initial | No |
|---|---|---|---|---|
| Category 1 | Conduct Unbecoming Violations | | | |
| Category 2 | Abuse of Authority | | | |
| Rec. Finding | ▮▮▮▮▮ | | | |
| Finding | ▮▮▮▮▮ | | | |

Allegation: It is alleged by the Reporting Party that on 16 July 2022, at 1100 hours, at the location of 3510 S. Michigan Ave., the Accused Department Member reassigned the Reporting Party from the Bureau of Internal Affairs in retaliation for his wife filing a complaint against a Sergeant from the Bureau of Internal Affairs.

## Attachment- Count: 12

| Attachment # | 1 | No. of Pages | 2 | Category | DOCUMENT OTHER |
|---|---|---|---|---|---|
| File Name | Quick View Report.pdf | | | | |
| Description | | | | | |

| Attachment # | 2 | No. of Pages | 1 | Category | CONFLICT CERTIFICATION |
|---|---|---|---|---|---|
| File Name | Conflict Certification.pdf | | | | |
| Description | | | | | |



# Investigative Closing Report

**Log No : 2022-0005279**

| Attachment # | 3 | No. of Pages | 1 | Category | SWORN AFFIDAVIT - NOT REQUIRED |
|---|---|---|---|---|---|
| File Name | Sworn Affidavit.pdf | | | | |
| Description | | | | | |

| Attachment # | 4 | No. of Pages | 3 | Category | DOCUMENT INITIATION REPORT |
|---|---|---|---|---|---|
| File Name | Initiation Report and Charge of Discrimination.pdf | | | | |
| Description | | | | | |

| Attachment # | 5 | No. of Pages | 0 | Category | INTERVIEW-REPORTING PARTY |
|---|---|---|---|---|---|
| File Name | Reporting Party MORAGNE Interview.MP3 | | | | |
| Description | | | | | |

| Attachment # | 6 | No. of Pages | 0 | Category | INTERVIEW - ACCUSED |
|---|---|---|---|---|---|
| File Name | Accused DC WALKER Interview.MP3 | | | | |
| Description | | | | | |

| Attachment # | 7 | No. of Pages | 1 | Category | MEDICAL SERVICES SECTION - MEDICAL ABSENCE REPORT |
|---|---|---|---|---|---|
| File Name | Medical Information.pdf | | | | |
| Description | | | | | |

| Attachment # | 8 | No. of Pages | 1 | Category | MEDICAL SERVICES SECTION - MEDICAL ABSENCE REPORT |
|---|---|---|---|---|---|
| File Name | Disability Information.pdf | | | | |
| Description | | | | | |

| Attachment # | 9 | No. of Pages | 2 | Category | DOCUMENT OTHER |
|---|---|---|---|---|---|
| File Name | Phone records.pdf | | | | |
| Description | | | | | |

| Attachment # | 10 | No. of Pages | 11 | Category | DOCUMENT OTHER |
|---|---|---|---|---|---|
| File Name | Case Audit Report for CL 2022-0002947.pdf | | | | |
| Description | | | | | |

Report executed    5/15/24                                                 Page 3 of  4



# Investigative Closing Report

**Log No : 2022-0005279**

| Attachment # | 11 | No. of Pages | 1 | Category | DOCUMENT OTHER |
|---|---|---|---|---|---|
| File Name | History of Log Number 2022-0002947.png | | | | |
| Description | | | | | |

| Attachment # | 12 | No. of Pages | 1 | Category | DOCUMENT EMAIL |
|---|---|---|---|---|---|
| File Name | Detail Order Email.pdf | | | | |
| Description | | | | | |

Report executed    5/15/24          ███          Page 4 of  4

**Investigative Closing Report – Continued, Log No: 2022-0005279**

**SWORN AFFIDAVIT STATUS:**

**NOTE** Log 'TYPE' is classified CR- Sworn Affidavit Not Required.

**INTRODUCTION:**

Reporting Sergeant (R/S) was assigned to investigate CL# 2022-0005279 on 26 January 2023. After reviewing the case details and acknowledging the Conflict Certification, the Reporting Party (R/P) (Inactive Officer) Timothy MORAGNE alleges that on 16 July 2022, at 1100 hours, at the location of 3510 S. Michigan Ave, Chicago, IL, the Unknown Accused Department Member reassigned the R/P from the Bureau of Internal Affairs due to his disability, and reassigned him in retaliation for his wife filing a complaint against a Sergeant from the Bureau of Internal Affairs. **(Attachment: 1,2,3)**

**INVESTIGATION:**

Upon receiving this Log Number for investigation, R/S reviewed the following Investigative Documents attached to this case:

<u>Initiation Report with attached EEOC Form 5 - Charge of Discrimination</u>
The Initiation Report completed by Legal Officer Daniel O'BRIEN #1636 documents the allegation by the R/P which was received on EEOC Form 5 - Charge of Discrimination. The Initiation Report Narrative states, "R/Sgt. received an EEOC charge filed by the complainant (Timothy MORAGNE, Emp. ▓▓▓▓ with the Illinois Department of Human Rights (charge #440-2022-07293, attached). The charge was sent to R/Sgt. via email from paralegal Donna PAPPAS at the Labor Division of the city's Law Department. R/Sgt. read the charge in which the charging party alleges that he has been discriminated against and harassed on the basis of an unspecified disability, in that he alleges that four days into a medical leave he was reassigned. Complainant also alleges retaliation. No additional facts are included in the Charge of Discrimination."

The Illinois Department of Human Rights - Charge of Discrimination which the R/P completed on 29 November 2022 states "I was hired by the Respondent on or about August 31, 1988. My position is Police Officer. Respondent is aware of my disability. In or around July 2022, the Respondent was informed of my medical leave. Subsequently, I was subjected to harassment which included their attempt to issue me a discipline, of which I complained. Four-days into my medical leave, I was reassigned. I believe that I have been discriminated against because of my disability, and retaliated against for engaging in protected activity, in violation of the American with Disabilities Act of 1990, as amended." **(Attachment: 4)**

<u>Reporting Party Statement of Timothy MORAGNE</u>
On 17 October 2023, R/S conducted a formal audio-recorded interview with the R/P at his residence ▓▓▓▓▓▓▓▓▓▓▓ The R/P signed the Consent to Audio Record Statement and the Audio Recorded Statement Instructions/Guidelines prior to giving his statement. The R/P was presented with EEOC Form 5 - Charge of Discrimination during the interview.

1

**Investigative Closing Report – Continued, Log No: 2022-0005279**

The following is a summary of the interview and should not be considered a verbatim statement. The R/P started by describing an incident that occurred while he was assigned to the Bureau of Internal Affairs Medical Integrity Unit. The incident was addressed in Log Number 2022-0002947 by R/S. The incident was described as an issue between the R/P, Sgt. HOSLEY, Sgt. DUCKINS, and PO Patty GALLAGHER of the Medical Integrity Unit regarding surveillance of an individual. The R/P went on the medical the next day because he was taking medication for his hip that was making him sleepy. Sgt. DUCKINS then, while the R/P was on the medical, allegedly harassed the R/P and his wife, Kelly MORAGNE, over an indebtedness to the City of Chicago regarding parking tickets. Sgt. DUCKINS then tried to SPAR the R/P at his residence over the parking tickets, but the R/P refused to sign the SPAR because the parking tickets were not his. The R/P's wife, ████████████ filed a complaint with the Civilian Office of Police Accountability (COPA) on 15 July 2022 concerning the harassment.

Because of the incident from Log Number 2022-0002947, the R/P alleges Deputy Chief WALKER called the R/P on 16 July 2022, and without giving the R/P a chance to explain what happened with the parking tickets, WALKER told the R/P he was no longer fit for the unit and that he was going to be assigned to the 6th District. The R/P believed the reassignment to the 6th District was either in retaliation because his wife filed a complaint or it had something to do with his disability.

R/S asked the R/P if he was on disability status when he was reassigned. The R/P replied no and that he hadn't even had the chance to apply. He was off because the doctor said he had to stop taking ████████ he was taking and to look into getting ████████ (Attachment: 5)

After the interview with the R/P, R/S identified the Unknown Accused Department Member as Deputy Chief Traci WALKER, Star# 222, Employee#████, UOA 121.

**<u>Accused Statement of Deputy Chief Traci WALKER #222</u>**
On 02 May 2024, R/S conducted a formal audio-recorded interview with the Accused at the Bureau of Internal Affairs offices.

The following is a summary of the interview and should not be considered a verbatim statement. Relative to the allegations, the Accused states that she knows the R/P as working for the Bureau of Internal Affairs (BIA) Medical Integrity Unit. The Accused stated she has no authority to release anyone from their assignment within the Bureau of Internal Affairs; only the Chief of the Bureau has that authority. The Accused stated she knew when she spoke with the R/P on 16 July 2022 that the R/P was going to be reassigned to the 6th District, and as a courtesy, she called him to let him know of his reassignment instead of being surprised that his unit of assignment was being changed. The Accused stated she was unaware of the circumstances surrounding the R/P's reassignment from BIA to the 6th District. The Accused remembered the R/P having issues with several sergeants, Sgt. DUCKINS and Sgt. HOSLEY, within the Medical Integrity Unit, but she was not familiar with all the circumstances. The Accused stated she did not tell the R/P he was not fit to be in the unit anymore, nor did she remember saying anything along those lines. The Accused remembered calling the R/P to tell him about his detail out of BIA. The R/P may have asked why, and she told him that his performance was not in line with what we needed for our unit. The Accused stated she worked in BIA for over ten years, and she has never known the R/P

2

**Investigative Closing Report – Continued, Log No: 2022-0005279**

to have a disability, and she could not recall the R/P's medical status at the time of his release of assignment. The Accused stated she became aware that the R/P's wife, ███████████, filed a complaint with COPA alleging harassment by Sgt. DUCKINS of the Medical Integrity Unit, the Accused stated she could not remember if it was before or after his duty assignment changed. The Accused concluded by stating that she has been involved with BIA for approximately eleven to thirteen years and has known the R/P during those years. The Accused stated she would never hold any malice or harm to any member within BIA, and she is not sure where the R/P's allegations are coming from. As a supervisor, she has always been fair, mentoring, assisting, and accommodating to everyone she could in the unit. (**Attachment: 6**)

**Medical Information from CLEAR Medical/Timekeeping**
This information documents that the R/P went on the medical on 12 July 2022 for ████ and that he cannot drive while taking his medication. (**Attachment: 7**)

**Disability Information from CLEAR Medical/Timekeeping**
This information, obtained by R/S through the Medical Section on 03 May 2024, documents that the R/P was awarded ordinary disability by the Policemen's Retirement Board on 08 August 2022. (**Attachment: 8**)

**Case Audit Report & History for Log Number 2022-0002947**
On 07 May 2024, R/S reviewed this report, which documents the case being accepted by BIA from COPA on 18 July 2022 at 1516 hours. This report also documents that the Accused did not view this Log Number until the Command Channel Review on 29 April 2023. The history for this Log Number indicates this Log Number was accepted by COPA on 15 July 2022, at 1804 hours. (**Attachment: 10,11**)

**Detail Order Email**
This email documents that on 15 July 2022, at 2039 hours, Sgt. Cynthia CURRY of BIA emailed Timekeeper Angela PARRA the following message: "For timekeeping purposes, please be aware that PO Timothy MORAGNE is being detailed to Unit 006 effective Sunday, 17 July 2022." Also attached to the email is a message from Unit 123 (Human Resources), Karla JOHNSON, sent on 15 July 2022, at 1931 hours, stating, "MORAGNE, Timothy, Employee NO. ██████ detailed to Unit 006 from Unit 121, effective date: 17 July 2022, duty status: full duty, status: DBA approved. (**Attachment: 12**)

**INVESTIGATION CONCLUSION:**

**Accused:** Deputy Chief Traci WALKER, Star# 222, Employee# █████ UOA 121

**Allegation #1:** It is alleged by the Reporting Party that on 16 July 2022, at 1100 hours, at the location of 3510 S. Michigan Ave., the Accused Department Member reassigned the Reporting Party from the Bureau of Internal Affairs due to his disability.
**Recommended Finding: UNFOUNDED**

3

**Investigative Closing Report – Continued, Log No: 2022-0005279**

**Allegation #2:** It is alleged by the Reporting Party that on 16 July 2022, at 1100 hours, at the location of 3510 S. Michigan Ave., the Accused Department Member reassigned the Reporting Party from the Bureau of Internal Affairs in retaliation for his wife filing a complaint against a Sergeant from the Bureau of Internal Affairs (See Log Number 2022-0002947).
**Recommended Finding:**

Sgt. Jeremy DRZEWIECKI #2203
General Investigations Section
Bureau of Internal Affairs

4

**REQUEST TO BYPASS COMMAND CHANNEL REVIEW**
BUREAU OF INTERNAL AFFAIRS /CHICAGO POLICE DEPARTMENT

| LOG NO. | DATE |
|---|---|
| 2022-0005279 | 30 May 2024 |

TO:    **CHIEF**
        **BUREAU OF INTERNAL AFFAIRS**

Due to the sensitivity of the attached materials, it is requested that this investigative file bypass Command Channel Review. It is further requested that the accused member not be notified of the contents or findings of the investigation.

███████████████

COMMANDING OFFICER

☐ CONFIDENTIAL INVESTIGATIONS SECTION
☐ MEDICAL INTEGRITY SECTION
☐ GIS - NORTH
☐ GIS - CENTRAL
☐ GIS - SOUTH
☐ SPECIAL INVESTIGATIONS SECTION
☒ *ADvocate Section*

**APPROVED:**

███████████████

**CHIEF**
**BUREAU OF INTERNAL AFFAIRS**

| LOG NO. |
|---|
| 2022-0005279 |

**CPD-44.402 (Rev. 8/16)**



**Brandon Johnson**
Mayor

**Department of Police · City of Chicago**
3510 S. Michigan Avenue · Chicago, Illinois 60653

**Larry Snelling**
Superintendent

3/30/2025
Reference: 2022-0005279

TO:     TRACI WALKER #222
        UNIT #121

FROM:   Records Management System
        Bureau of Internal Affairs

SUBJECT:    **COMPLAINT REGISTER NUMBER
            CLASSIFICATION NOTIFICATION**

The below referenced Log Number has been investigated by the Internal Affairs Division. Based on the available evidence, that incident has been classified as indicated. The original report of this investigation will be maintained at the Bureau of Internal Affairs and will be recorded in the Department member's personnel file.

Log Number:        2022-0005279
Finding:           **UNFOUNDED**
Reporting Party:   Timothy W Moragne
Date of Incident:  7/16/2022

P.O Jose L Sanchez #11497
Bureau of Internal Affairs
Advocate Section



**Brandon Johnson**
Mayor

**Department of Police · City of Chicago**
3510 S. Michigan Avenue · Chicago, Illinois 60653

**Larry Snelling**
Superintendent

3/30/2025
Reference: 2022-0005279

TIMOTHY MORAGNE #19052
UNIT #006

TIMOTHY MORAGNE:

The Bureau of Internal Affairs has completed a thorough investigation of your allegation of misconduct by a member of the Chicago Police Department. Thank you for making us aware of this matter, for we share your concern about the conduct of our members.

All available evidence was evaluated, and it has been determined that this Complaint Log is Unfounded. A finding of Unfounded means that it was determined by clear and convincing evidence, that an allegation is false or not factual. If you have any questions, please contact the Bureau of Internal Affairs at (312) 745-6310.

We appreciate you bringing this matter to our attention and your cooperation with this investigation.


Sincerely,



Advocate Section
Bureau of Internal Affairs



# Administrative Summary Report

### Log No: 2022-0005279

This ASR provides crucial information to reporting parties, accused members and accused members' supervisors. The information contained herein is intended to display Department member's accountability and foster the relationship with members of the public by ensuring legitimacy and community confidence. The following are definitions of recommended findings:

- **Sustained** - where it is determined that the allegation is supported by the evidence;
- **Not Sustained** - where it is determined that there is insufficient evidence to prove the allegations;
- **Unfounded** - where it is determined by that an allegation is false or not factual; or
- **Exonerated** - where it is determined that the conduct described in the allegation occurred, but it is lawful and proper.

In the case of a Sustained Finding, the Findings and/or Penalty is subject to grievance or arbitration process as defined in collective bargaining agreements.

## INCIDENT DESCRIPTION

On 16 July 2022, at 1100 hours, at the location of 3510 S. Michigan Ave, the involved Department Member called the Reporting Party of this Log Number investigation, and told him that he was being reassigned from the Bureau of Internal Affairs to the 6th District. The Reporting Party alleges the reassignment is due to his disability and in retaliation for his wife filing a complaint against a member of the Bureau of Internal Affairs.

**LOCATION OF OCCURRENCE:**    3510 S MICHIGAN AVE , District 002

**DATE & TIME OF INCIDENT:**      16 Jul 2022, 11:00

## NARRATIVE SUMMARY:

The Investigator gathered available evidence as listed. Based on their respective findings, this log number investigation has been concluded with the recommendations listed. Evidence was evaluated and considered by the investigator to reach their findings.

- Various CPD reports or other documents related to this incident were available and analyzed.
- The complainant or Reporting Party cooperated in the investigation and provided information.
- The accused party or parties were interviewed.

*(Listed above are items for which the investigator has indicated as having been obtained and relevant to the investigation. This list is not inclusive of all items. For item list, please see Placeholder narrative text box below for more information.)

## INVESTIGATIVE CONCLUSION:

| | |
|---|---|
| **Accused:** | TRACI WALKER |
| **Rank:** | DEPUTY CHIEF |
| **Star Number:** | 222 |

**RECOMMENDED PENALTY:**    ███████████████████████████

### Allegations

#### 1 - Unfounded - Operation/Personnel Violations/EEO Investigations/Disability

**Allegation:**    It is alleged by the Reporting Party that on 16 July 2022, at 1100 hours, at the location of 3510 S. Michigan Ave., the Accused Department Member reassigned the Reporting Party from the Bureau of Internal Affairs due to his disability.



# Administrative Summary Report

Log No: 2022-0005279

## 2 - Not Sustained - Conduct Unbecoming Violations/Abuse of Authority

**Allegation:** It is alleged by the Reporting Party that on 16 July 2022, at 1100 hours, at the location of 3510 S. Michigan Ave., the Accused Department Member reassigned the Reporting Party from the Bureau of Internal Affairs in retaliation for his wife filing a complaint against a Sergeant from the Bureau of Internal Affairs.

# EXHIBIT K

**FOIA Response**

<< Insert corresponding document behind this page >>



**Brandon Johnson**
Mayor

**Department of Police · City of Chicago**
3510 S. Michigan Avenue · Chicago, Illinois 60653

**Larry Sneiling**
Superintendent of Police

March 4, 2026

Via Email

Re:     NOTICE OF RESPONSE TO FOIA REQUEST
        FOIA FILE NO.:  P150689

Dear tim8109@aol.com

The Chicago Police Department (CPD) is in receipt of your Freedom of Information Act (FOIA) request. In it, you request:

*1 The original complaint intake report and narrative statement submitted by Kelly Moragne.*
*2 COPA intake records, jurisdictional determinations, screening memoranda, and reassignment documentation.*
*3 All Bureau of Internal Affairs investigative materials, summaries, reports, and findings.*
*4 Statements or interviews obtained from the accused member, witnesses, or supervisory personnel.*
*5 Final disposition findings, closing summaries, and notification letters issued to any party.*
*6 All To-From reports, supervisory notifications, CLEAR system entries, and administrative log records generated under CL 2022-0005279.*
*7 Telephone contact documentation or investigative references concerning repeated calls made to Timothy W. Moragne.*
*8 Audio recordings, electronic communications, digital evidence, or internal correspondence related to the complaint.*
*9 COPA retention materials reflecting intake activity even if jurisdiction was declined*

CPD reviewed your request in consultation with our Bureau of Internal Affairs and is providing you with the available responsive records within the parameters of your request.
Please be advised that the Department has redacted certain information, as explained below.

Section 7(1)(b) exempts from disclosure "[p]rivate information, unless disclosure is required by another provision of this Act, a State or federal law or a court order." 5 ILCS 140/7(1)(b). The FOIA, in 5 ILCS 140/2(c-5), defines "private information" as follows:

"'Private information' means unique identifiers, including a person's social security number, driver's license number, employee identification number, biometric identifiers, personal financial information, passwords or other access codes, medical records, home or personal telephone numbers, and personal email addresses. Private information also includes home address and personal license plates, except as otherwise provided by law or when compiled without possibility of attribution to any person."

Therefore, personal addresses, personal telephone numbers, personal license plate numbers, driver's license numbers,

vehicle identification numbers, social security numbers, internal record numbers, SID numbers, FBI numbers, signatures, medical information, and employee user codes/numbers are exempt and were properly redacted pursuant to Section 7(1)(b).

In addition, dates of birth, medical information, victim names and identifying information, and other third party names and identifying information of persons such as friends, relatives, neighbors, and suspects who were never arrested or charged were also redacted as the public interest is not great while the privacy interests are considerable; therefore, this information is exempt and protected from disclosure pursuant to 5 ILCS 140/7(1)(c) of FOIA. Section 7(1)(c) exempts from inspection and copying the following:

"[P]ersonal information contained within public records, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy... 'Unwarranted invasion of personal privacy' means the disclosure of information is that highly personal or objectionable to reasonable person and in which the subject's right to privacy outweighs any legitimate public interest in obtaining the information." Id.

It was determined that CPD is not the keeper of COPA records. Please note that each City Department is a separate "public body" under Section 2 of FOIA, 5 ILCS 140/2(a). See Duncan Publishing Inv v. City of Chicago, 304 Ill. App.3d 778, 784, 709 N.E. 2d 1281, 1282 (1st Dist 1999). A FOIA request must be directed to the department that maintains the records you're seeking.

Please visit://www.chicagocopa.org/

Also, your request has been deemed a voluminous request which "means a request that: (i) includes **more than (five) 5 different categories of records** or a combination of individual requests that total requests for more than [(five)] different categories of records in a period of 20 business days..."

Given the scope of your request, processing such a request would be unduly burdensome as written. In 5 ILCS 140/3(g), FOIA provides that requests for all records falling within a category shall be complied with unless compliance with the request would be unduly burdensome for the complying public body and there is no way to narrow the request and the burden on the public body outweighs the public interest in the information.

You have the right to have a denial reviewed by the Public Access Counselor (PAC) at the Office of the Illinois Attorney General, 500 S. 2nd Street, Springfield, Illinois 62706, (877) 299-3642. You also have the right to seek judicial review by filing a lawsuit in Cook County Circuit Court.

Sincerely,

R Earnshaw
Freedom of Information Officer
Chicago Police Department
Attention Freedom of Information
Legal Affairs Unit
3510 S. Michigan Ave
Chicago, IL 60653

# EXHIBIT L

**Duty Disability Award**

<< Insert corresponding document behind this page >>



The Retirement Board of the

# Policemen's Annuity and Benefit Fund of Chicago

221 North LaSalle St – Suite 1626, Chicago, IL 60601
(312) 744-3891     www.chipabf.org

**ELECTED TRUSTEES**
SGT. JOHN LALLY, President
THOMAS LONERGAN (Ret.)
DETECTIVE BROCK MERCK
LT. BRIAN E. WRIGHT, Recording Secretary

**EXECUTIVE DIRECTOR**
KEVIN REICHART

**APPOINTED TRUSTEES**
MAX BUDOVITCH
MELISSA CONYEARS-ERVIN
ANNETTE GUZMAN
JILL JAWORSKI

February 20, 2026

TIMOTHY W. MORAGNE
8033 S ALBANY
CHICAGO IL 60652

Subject:  Benefit Awarded for Annuitant #DD-54247

Dear Mr. Moragne:

This is to inform you that at the meeting of the Board of Trustees held January 26, 2026, you were awarded 75% Duty Disability.  Your Duty Disability award is to be 75% of your salary at the time of your award.  Your monthly salary at that time was $9,164.16.  Therefore, your monthly disability award will be $6,873.12 per month.  The following changes will be made in your benefits:

You will be:

1.  Removed from the Ordinary Disability rolls.
2.  Placed on the Duty Disability rolls.
3.  Placed on the Insurance rolls of the City of Chicago for Hospital & Medical Insurance.

You have been paid Ordinary Disability Benefits for the period from August 20, 2022 through January 31, 2026.  Those benefits were at the rate of $4,582.08 per month, based on a monthly salary of $9,164.16, for a benefit total of $189,639.00.  If you had been receiving Duty Disability Benefits for the same period, you would have been paid $284,458.48.  On February 5, 2026, you received a one-time retroactive payment in the amount of $94,819.48, and your February 2026 payment of $6,873.12 will be paid to you on February 27, 2026.

A policeman who is disabled from injuries received in the performance of an act of police duty, is entitled to receive Duty Disability while the original disability persists, or until retired by operation of law, whichever is later. From and after that time and upon the formal resignation from the Police Department, you have a right to receive a life annuity of such an amount as can be provided from the accumulation for annuity purposes standing in your credit at the time you resign to accept an annuity.

While you are carried as a Disability Beneficiary your service and monetary credits for annuity purposes continue just as though you were performing active duty.  The amounts that would ordinarily be deducted from your salary are charged to the Tax Levy and credited to your account.

As a reminder, the Electronic Deposit Program is the most efficient and safest way for you to receive your monthly disability benefit payment. Should you wish to participate, contact the

Timothy W. Moragne, Service File 48667

pension office. You would begin receiving your disability benefit payment via direct deposit within 60 days after submitting your completed form.

Pursuant to the Illinois Pension Code 40 ILCS 5/5-228 and the applicable provisions of the Administrative Review Act 735 ILCS 5-3 101 et sq. you have the right to pursue Administrative Review of the Board's decision in the Circuit Court of Cook County. Such review must be made pursuant to the statutory provisions of those Acts and filed within 35 days after service of this Order. The service date of this order is the mailing date. You are advised to review the statutory provisions of those Acts.

Sincerely,

Kevin Reichart
Executive Director

Timothy W. Moragne, Service File 48667

Page 2

# EXHIBIT M

**Right to Sue Letter**

<< Insert corresponding document behind this page >>

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Chicago District Office
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

**Issued On: 02/17/2026**

To: Mr. Timothy W. Moragne
8033 S. Albany Avenue
CHICAGO, IL 60652

**Charge No: 440-2022-07293**

EEOC Representative and email: KIMBERLY ENGRAM, INVESTIGATOR
KIMBERLY.ENGRAM@EEOC.GOV

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge **440-2022-07293.**

On behalf of the Commission,

Digitally Signed By: Amrith Kaur Aakre
**02/17/2026**
Amrith Kaur Aakre, District Director

cc: **CITY OF CHICAGO**
**c/o** Maria C. Vuolo-Milan
Bernard Murphy Jr.
Corporation Counsel

**Please retain this Notice for your records.**

Enclosure with EEOC Notice of Closure and Rights (05/25)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

Enclosure with EEOC Notice of Closure and Rights (05/25)

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 440-2022-07293 to the District Director at Amrith Kaur Aakre, 230 S Dearborn Street , Chicago, IL 60604.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 440-2022-07293 to the District Director at Amrith Kaur Aakre, 230 S Dearborn Street , Chicago, IL 60604.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)**

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

Enclosure with EEOC Notice of Closure and Rights (05/25)

**are not considered** in determining if the impairment substantially limits a major life activity.

✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# EXHIBIT N

## Supplemental Position Statement

<< Insert corresponding document behind this page >>

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**CHICAGO DISTRICT OFFICE**

| | |
|---|---|
| TIMOTHY MORAGNE, | ) |
| | ) |
| Charging Party, | ) |
| | ) |
| v. | )  EEOC: 440-2022-07293 |
| | ) |
| CITY OF CHICAGO, | ) |
| CHICAGO POLICE DEPARTMENT, | ) |
| | ) |
| Respondent. | ) |

## Notice of Filing

PLEASE TAKE NOTICE that I have on this day caused Respondent's Supplemental Response to Charge of Discrimination and Position Statement to be electronically filed with the U.S. Equal Employment Opportunity Commission by causing a true and correct copy of that document to be emailed to KIMBERLY.ENGRAM@EEOC.GOV, a copy of which is attached hereto and served on the EEOC.

## Certificate of Service

I hereby certify that I have on this day caused a true and correct copy of the above and foregoing Respondent's Supplemental Response to Charge of Discrimination and Position Statement to be provided to the EEOC by emailing a copy to KIMBERLY.ENGRAM@EEOC.GOV.

Dated at Chicago, Illinois, this 27th day of January, 2026.

Mary B. Richardson-Lowry
Corporation Counsel of the City of Chicago

Bernard J. Murphy, Jr.
Assistant Corporation Counsel
Attorney for Respondent

City of Chicago, Department of Law
2 North LaSalle Street, Suite 660
Chicago 60602
Bernard.murphy3@cityofchicago.org
Tel.: (312) 742-3997

1

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**CHICAGO DISTRICT OFFICE**

| | |
|---|---|
| TIMOTHY MORAGNE, ) | |
| ) | |
| Charging Party, ) | |
| ) | |
| v. ) | EEOC: 440-2022-07293 |
| ) | |
| CITY OF CHICAGO, ) | |
| CHICAGO POLICE DEPARTMENT, ) | |
| ) | |
| Respondent. ) | |

**Respondent's Supplemental Response**
**to Charge of Discrimination and Position Statement**

Respondent, City of Chicago, Chicago Police Department, ("Respondent" or "CPD") by and through its attorney, Mary B. Richardson-Lowry, Corporation Counsel of the City of Chicago, hereby acknowledges receipt of the Charge of Discrimination No. 440-2022-07293 ("Charge") filed by Timothy Moragne ("Charging Party") alleging that Respondent harassed Charging Party, that Respondent discriminated against Charging Party on the basis of disability and that Respondent retaliated against Charging Party for engaging in protected activity in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"). Respondent denies these allegations. Respondent presents the following as its Supplemental Response to Charge of Discrimination and Position Statement ("Supplemental Response") based on its investigation.[1] Respondent reserves the right to supplement this Supplemental Response if and when additional information becomes available.

---

[1] Respondent filed its initial Response to Charge and Position Statement in this matter on January 20, 2023.

2

## I.  RESPONDENT'S RESPONSE TO CHARGE.

### Respondent's General Objections to Charge

A.      Respondent objects to the Charge to the extent that the allegations do not demonstrate that Respondent took an adverse job action against Charging Party to harass Charging Party, because of Charging Party's alleged disability, or to retaliate against Charging Party for engaging in alleged protected activities.

B.      Respondent's releasing Charging Party from Respondent's Medical Integrity Section ("MIS") in the Bureau of Internal Affairs ("BIA") was explicitly authorized by pertinent sections of the collective bargaining agreement ("CBA") between the City of Chicgo ("City") and the Chicago John Dineen Lodge No. 7 ("Union"). Copies of germane excerpts from the CBA are attached as **Exhibit 2.** Specifically, Article 4 of the CBA, entitled Management Rights, reserves to Respondent the authority to, among other things, release Charging Party from MIS and BIA at Respondent's sole discretion. **Ex. 2**, pp. 2-3. Specifically, Article 4 authorizes Respondent to:

> to determine the organization and operations of the Department of Police;
>
> to  determine and change the purpose, composition and function of each of its constituent departments, and subdivisions;
>
> to set standards for the services to be offered to the public;
>
> to direct the Officers of the Department of Police, including the right to assign work and overtime;
>
> to  hire, examine, classify, select, promote, restore to career service positions, train, transfer, assign and schedule Officers;
> to increase, reduce or change, modify or alter the composition and size of the work force, including the right to relieve employees from duties because of lack of work or funds or other proper reasons;

3

\*　　　\*　　　\*

to determine the locations, methods, means, and personnel by which the operations are to be conducted, including the right to determine whether goods or services are to be made, provided or purchased;

to establish, implement and maintain an effective internal control program;

\*　　　\*　　　\*

**Ex. 2**, pp. 2-3.

Further, Section 23.8 establishes a bid process Police Officers may use to apply for vacancies in certain CPD units. However, BIA is not one of those units and Section 23.8 of the CBA does not authorize Police Officers to bid into BIA under those terms. **Ex. 2**, pp. 37-38. As a result, Charging Party did not bid into BIA and has no contractual rights under Section 23.8 to maintain his assignment to BIA. See **Ex. 2**, p. 38. Accordingly, under the CBA, Respondent was contractually authorized to release Charging Party out of BIA at Respondent's sole discretion. Respondent's decisions with respect to Charging Party were not based on any other unlawful consideration.

C.     Respondent objects to one or more of the allegations in the Charge as vague, ambiguous, and subject to varying interpretations, and to the extent that one or more allegations fail to comply with the requirements set forth in Section 1601.12(a)(3) of the U.S. Equal Employment Opportunity Commission's ("EEOC") procedural regulations in that the Charge does not contain a clear and concise statement of the facts constituting the alleged unlawful employment practices. 29 C.F.R. §1601.12(a)(3); but *cf.* 29 C.F.R. §1601.12(b). For example, the Charge fails to identify how Respondent was given notice of Charging Party's alleged disability,

4

what Charging Party's alleged disability is, when Respondent harassed Charging Party, how and to whom Charging Party complained, when Charging Party complained about the alleged harassment, who on behalf of Respondent discriminated against Charging Party, when Respondent discriminated against Charging Party and when Respondent retaliated against Charging Party.

D.      To the extent the Charge includes allegations that relate to and/or describe events that occurred more than 300 days before Charging Party filed the Charge on or about November 29, 2022, Respondent objects to those allegations as untimely. Specifically, to the extent they involve events that occurred on or before February 3, 2022, Respondent objects to those allegations in the Charge as time-barred. *Cf.* 42 U.S.C.A. §2000e-5(e)(1).

E.      Finally, to the extent they are different from, and do not conflict with, the objections Respondent raises in this Supplemental Response, Respondent specifically incorporates the objections it raised in its initial Response to Charge and Position Statement submitted to the EEOC on or about January 20, 2023 ("Response"), as though they are fully set forth herein.

Subject to and without waiving the general objections above, Respondent specifically addresses each allegation in the Charge, stating:

**I was hired by Respondent on or about August 31, 1988. My position is Police Officer. Respondent is aware of my disability. In or around July 2022, the Respndent was informed of my medical leave. Subsequently, I was subjected to harassment which included their attempt to issue me a discipline, of which I complained. Four-days [*sic*] into my medical leave, I was reassigned. I believe that I have been discriminated against because of my disability, and retaliated against for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.**

5

**RESPONSE:** Respondent objects to the allegations in this paragraph to the extent that they call for one or more legal conclusion(s). Respondent further objects to the phrases "disability", "medical leave", "subjected to harassment", and "attempt to issue me a discipline", "reassigned", "discriminated against because of my disability", and "retaliated against for engaging in protected activity" as vague, ambiguous, and subject to varying interpretations.

Subject to and without waiving any objections, Respondent denies it hired Charging Party on or about August 31, 1988, and denies that it reassigned Charging Party four days after Charging Party started medical leave. Respondent affirmatively states that its records reflect Charging Party begain working for Respondent on or about August 31, 1998. **Exhibit 1**, Charging Party's Work History. Respondent's records reflect that Charging Party was employed in the Police Officer job title at all times relevant to the Charge. **Ex. 1.** Respondent further states that its records show Charging Party informed his superior officer that he was taking medical leave sometime in July 2022, although Respondent disputes the specific day that Charging Party did so. See Section II.D., *infra.* To the extent Charging Party's allegation regarding "their attempt to issue me a discipline" relates to this, Respondent also admits that its records show Respondent attempted to serve Charging Party with a Summary Punishment on or about July 17, 2022, which Charging Party refused to accept service of, but denies that its actions were based on Charging Party's disability or on a protected activity Charging Party enaged in. See Section II.E., *infra.* Respondent's records show that Respondent

6

released Charging Party from BIA on or about July 17, 2022. See Chicago Police Department Employee Detail/Assignment History attached as **Exhibit 3.**

Respondent denies that it was aware of any disability Charging Party had during all times relevant to the Charge, denies that Respondent harassed Charging Party, denies that Respondent discriminated against Charging Party due to Charging Party's alleged disability or for any other unlawful reason, and denies that Respondent retaliated against Charging Party for allegedly engaging in activity protected under the ADA, or for any other unlawful reason. Respondent lacks sufficient information to admit or deny any remaining allegations.

## II.      RESPONDENT'S SUPPLEMENTAL POSITION STATEMENT.

To the extent they are not inconsistent with Respondent's statements in this Supplemental Response, Respondent specifically incorporates the statements Respondent made in its Response as though fully set forth herein.[2] The Charge alleges that Respondent harassed Charging Party, that Respondent discriminated against Charging Party on the basis of disability, and that Respondent retaliated against Charging Party for engaging in protected activity. Subject to and without waiving the objections Respondent raises above, Respondent denies that it harassed Charging Party, denies that Respondent discriminated against Charging Party, and denies that Respondent retaliated against Charging Party for engaging in protected activity. For these reasons, and for the reasons set forth in more detail below, the EEOC should dismiss the Charge in its entirety, with prejudice.

---

[2] To the extent Respondent's statements in the initial Response conflict with statements in this Supplemental Response, these statements in the Supplemental Response control.

7

## A.    Background of Respondent and Charging Party.

CPD's mission is to protect life, limb, and property in the City; prevent crime; preserve the public peace, enforce all laws and City ordinances; arrest law violators; and assemble competent evidence of alleged violations; and promote the respect and cooperation of all citizens for the law and for those sworn to enforce it. The City Council has directed CPD's members, when on duty, according to the laws of the state, the City's ordinances, and the CPD's rules and regulations, to preserve order, peace and quiet and enforce the laws and ordinances throughout the City. See Section 2-84-220 of the Municipal Code of the City of Chicago ("Code"). Services CPD provides City residents include but are not limited to: (i) general field operations; (ii) apprehension of criminals; (iii) enforcement of state and municipal traffic laws; and (iv) follow-up investigations of crimes committed. Among other things, CPD's members have the power to arrest or cause to be arrested all persons who break the peace, or are found violating any municipal ordinance or any criminal law of the state; to commit arrested persons for examination; to detain arrested persons in custody; and to exercise all other powers as conservators of the peace as are provided in the Code. Section 2-84-230 of the Code.

## B.    CPD's Bureau of Internal Affairs.

The primary goal of CPD's BIA is to conduct complete and thorough investigations into allegations of misconduct by CPD members while maintaining compliance with existing CPD and BIA directives, thereby establishing the

8

innocence or guilt of accused CPD members.[3] BIA is primarily housed at CPD's headquarters located at 3510 South Michigan Avenue in Chicago.

Misconduct undermines CPD's relationship with the community. When misconduct is reported, BIA's goal is to come to a resolution and correct any behavior that is contrary to CPD's mission. BIA is committed to:

i) Treating complainant(s) impartially and respectfully.

ii) Conducting thorough, objective, and timely investigations.

iii) Updating complainant(s) on the progress of the investigation.

iv) Ensuring transparency.[4]

BIA's mission is to ensure integrity and ethical conduct within CPD through leadership, education, and accountability. For all reports of alleged misconduct, a unique log number is generated. In most circumstances, COPA has the authority to determine which agency has jurisdiction to investigate the complaint. Usually, it is COPA or BIA that will conduct the investigation. BIA investigators contact the complainant, collect evidence, locate and interview witnesses, and interview accused CPD members, working on the case until a fair and complete conclusion can be reached.[5]

At all times relevant to the Charge, Respondent's MIS was a part of BIA. Charging Party was assigned to MIS at all times relevant to the Charge until on or

_____

[3] https://www.chicagopolice.org/bureau-of-internal-affairs/ (last viewed January 27, 2026).

[4] Id.

[5] Id.

9

about July 17, 2022. See **Ex. 3.** The duties and responsibilities of Police Officers assigned to MIS include:

1. investigate allegations of fraud, waste, or abuse by any participant in any medical program.

2. comply with all CPD directives, applicable collective bargaining agreements, and local, state, and federal laws when conducting its investigations.

3. recommend corrective action in cases where allegations of malingering, medical abuse, medical fraud, or waste are sustained (*e.g.*, fitness for duty evaluation or disciplinary action up to and including discharge). For sustained cases, MIS may also recommend criminal prosecution or the initiation of civil or administrative actions to recoup losses.

See Chicago Police Department Special Order S08-07, entitled "Medical Integrity Section," attached as **Exhibit** 4, p. 1. Also on information and belief, Police Officers assigned to MIS may also be required to testify under oath conceding their understanding of how the CBA and Department orders and directives govern Police Officers' use of the medical roll and whether Police Officers under investigation violated those rules. *Cf.* **Ex. 4.**

C.     The City Prohibits Discrimination, Harassment and Retaliation.

The City prohibits discrimination, harassment and retaliation in several contracts and policies that are relevant to this matter. For example, Respondent affirmatively states that its records show that Charging Party is a member of Bargaining Unit 91, which is represented by the Union. **Ex. 1.** The Union represents the Police Officer job title Charging Party is employed in. **Ex. 2,** Article 2, p. 1 (providing that the Union is the sole and exclusive collective bargaining representative for all sworn Police Officers below the rank of Sergeant).

10

The CBA includes non-discrimination clauses. See **Ex. 2**, Article 10, Sections

10.1 and 10.2, p. 10. Specifically, Sections 10.1 and 10.2 of the CBA state:

Section 10.1 — Equal Employment Opportunity

The Employer will continue to provide equal employment opportunity for all
Officers, and develop and apply equal employment practices.

Section 10.2 — Non-Discrimination

In the application of the terms and conditions of this Agreement, the
Employer shall not discriminate against Officers, and employment-related
decisions will be based on qualifications and predicted performance in a given
position without regard to race, color, sex, religion, age (40-63), sexual
orientation or national origin of the Officer nor shall the Employer
discriminate against Officers as a result of membership in the Lodge.
Nothing contained in this Agreement shall be deemed to preclude the
mandatory retirement of any Officer upon or after the attainment of age 63.
Officers shall not be transferred, assigned or reassigned for reasons
prohibited by this

**Ex. 2**, Sections 10.1 and 10.2, p. 19.

There are other instances where the City has committed itself to prohibiting

discrimination, harassment and retaliation in its workforce. Specifically, the

Personnel Rules note that the City prohibits discrimination based on disability,

among other things, through the City's Diversity and Equal Employment

Opportunity Policy ("EEO Policy").[6] A copy of the City's Personnel Rules is attached

as **Exhibit 5;** a copy of the City's EEO Policy (eff. Feb. 1, 2019) is attached as

**Exhibit 6.**[7] Respondent's Equal Employment Opportunity Policy likewise prohibits

---

[6] The Personnel Rules provide that, to the extent that there is a conflict between the Personnel Rules
and the terms of an applicable collective bargaining agreement, the applicable collective bargaining
agreement governs. **Ex. 5**, p. 2.

[7] The City's EEO Policy provides that employees of CPD must make complaints in accordance with
the General Orders in effect at CPD. **Ex. 6**, Section III.

11

discrimination based on disability. See, Chicago Police Department Equal Employment Opportunity Policy Employee Resource E01-01 (eff. Aug. 22, 2017) ("EEO Directive"), attached as **Exhibit 7**, Section II. Also, according to Respondent's EEO Directive, the penalties for discriminating on the basis of disability may include suspension and termination. **Ex. 7**, Section III.D.

The City's and Respondent's commitments to prohibiting harassment are found at Rule V, Section 2 of the Personnel Rules and Sections II and III.C. of the EEO Directive. **Ex. 5**, p. 17; **Ex. 7**, Sections II and III.C.

Finally, the City's commitments to prohibit retaliation in the workplace are set forth at Rule V, Section 3 of the Personnel Rules and at Section III.A. of the EEO Directive, among other places. **Ex. 5**, p. 17; and **Ex. 7**, Section III.A. The City's and Respondent's policies specifically prohibit any form of retaliation against an employee for making or filing internal or external charges or complaints of employment discrimination or for cooperating with any internal investigation or mediation of a complaint. **Ex. 5**, Rule V, Section 3, p. 17; **Ex. 7** at Section III.A.

## D.    Charging Party's Placement on Medical Leave and Reassignment.

Respondent's records show that Charging Party was placed on medical leave on or about July 12, 2022, due to Charging Party's absence from work that day and Charging Party's failure to follow appropriate Police Department procedures for initiating a medical leave of absence. *See, e.g.*, Chicago Police Department Clear Report / Medical Leave of Absence Chronology attached as **Exhibit 8**. Charging Party was responsible for notifying his supervisor before he began his medical leave

12

on July 12, 2022. See Chicago Police Department's Employee Resource No. E03-01-02 attached as **Exhibit 9**, Section III.A.1., p. 2.

As a CPD member, Charging Party is responsible for being familiar with and complying with all CPD directives. See copy of the Rules and Regulations of the Chicago Police Department, attached as **Exhibit 10**, Section IV.C.3, p. 6. Further, through his work in MIS, Charging Party would have been uniquely positioned to be familiar with CPD directives related to taking time for medical reasons. See, **Ex. 4,** Section II.A.3., p. 1.

Respondent's records indicate Respondent released Charging Party to the 006th District on or about July 17, 2022. **Ex. 3.** Further, Charging party's personal noncompliance with Employee Resource E03-01-02 may have impacted Charging Party's subsequent ability to investigate and support BIA's investigations into medical roll abuse. On information and belief, CPD personnel working in MIS can be responsible for testifying in support of the investigations MIS assigns them that involve potential violations of Department orders and directives governing medical roll benefits. *Cf.* **Ex. 4**, Section II.A.3. Charging Party's unit of assignment was changed because Charging Party's performance was not in line with what Respondent required in the MIS, not based on any unlawful reason as Charging Party claims. Additionally, BIA's investigation under log no. 2022-0005279, relating to Deputy Chief Traci Walker, resulted in unfounded and not sustained findings that she reassigned Charging Party both due to an alleged disability and in retaliation for reasons unrelated to this Charge. See Log no. 2022-0005729 Closing Packet attached as **Exhibit 12,** pp. 3-4. Moreover, Charging Party has not alleged

13

that his claimed inability to drive disqualified him from his job as a Police Officer. Thus, Charging Party has not sufficiently alleged that he has a "disability" under the ADA, and his claims of discrimination and retaliation under the ADA fail as a result.

**E.** **Respondent's Attempt to Serve Discipline on Charging Party.**

Respondent's records show that Sgt. Duckins attempted to serve Charging Party with a Summary Punishment Action Request ("SPAR") on or about July 15, 2022. See Log no. 2022-2947 Closing Packet attached as **Exhibit 11**, p. 5. Respondent's records also reflect that Respondent expunged that SPAR from Respondent's discipline history. See Chicago Police Department Clear Report / SPAR history documents attached as **Exhibits 13** and **14**. While the BIA investigation sustained an allegation relating to Sgt. Duckins serving Charging Party during a period of medical absence, and recommended Sgt. Duckins be issued discipline in the form of a violation noted, the investigation also "determined that the preponderance of the evidence does not support the allegation of harassment" and Sgt. Duckins related that she was unaware of the Employee Resource which provides that members on medical absence will be served with indebtedness notices upon their return. Significantly, the only detail of Charging Party's harassment claim is that Respondent "attempt[ed] to issue [him] a discipline." This single, isolated incident does not give rise to an actionable harassment claim, and it should be dismissed.

WHEREFORE, Respondent denies that Charge contains sufficient allegations that Charging Party has a disability as that term is defined under the

14

ADA and denies that Respondent discriminated against and/or harassed Charging Party based on disability or for any other unlawful reason. Also, Respondent denies it retaliated against Charging Party for engaging in protected activity or for any other unlawful reason. Therefore, Charging Party is not entitled to relief under the ADA, or any other federal, state, or local law(s). Accordingly, Respondent respectfully requests that the EEOC dismiss Charging Party's Charge in its entirety, with prejudice.

*(The remainder of this page is intentionally left blank.)*

15

Respectfully submitted,

City of Chicago
Chicago Police Department

By: _____

Sgt. Daniel O'Brien
Office of Legal Affairs


Mary B. Richardson-Lowry
Corporation Counsel of the City of
Chicago

By: _____

Bernard J. Murphy, Jr.
One of Respondent's attorneys

City of Chicago, Department of Law
2 North LaSalle Street, Suite 660
Chicago, IL 60602
Bernard.murphy3@cityofchicago.org
(312) 742-3997

16

# EXHIBIT O

**Doctor Letter**

<< Insert corresponding document behind this page >>

**Healthonomic - Palos Heights**
**12050 S HARLEM AVE**
**PALOS HEIGHTS IL 60463-2803**
**708-671-1500**

Moira McQuillan
MD
7/16/2022

To whom it may concern,

This is a note to confirm that Timothy Moragne was seen in my office July 11, 2022 for a doctor's appointment. Patient is not able to drive while on controlled medication prescribed by me. Patient is to return to full driving duties for work and home August 22, 2022.
If you have any questions in this regard, please do not hesitate to call me.

Sincerely,

Moira McQuillan McGee MD

# EXHIBIT P

**Audio/Video Evidence Index**

<< Insert corresponding document behind this page >>

# EXHIBIT Q

**Timeline Summary**

<< Insert corresponding document behind this page >>

# Timeline Summary

Moragne v. City of Chicago

**May 7, 2006**

Plaintiff sustained an on-duty injury in a Chicago Police Department vehicle crash.

**September 5, 2017**

Plaintiff underwent total right hip replacement surgery related to the on-duty injury.

**July 11, 2022**

Plaintiff attended a scheduled medical appointment and was medically restricted from work because medication affected his ability to drive.

**July 12, 2022**

Defendant was aware of Plaintiff's medical restriction.

**July 14, 2022**

Plaintiff's spouse made a complaint regarding Sgt. Jessica Dunkin's conduct, later documented in official investigative records.

**July 15, 2022**

An internal email copied to command staff, including Deputy Chief Tracey Walker, listed Plaintiff's duty status as "Full Duty."

**July 16, 2022**

Deputy Chief Walker told Plaintiff he was "no longer fit for the unit" and reassigned him to the 6th District.

**July 2022**

Sgt. Dunkin repeatedly contacted Plaintiff during medical leave, including multiple calls and an in-person visit concerning citations Plaintiff stated were not his.

**July 19, 2022**

Plaintiff initiated an EEOC inquiry.

**November 28, 2022**

EEOC prepared charge materials for Plaintiff's review.

**November 29, 2022**

Plaintiff applied for Duty Disability benefits.

**January 20, 2023**

The City submitted its initial position statement.

**October 17, 2023**

Plaintiff gave a recorded BIA statement describing the reassignment, repeated contacts, and disparate treatment.

**May 2, 2024**

Deputy Chief Walker gave a recorded BIA statement concerning the reassignment.

**August 21, 2024**

EEOC correspondence reflected delay and supplemental response issues involving the City.

**January 26, 2026**

Plaintiff was awarded 75% Duty Disability.

**January 27, 2026**

The City submitted its supplemental position statement.

**February 17, 2026**

EEOC issued Plaintiff a Notice of Right to Sue.

**February 20, 2026**

Plaintiff received the Duty Disability award letter confirming retroactive and ongoing benefits.

# EXHIBIT R

**Full Duty Email Contradiction**

<< Insert corresponding document behind this page >>

**Frierson, Keshia**

| | |
|---|---|
| **From:** | Curry, Cynthia |
| **Sent:** | Friday, July 15, 2022 8:39 PM |
| **To:** | Parra, Angela L. |
| **Cc:** | Talley, Yolanda L.; Walker, Traci L.; Denham, Levester; Frierson, Keshia; Hosley, Annetta V.; Riles, Laurie A. |
| **Subject:** | Member Detailed Out of 121 |

Angela -

For timekeeping purposes, please be aware that PO Timothy Moragne is being detailed to Unit 006 **effective Sunday, 17 July 2022.**

From Unit        123
Sent By          JOHNSON, KARLA
Sent Date/Time   15-JUL-2022 19:31
Action Required?

Message
MORAGNE, TIMOTHY, EMPLOYEE NO. █████
DETAILED TO UNIT 006 FROM UNIT 121
EFFECTIVE DATE: 17-JUL-2022
DUTY STATUS: FULL DUTY
STATUS: **DBA APPROVED**
Notification Notes

Thank you,

**Cynthia Curry**
Administrative Sergeant
**Bureau of Internal Affairs**
Bell: (312) 745-6125
PAX: 0216



City of Chicago | Chicago Police Department

---

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail (or the person responsible for delivering this document to the intended recipient), you are hereby notified that any dissemination, distribution, printing or copying of this e-mail, and any attachment thereto, is strictly prohibited. If you have received this e-mail in error, please respond to the individual sending the message, and permanently delete the original and any copy of any e-mail and printout thereof.

1